## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| In re: | |
|---|---|
| **MRS. FIELDS' ORIGINAL COOKIES, INC., et al.,** [1] | **08-[      ] [Lead Case]** |
| **Debtors.** | **Chapter 11** |

## JOINT PREPACKAGED PLAN OF REORGANIZATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE OF
## MRS. FIELDS' ORIGINAL COOKIES, INC. AND CERTAIN SUBSIDIARIES

| **MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP** | **AKIN GUMP STRAUSS HAUER & FELD LLP** |
|---|---|
| David R. Hurst, Esq. (Bar No. 3743) | Fred S. Hodara, Esq. |
| Mark L. Desgrosseilliers, Esq. | 590 Madison Avenue |
| (Bar No. 4083) | New York, New York 10022 |
| 1105 North Market Street, Suite 1500 | Telephone: (212) 872-1000 |
| Wilmington, Delaware 19801 | |
| Telephone: (302) 504-7800 | David M. Dunn, Esq. |
| | 1333 New Hampshire Avenue, N.W. |
| | Washington, D.C. 20036 |
| | Telephone: (202) 736-8000 |
| Proposed Counsel for the Debtors and Debtors-in-Possession | -and- |
| **SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP** | **YOUNG CONAWAY STARGATT & TAYLOR, LLP** |
| Mark S. Chehi, Esq. (Bar No. 2855) | Robert S. Brady, Esq. (Bar No. 2847) |
| One Rodney Square | The Brandywine Building |
| PO Box 636 | 1000 West Street, 17th Floor |
| Wilmington, Delaware 19899 | Wilmington, Delaware 19801 |
| Telephone: (302) 651-3000 | Telephone: (302) 571-6600 |
| Proposed Special Corporate Counsel for the Debtors and Debtors-in-Possession | Co-Counsel for the Ad Hoc Noteholder Committee |

---

[1]     The Debtors are the following entities:  Mrs. Fields' Original Cookies, Inc., Mrs. Fields Famous Brands, LLC, Mrs. Fields Financing Company, Inc., Mrs. Fields Franchising, LLC, TCBY Systems, LLC, Mrs. Fields Gifts, Inc., The Mrs. Fields' Brand, Inc., Mrs. Fields Cookies Australia, TCBY International, Inc., TCBY of Texas, Inc., PTF, LLC, PMF, LLC, GACCF, LLC, and GAMAN, LLC.

NO CHAPTER 11 CASE HAS BEEN COMMENCED AT THIS TIME.  THE SOLICITATION MATERIALS ACCOMPANYING THIS PLAN OF REORGANIZATION HAVE NOT BEEN APPROVED BY THE BANKRUPTCY COURT AS CONTAINING "ADEQUATE INFORMATION" WITHIN THE MEANING OF BANKRUPTCY CODE SECTION 1125(a). FOLLOWING THE COMMENCEMENT OF THEIR CHAPTER 11 CASES THE DEBTORS EXPECT TO PROMPTLY SEEK AN ORDER OF THE BANKRUPTCY COURT (I) APPROVING THEIR SOLICITATION OF VOTES AS HAVING BEEN IN COMPLIANCE WITH BANKRUPTCY CODE SECTION 1126(b) AND (II) CONFIRMING THIS PLAN OF REORGANIZATION PURSUANT TO BANKRUPTCY CODE SECTION 1129.

**TABLE OF CONTENTS**

Article I Definitions And General Provisions ................................................................... 1
    Section 1.1    Definitions. ................................................................................ 1
    Section 1.2    Time. ....................................................................................... 10

Article II Classification of Claims and Interests; Impairment ...................................... 10
    Section 2.1    Summary. ................................................................................. 10
    Section 2.2    Deemed Acceptance of Plan. .................................................... 11
    Section 2.3    Deemed Rejection of Plan. ...................................................... 11

Article III Treatment of Claims and Interests ............................................................. 12
    Section 3.1    Class 1 -- Other Secured Claims. .............................................. 12
    Section 3.2    Class 2 -- Priority Claims. ........................................................ 12
    Section 3.3    Class 3 -- Secured Note Claims. ............................................... 13
    Section 3.4    Class 4 -- General Unsecured Claims. ....................................... 13
    Section 3.5    Class 5 -- MFOC Note Claim. .................................................. 14
    Section 3.6    Class 6 -- Intercompany Claims. ............................................... 14
    Section 3.7    Class 7 – Section 510(b) Claims. .............................................. 14
    Section 3.8    Classes 8A -- 8C Interests. ...................................................... 14
    Section 3.9    Special Provision Governing Unimpaired Claims. ..................... 15

Article IV Treatment of Unclassified Claims ............................................................. 15
    Section 4.1    Summary. ................................................................................. 15
    Section 4.2    Administrative Expense Claims. ............................................... 15
    Section 4.3    Priority Tax Claims. ................................................................. 16

Article V Acceptance or Rejection of this Plan .......................................................... 16
    Section 5.1    Voting Classes. ........................................................................ 16
    Section 5.2    Acceptance by Voting Classes. ................................................. 16
    Section 5.3    Presumed Acceptance of Plan. ................................................. 16
    Section 5.4    Presumed Rejection of Plan. .................................................... 16
    Section 5.5    Non-Consensual Confirmation. ............................................... 17

Article VI Treatment of Executory Contracts and Unexpired Leases ........................... 17
    Section 6.1    Assumption and Rejection of Executory Contracts and Unexpired Leases. ............................................................... 17
    Section 6.2    Rejection Damages Claims. ..................................................... 18
    Section 6.3    Employment Agreements. ........................................................ 18
    Section 6.4    Management Incentive Plan. ..................................................... 18

Article VII Means for Implementation of Plan ........................................................... 18
    Section 7.1    Continued Legal Existence. ...................................................... 18
    Section 7.2    Sources of Cash for Distribution. ............................................. 19
    Section 7.3    Reinstatement of Interests. ...................................................... 19
    Section 7.4    Cancellation of Existing Securities and Agreements/Discharge of Old Notes Trustee. ................................................................ 19
    Section 7.5    Old Notes Trustee and Noteholder Committee Expenses. .......... 19
    Section 7.6    Deferred Blackstone Fee. ........................................................ 19
    Section 7.7    Corporate Action. ................................................................... 20
    Section 7.8    Preservation of Causes of Action. ............................................ 20

i

**Section 7.9**    Effectuating Documents; Further Transactions. .........................................20
**Section 7.10**   Exemption From Certain Transfer Taxes and Recording Fees. .................20
**Section 7.11**   Further Authorization...............................................................................21

Article VIII Provisions Regarding Corporate Governance of Reorganized Debtors....................21
**Section 8.1**    Certificates of Incorporation and By-Laws..............................................21
**Section 8.2**    Directors and Officers of Reorganized Debtors........................................21
**Section 8.3**    Issuance of New Securities .....................................................................21
**Section 8.4**    Stockholders Agreement .........................................................................22

Article IX Distributions Under The Plan ....................................................................................22
**Section 9.1**    Disbursing Agent. ...................................................................................22
**Section 9.2**    Distributions of Cash. .............................................................................22
**Section 9.3**    Time Bar to Cash Payments.....................................................................22
**Section 9.4**    No Interest on Claims or Interests. .........................................................22
**Section 9.5**    Delivery of Distributions.........................................................................23
**Section 9.6**    Distributions to Holders as of the Distribution Record Date....................23
**Section 9.7**    Fractional Securities; Fractional Dollars. ...............................................23
**Section 9.8**    Withholding Taxes. .................................................................................23

Article X Procedures for Treating and Resolving Disputed Claims ...........................................23
**Section 10.1**   Objections to Claims................................................................................23
**Section 10.2**   Estimation of Claims...............................................................................24
**Section 10.3**   Resolution of Claims Objections. ...........................................................24
**Section 10.4**   Distributions After Allowance. ...............................................................24

Article XI Effect of Plan on Claims and Interests .....................................................................24
**Section 11.1**   Revesting of Assets..................................................................................24
**Section 11.2**   Release and Discharge of the Debtors. ...................................................24
**Section 11.3**   Releases....................................................................................................25
**Section 11.4**   Setoffs. ....................................................................................................26
**Section 11.5**   Exculpation and Limitation of Liability...................................................26
**Section 11.6**   Injunction. ...............................................................................................27
**Section 11.7**   Effect of Effective Date. .........................................................................27

Article XII Conditions Precedent................................................................................................28
**Section 12.1**   Conditions to Confirmation. ...................................................................28
**Section 12.2**   Conditions to the Effective Date..............................................................28
**Section 12.3**   Waiver of Conditions to Confirmation or Consummation........................29
**Section 12.4**   Effect of Non-Occurrence of the Effective Date. ...................................29

Article XIII Retention and Scope of Jurisdiction of the Bankruptcy Court .................................29
**Section 13.1**   Retention of Jurisdiction..........................................................................29
**Section 13.2**   Alternative Jurisdiction............................................................................30
**Section 13.3**   Final Decree.............................................................................................30

Article XIV Miscellaneous Provisions .......................................................................................31
**Section 14.1**   Modification of the Plan. .........................................................................31
**Section 14.2**   Securities Law Matters. ...........................................................................31
**Section 14.3**   Plan Supplement. .....................................................................................31
**Section 14.4**   Allocation of Plan Distributions Between Principal and Interest..............31
**Section 14.5**   Creditors' Committee................................................................................31

**Section 14.6**   Applicable Law. .........................................................................................32
**Section 14.7**   Preparation of Estates' Returns and Resolution of Tax Claims. ................32
**Section 14.8**   Notice. .......................................................................................................32
**Section 14.9**   Headings. ...................................................................................................32
**Section 14.10** Revocation of Plan. ....................................................................................32
**Section 14.11** Severability of Plan Provisions. .................................................................32
**Section 14.12** No Admissions; Objection to Claims. .........................................................32
**Section 14.13** No Bar to Suits. ..........................................................................................32
**Section 14.14** Exhibits/Schedules. ....................................................................................33
**Section 14.15** Conflicts. ....................................................................................................33

## INTRODUCTION

Mrs. Fields' Original Cookies, Inc., Mrs. Fields Famous Brands, LLC, Mrs. Fields Financing Company, Inc., Mrs. Fields Franchising, LLC, TCBY Systems, LLC, Mrs. Fields Gifts, Inc., The Mrs. Fields' Brand, Inc., Mrs. Fields Cookies Australia, TCBY International, Inc., TCBY of Texas, Inc., PTF, LLC, PMF, LLC, GACCF, LLC, and GAMAN, LLC, debtors and debtors-in-possession in the above-captioned cases, jointly with the Noteholder Committee, propose this joint prepackaged plan of reorganization for the resolution of the outstanding Claims against and Interests in the Debtors. The Debtors and Noteholder Committee are the proponents of this plan of reorganization within the meaning of section 1129 of the Bankruptcy Code.

## ARTICLE I
## DEFINITIONS AND GENERAL PROVISIONS

For the purposes of this Plan, except as otherwise expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Section 1.1 of this Plan. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

**Section 1.1**    *Definitions.* The following terms shall have the following meanings when used in this Plan.

(a)    "Administrative Expense Claim" means a Claim for payment of an administrative expense of a kind specified in section 503(b) or 507(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(2) of the Bankruptcy Code, including, without limitation, the actual, necessary costs and expenses, incurred on or after the Filing Date, of preserving the Estates and operating the business of the Debtors, including wages, salaries or commissions for services rendered after the commencement of the Bankruptcy Cases, Professional Compensation, fees and expenses of the Old Notes Trustee and its counsel, fees and expenses of the Noteholder Committee and its professionals, and all fees and charges assessed against the Estates under 28 U.S.C. § 1930.

(b)    "Affiliates" has the meaning given such term by section 101(2) of the Bankruptcy Code.

(c)    "Allowed" means, with respect to any Claim, such Claim or any portion thereof (i) that has been allowed (a) by a Final Order of the Bankruptcy Court, (b) pursuant to the terms of this Plan, or (c) by agreement between the Holder of such Claim and the Debtors or Reorganized Debtors; (ii) as to which the Claims Objection Deadline has passed without the filing of an objection or request for estimation; or (iii) as to which any objection has been settled, waived, withdrawn or denied by a Final Order or in accordance with the Plan; *provided, however*, that, notwithstanding anything herein to the contrary, by treating a Claim as an "Allowed Claim" under (ii) above, the Debtors do not waive their rights to contest the amount and validity of any disputed, contingent or unliquidated Claim in the manner and venue in which such Claim would have been determined, resolved or adjudicated if the Bankruptcy Cases had not been commenced.

(d)    "Assets" means, collectively, all of the property, as defined in section 541 of the Bankruptcy Code of the Estates of the Debtors (including, without limitation, all of the assets, property,

interests (including equity interests) and effects, real and personal, tangible and intangible, including all Avoidance Actions), wherever situated as such properties exist on the Effective Date or thereafter.

(e)     "Asset Sales" means the sales of the assets of (i) Great American Cookie Company Franchising, LLC and Great American Manufacturing, LLC to NexCen Brands, Inc. and NexCen Asset Acquisition, LLC in January 2008, and (ii) Pretzel Time Franchising, LLC and Pretzelmaker Franchising, LLC to NexCen Brands, Inc. and NexCen Asset Acquisition, LLC in August 2007.

(f)     "Assumed Contracts" shall have the meaning given such term in Section 6.1 of this Plan.

(g)     "Avoidance Action" means any claim or cause of action of an Estate arising out of or maintainable pursuant to sections 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code or under any other similar applicable law, regardless of whether or not such action has been commenced prior to the Effective Date.

(h)     "Bankruptcy Case" means, with respect to each Debtor, the chapter 11 case initiated by such Debtor's filing on the Filing Date of a voluntary petition for relief in the Bankruptcy Court under chapter 11 of the Bankruptcy Code.  On the Filing Date, the Debtors will seek the joint administration of the Bankruptcy Cases.

(i)     "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as applicable to the Bankruptcy Cases.

(j)     "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware or, in the event such court ceases to exercise jurisdiction over any Bankruptcy Case, such court or adjunct thereof that exercises jurisdiction over such Bankruptcy Case in lieu of the United States Bankruptcy Court for the District of Delaware.

(k)     "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as applicable to the Bankruptcy Cases or proceedings therein, and the local rules of the Bankruptcy Court, as applied to the Bankruptcy Cases or proceedings therein, as the case may be.

(l)     "Board of Directors" means the applicable board of directors of each of the Reorganized Debtors.

(m)     "Business Day" means any day on which commercial banks are required to be open for business in Wilmington, Delaware.

(n)     "Capricorn" means Capricorn Investors III, L.P.

(o)     "Cash" means legal tender of the United States of America and equivalents thereof.

(p)     "Causes of Action" means all Avoidance Actions and any and all of a Debtor's or a Reorganized Debtor's actions, causes of action, suits, accounts, agreements, promises, rights to payment and claims, whether known or unknown, reduced to judgment, not reduced to judgment,

2

liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured, and whether asserted or assertable directly or derivatively, in law, equity, or otherwise.

(q)    "Claim" means a claim against one of the Debtors (or all or some of them) whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

(r)    "Claims Objection Deadline" means the later of the first Business Day which is (i) after the Effective Date, (ii) one hundred and eighty days after a proof of Claim was filed, or (iii) such other time as may be ordered by the Bankruptcy Court for cause shown by the Reorganized Debtors, as such dates may be from time to time extended by the Bankruptcy Court without further notice to parties in interest.

(s)    "Class" means a category of Claims or Interests described in Article III of this Plan.

(t)    "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order.

(u)    "Confirmation Hearing" means the hearing before the Bankruptcy Court held to consider confirmation of this Plan and related matters under section 1128 of the Bankruptcy Code, as such hearing may be continued from time to time.

(v)    "Confirmation Order" means the order entered by the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, which shall be acceptable in form and substance to the Noteholder Committee, in its sole discretion.

(w)    "Creditors' Committee" means the official committee of unsecured creditors, if such committee is appointed in the Debtors' Bankruptcy Cases pursuant to section 1102(a) of the Bankruptcy Code, and as such committee may be reconstituted from time to time.

(x)    "Cure Amount" means the amount required to satisfy the Debtors' obligations under section 365(b) of the Bankruptcy Code with respect to the Debtors' assumption of any Executory Contract or Unexpired Lease which amount will be determined in accordance with the procedures set forth in Section 6.1 of this Plan.

(y)    "Debtor" or "Debtors" means, individually, Mrs. Fields' Original Cookies, Inc., Mrs. Fields Famous Brands, LLC, Mrs. Fields Financing Company, Inc., Mrs. Fields Franchising, LLC, TCBY Systems, LLC, Mrs. Fields Gifts, Inc., The Mrs. Fields' Brand, Inc., Mrs. Fields Cookies Australia, TCBY International, Inc., TCBY of Texas, Inc., PTF, LLC, PMF, LLC, GACCF, LLC, and GAMAN, LLC, each of which is a Debtor in its Bankruptcy Case.

(z)    "Debtor Restructuring Fees" means the Restructuring Fees of Blackstone Advisory Services L.P. ("Blackstone"), Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"), and Montgomery, McCracken, Walker & Rhoads, LLP ("MMWR").

(aa)    "Disclosure Statement" means the Disclosure Statement for the Joint Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of Mrs. Fields' Original Cookies, Inc., and Certain Subsidiaries that relates to this Plan, combined with any other written disclosure made by the Debtors, as amended, modified or supplemented from time to time, and

that is prepared and distributed in accordance with section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017.

(bb)    "Disputed" means, with reference to any Claim, a Claim or any portion thereof, that is not Allowed.

(cc)    "Distribution" means any distribution by the Debtors or Reorganized Debtors to a Holder of an Allowed Claim or Interest.

(dd)    "Distribution Date" means (i) the Initial Distribution Date and (ii) the first Business Day after the end of the months of March, June, September, and December, commencing with the first such date to occur more than ninety days after the Initial Distribution Date and continuing until the Final Distribution Date; *provided, however,* that, subject to Section 10.6 of this Plan, a Distribution Date (other than the Initial Distribution Date and Final Distribution Date) shall not occur if the aggregate value of the consideration to be distributed on account of all Allowed Claims on any Distribution Date is less than Twenty-Five Thousand and 00/100 Dollars ($25,000.00), in which case the amount to be distributed shall be retained and added to the amount to be distributed on the next Distribution Date.

(ee)    "Distribution Record Date" means the date established by the Bankruptcy Court for determining the identity of Holders of Allowed Claims or Interests, other than Secured Notes Claims, entitled to receive Distributions under this Plan.

(ff)    "District Court" means the United States District Court for the District of Delaware.

(gg)    "Effective Date" means the day that is the first Business Day after all conditions to the Effective Date have been satisfied or waived pursuant to Sections 12.2 and 12.3 of this Plan.

(hh)    "Estate" means, with regard to each Debtor, the estate that was created, pursuant to section 541 of the Bankruptcy Code, by the commencement by a Debtor of a Bankruptcy Case.

(ii)    "Executory Contract or Unexpired Lease" means all executory contracts and unexpired leases to which any of the Debtors is a party.

(jj)    "Existing Securities" means, collectively, the Old Notes, the MFOC Note and the MFOC Equity.

(kk)    "Filing Date" means the date the Debtors file for relief under Chapter 11 of the Bankruptcy Code in accordance with this Plan.

(ll)    "Final Distribution" means the Distribution by the Debtors or Reorganized Debtors that satisfies all Allowed Claims and Interests in accordance with and to the extent provided in this Plan.

(mm)    "Final Distribution Date" means the date on which the Final Distribution is made.

(nn)     "Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in the Bankruptcy Cases or the docket of any other court of competent jurisdiction, which has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari has expired, and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought.

(oo)     "General Unsecured Claim" means any Unsecured Claim other than an Intercompany Claim.

(pp)     "Guarantors" shall have the meaning given in the New Notes Indenture.

(qq)     "Holder" means a holder of a Claim or Interest, as applicable.

(rr)     "Impaired" shall have the meaning ascribed thereto in section 1124 of the Bankruptcy Code.

(ss)     "Indenture Trustee Charging Lien" means a lien that secures repayment of the Old Notes Trustee's fees and expenses, to the extent provided for in the Indenture.

(tt)     "Initial Distribution Date" means the Effective Date or as soon as reasonably practical thereafter; *provided, however*, that in no event shall the Initial Distribution Date be more than five business days after the Effective Date unless otherwise ordered by the Bankruptcy Court.

(uu)     "Intercompany Claim" means (i) any Claim against any Debtor held by any Non-Debtor Affiliate, (ii) any Claim against any Non-Debtor Affiliate held by any Debtor, or (iii) any Claim against any Debtor held by any other Debtor; *provided, however*, the MFOC Note Claim is not an Intercompany Claim.

(vv)     "Interests" means the equity interests issued by each of the Debtors, including, without limitation, the MFOC Equity, MFOC Subsidiary Interests, and MFFB Subsidiary Interests and any options, warrants, puts, calls, subscriptions, or other similar rights or other agreements, commitments, or outstanding securities obligating any of the Debtors to issue, transfer, purchase, redeem, or sell any shares of capital stock or other securities, any claims arising out of any appraisal or dissenter's rights, any claims arising from rescission of a purchase, sale or other acquisition of any common stock or other equity security (or any right, claim, or interest in and to any common stock or equity security) of any of the Debtors, and any claims for damages or any other relief arising from any such purchase, sale, or other acquisition of such common stock or other equity security.

(ww)     "Lien" has the meaning set forth in section 101(37) of the Bankruptcy Code.

(xx)     "Management Incentive Plan" means the management incentive plan, as more fully described in Section 6.4, that shall be implemented as soon as practicable after the Effective Date for the benefit of designated members of senior management of the Reorganized Debtors.

(yy)     "MFFB" means Mrs. Fields Famous Brands, LLC.

(zz)    "MFFB Subsidiary Interests" means the equity interests in the subsidiaries of MFFB that are directly or indirectly wholly owned by MFFB.

(aaa)    "MFFC" means Mrs. Fields Financing Company, Inc.

(bbb)    "MFH" means Mrs. Fields' Holding Company, Inc.

(ccc)    "MFOC" means Mrs. Fields' Original Cookies, Inc.

(ddd)    "MFOC Equity" means the equity in MFOC, which equity is wholly owned by MFH, the sole shareholder of MFOC.

(eee)    "MFOC Equity Interests" means the equity interests in MFOC that are wholly owned by MFH.

(fff)    "MFOC Note" means that certain 16.5% Amended and Restated Promissory Note issued by Mrs. Fields' Original Cookies, Inc. to Capricorn.

(ggg)    "MFOC Note Claims" means the Claims against MFOC arising under the MFOC Note, plus applicable fees, charges, costs and interest accrued but unpaid as of the Filing Date.

(hhh)    "MFOC Subsidiary Interests" means the equity interests in subsidiaries of MFOC that are wholly owned by MFOC, the sole member of MFFB.

(iii)    "Net Cash Proceeds" means, as of the Filing Date, the approximately $90 million in net cash held by the Old Notes Trustee, with such net cash derived from the Asset Sales.

(jjj)    "New Common Equity" means newly issued shares of common stock of MFOC, par value $0.01 per share, to be issued on the Effective Date. Holders of Allowed Secured Notes Claims will receive, in the aggregate, an amount equal to 87.5% of the New Common Equity issued and outstanding on the Effective Date, subject to dilution on account of the Management Incentive Plan and the Warrant. The Holder of the MFOC Note Claim will receive, in the aggregate, an amount equal to 12.5% of the New Common Equity issued and outstanding on the Effective Date, subject to dilution on account of the Management Incentive Plan and the Warrant.

(kkk)    "New Notes Indenture" means that certain indenture dated as of the Effective Date, by and among MFFB and MFFC, as issuers, the Guarantors as guarantors, the Old Notes Trustee, as trustee, as such indenture may be amended, supplemented, or otherwise modified from time to time, and all related agreements and documents. A form of New Notes Indenture is annexed hereto as Exhibit 4.

(lll)    "New Notes" means the secured notes to be issued on the Effective Date in the aggregate principal amount of $50 million, plus the amount by which the Noteholder Cash is less than $90 million.

(mmm)"NexCen Shares" means the shares of NexCen Brands, Inc. transferred to MFFB as part of the consideration for the Asset Sales. Of the aggregate 2,096,961 shares of NexCen Shares received from such sales, only 1,699,840 shares remain in an escrow for possible use to satisfy indemnity claims arising out of the sales, valued at $7.35 per share for the shares received in the

6

pretzel business sale and valued at $4.23 per share for the shares received from the sale of the Great American Cookies business. The closing sale price per share of a NexCen Brands common stock on August 12, 2008 was $0.42 per share.

(nnn)    "Non-Debtor Affiliates" means MFH, Mrs. Fields' Companies, Inc., and any other non-Debtor subsidiaries of MFOC and MFFB.

(ooo)    "Noteholder" or "Noteholders" means, individually, a holder of an Old Note and, collectively, all of the Holders of the Old Notes.

(ppp)    "Noteholder Cash" means $90 million, less the amount by which the Restructuring Fees exceed $3.5 million in the aggregate; *provided, however*, that Capricorn shall be responsible for payment of any Debtor Restructuring Fees to the extent that the Debtor Restructuring Fees exceed $3.7 million in the aggregate; *provided, further, however*, that fees and expenses of Skadden and Akin Gump accrued through June 2, 2008, the expenses of Skadden through the Effective Date, and the fees and expenses of MMWR accruing beginning on the Filing Date shall not be counted toward either cap. The Noteholders shall receive on the Effective Date the Noteholder Cash on a *pro rata* basis.

(qqq)    "Noteholder Committee" means the ad hoc committee of certain holders of Old Notes who, collectively, hold in excess of 78% of the Old Notes and each of whom executed the Term Sheet and Restructuring Support Agreements.

(rrr)    "Old Notes" means the 9.00% and 11.50% Senior Secured Notes due 2011 issued pursuant to the Old Notes Indenture.

(sss)    "Old Notes Indenture" means that certain indenture dated as of March 16, 2004, by and among MFFB and MFFC, as issuers, the Guarantors as guarantors, the Old Notes Trustee, as trustee, as such indenture may have been amended, supplemented, or otherwise modified from time to time, and all related agreements and documents.

(ttt)    "Old Notes Trustee" means The Bank of New York Mellon Trust Company, N.A., as trustee, or any successor trustee, under the Old Notes Indenture.

(uuu)    "Other Secured Claim" means a Secured Claim other than a Secured Notes Claim.

(vvv)    "Person" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code) or other entity.

(www) "Plan" means this joint pre-packaged plan of reorganization as the same may hereafter be amended, modified or supplemented.

(xxx)    "Plan Proponents" means the Debtors and the Noteholder Committee.

(yyy)    "Plan Supplement" means the document containing the information specified in Section 14.3 of this Plan.

(zzz)   "Priority Claim" means a Claim entitled to priority under the provisions of section 507(a) of the Bankruptcy Code other than an Administrative Expense Claim or a Priority Tax Claim.

(aaaa)   "Priority Tax Claim" means a Claim against the Debtors that is of a kind specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

(bbbb) "Professional Compensation" means (i) any amounts that the Bankruptcy Court allows pursuant to section 330 of the Bankruptcy Code as compensation earned, and reimbursement of expenses incurred, by professionals employed by the Debtors and the Creditors' Committee, if any, and (ii) any amounts the Bankruptcy Court allows pursuant to sections 503(b)(3) and (4) of the Bankruptcy Code in connection with the making of a substantial contribution to the Bankruptcy Cases.

(cccc) "Pro Rata" means with respect to any Claim or Interest, at any time, the proportion that the amount of the Claim or Interest in a particular Class bears to the aggregate amount of all Claims or Interests (including Disputed Claims or Interests) in such Class, or, as appropriate, other Classes, unless in each case this Plan provides otherwise.

(dddd) "Record Date" means August 6, 2008, the date for determining the identity of Holders of Allowed Claims or Interests entitled to vote to accept or reject this Plan .

(eeee) "Record Holder" means the Holder of a Claim or Interest as of the Distribution Record Date.

(ffff)   "Rejected Contracts" means all Executory Contracts and Unexpired Leases on Schedule 6.1 as Executory Contracts or Unexpired Leases to be rejected on the Effective Date.

(gggg) "Reorganized Debtor" or "Reorganized Debtors" means, individually, any Debtor and, collectively, all of the Debtors, in each case on and after the Effective Date.

(hhhh) "Reorganized MFFB" means MFFB on and after the Effective Date.

(iiii)   "Reorganized MFFC" means MFFC on and after the Effective Date.

(jjjj)   "Reorganized MFOC" means MFOC on and after the Effective Date.

(kkkk) "Reorganized Subsidiaries" means, collectively, the Subsidiary Debtors on and after the Effective Date.

(llll)   "Restructuring" means the proposed restructuring through this Plan of the Debtors' obligations under the Old Notes and the Debtors' other obligations.

(mmmm)   "Restructuring Fees" refers to the aggregate amount of professional fees (but not reasonable charges and disbursements) incurred in connection with the Restructuring.

(nnnn) "Restructuring Support Agreements" means the letter agreements, dated June 3, 2008, as amended by the letter agreements dated August 13, 2008, by and among Capricorn, MFFB, MFFC, and MFOC, on the one hand, and the members of the Noteholder Committee listed on the signature pages thereto, on the other hand.

8

(oooo) "Retained Actions" means all claims, Causes of Action, rights of action, suits and proceedings, whether in law or in equity, whether known or unknown, which any Debtor or any Debtor's Estate may hold against any Person, including, without limitation, (i) claims and Causes of Action brought prior to the Effective Date, (ii) claims and Causes of Action against any Persons for failure to pay for products or services provided or rendered by any of the Debtors, (iii) claims and Causes of Action relating to strict enforcement of any of the Debtors' intellectual property rights, including patents, copyrights and trademarks, (iv) claims and Causes of Action seeking the recovery of any of the Debtors' or the Reorganized Debtors' accounts receivable or other receivables or rights to payment created or arising in the ordinary course of any of the Debtors' or the Reorganized Debtors' businesses, including, without limitation, claim overpayments and tax refunds, and (v) all Avoidance Actions; *provided, however,* that Retained Actions shall not include those claims, Causes of Action, rights of action, suits and proceedings, whether in law or in equity, whether known or unknown, released under Section 11.3 herein.

(pppp) "Schedule 6.1" means the schedule to be provided in accordance with Section 6.1 of this Plan (the contents of which shall be acceptable to the Plan Proponents, each in their sole discretion), which shall contain a list of all Executory Contracts and Unexpired Leases to be rejected under this Plan.

(qqqq) "Section 510(b) Claims" means any claims against a Debtor that is subordinated, or subject to subordination, pursuant to section 510(b) of the Bankruptcy Code, including Claims arising from the recission of a purchase or sale of a security of a Debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such Claim. Any Claim against the Debtors that is described in section 510(b) of the Bankruptcy Code shall not receive a distribution under this Plan and shall be extinguished.

(rrrr) "Secured Claim" means a claim (as defined in section 101(5) of the Bankruptcy Code) that is secured by a valid, perfected and non-avoidable lien on collateral against any obligor or guarantor to such indebtedness (including any Lien on collateral) to the extent of the value of the holder of the Claim's interest in such collateral as provided in section 506(a) of the Bankruptcy Code.

(ssss) "Secured Notes Claim" means the Secured Claims against the Debtors arising under the Old Notes and Old Notes Indenture, plus applicable fees, charges, costs and interest accrued but unpaid as of the Filing Date.

(tttt) "Secured Notes Deficiency Claim" means the portion, if any, of the Secured Notes Claim that exceeds the value of any Lien securing such indebtedness, including any Lien on collateral. Solely for the purposes of this Plan and assuming Classes 3, 5 and 8A vote to accept this Plan, the Holders of the Secured Notes Deficiency Claim, if any, have agreed to waive such Claim. In the event this Plan is not confirmed by the Bankruptcy Court, the Holders of the Secured Notes Deficiency Claim, if any, shall retain all rights to assert such Claims with respect to any other proposed plan or reorganization.

(uuuu) "Securities Act" means the Securities Act of 1933, as amended.

(vvvv) "SEC" means the United States Securities and Exchange Commission.

(wwww) "Stockholders Agreement" means the agreement described in Section 8.4 of this Plan.

(xxxx)    "Subsidiary Debtors" means MFFC, Mrs. Fields Franchising, LLC, TCBY Systems, LLC, Mrs. Fields Gifts, Inc., The Mrs. Fields' Brand, Inc., Mrs. Fields Cookies Australia, TCBY International, Inc., TCBY of Texas, Inc., PTF, LLC, PMF, LLC, GACCF, LLC, and GAMAN, LLC.

(yyyy)    "Term Sheet" means the term sheet, dated June 2, 2008, as amended on July 11, 2008, and August 13, 2008, the form of which was annexed to the Restructuring Support Agreements as Exhibit A, setting forth the principal terms of the Restructuring, by and between MFOC, MFFB, and MFFC, on the one hand, and those Noteholders who are listed on the signature pages thereto, on the other hand.

(zzzz)    "Unimpaired" means, with respect to a Class of Claims or Interests, any Class that is not Impaired.

(aaaaa)    "Unsecured Claim" means any Claim other than an Other Secured Claim, a Secured Note Claim, an Administrative Expense Claim, a Priority Tax Claim, or a Priority Claim.

(bbbbb)    "Warrant" means that certain warrant to be issued to Capricorn, as the Holder of the MFOC Note, with such warrant entitling Capricorn to purchase an additional number of shares of the New Common Equity so that, after giving effect to the exercise of the Warrant, Capricorn would hold 30% of the outstanding New Common Equity. The foregoing percentage is subject to dilution on the same basis as the New Common Equity to be issued to the Noteholders. The Warrant will be exercisable in whole or in part, at any time or from time to time, for a period of 24 months, beginning on the Effective Date. The aggregate exercise price of the Warrant is determined by first determining the sum of principal plus accrued and unpaid interest on the Old Notes through the Effective Date, less $140 million, divided by 18.875%, then divided by the aggregate number of shares of common stock initially issuable upon exercise of the Warrant (the "*Initial Sum*"). Next, an implied rate of interest equal to 10.47% compounded semi-annually, will be applied to the Initial Sum and computed from the Effective Date through the date of exercise. A form of warrant is annexed to this Plan as Exhibit 3, the terms of which are incorporated herein.

(ccccc)    "Working Capital Facility" means that certain senior secured credit facility in an amount not to exceed $10 million to be entered into by certain of the Reorganized Debtors.

Section 1.2       *Time.*   Whenever the time for the occurrence or happening of an event as set forth in this Plan falls on a day which is a Saturday, Sunday, or legal holiday under the laws of the United States of America or the State of Delaware, then the time for the next occurrence or happening of said event shall be extended to the next day following which is not a Saturday, Sunday, or legal holiday.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS; IMPAIRMENT

Section 2.1       *Summary.*   The categories of Claims and Interests set forth below classify all Claims against and Interests in the Debtors for all purposes of this Plan. This Plan is premised upon the substantive consolidation of the Debtors for Plan purposes only. Accordingly, for

Plan purposes, the assets and liabilities of the Debtors are deemed the assets and liabilities of a single, consolidated entity and any Intercompany Claims are eliminated. A Claim or Interest shall be deemed classified in a particular Class only to the extent the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. The treatment with respect to each Class of Claims and Interests provided for in this Article II shall be in full and complete satisfaction, release, and discharge of such Claims and Interests.

The classification of Claims under this Plan is as follows:

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| 1 | Other Secured Claims | Unimpaired | No |
| 2 | Priority Claims | Unimpaired | No |
| 3 | Secured Notes Claims | Impaired | Yes |
| 4 | General Unsecured Claims | Unimpaired | No |
| 5 | MFOC Note Claim | Impaired | Yes |
| 6 | Intercompany Claims | Impaired | No |
| 7 | Section 510(b) Claims | Impaired | No |

The classification of Interests under this Plan is as follows:

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| 8A | MFOC Equity Interests | Impaired | Yes |
| 8B | MFOC Subsidiary Interests | Unimpaired | No |
| 8C | MFFB Subsidiary Interests | Unimpaired | No |

**Section 2.2** *Deemed Acceptance of Plan.* Classes 1, 2, 4, 8B and 8C are Unimpaired under this Plan. Accordingly, pursuant to section 1126(f) of the Bankruptcy Code, Classes 1, 2, 4, 8B and 8C are deemed to accept this Plan and are not entitled to vote to accept or reject this Plan.

**Section 2.3** *Deemed Rejection of Plan.* Classes 6 and 7 are Impaired under this Plan. Accordingly, pursuant to section 1126(g) of the Bankruptcy Code, Classes 6 and 7 are deemed to reject this Plan and are not entitled to accept or reject this Plan.

## ARTICLE III
## TREATMENT OF CLAIMS AND INTERESTS

**Section 3.1**     *Class 1 -- Other Secured Claims.*

(a)     Classification: Class 1 consists of all Other Secured Claims.

(b)     Treatment: The legal, equitable, and contractual rights of the Holders of Class 1 Other Secured Claims are unaltered by this Plan. Unless the Holder of such Claim and the Plan Proponents agree to a different treatment, each Holder of an Allowed Class 1 Other Secured Claim shall receive, in full and final satisfaction of such Allowed Class 1 Other Secured Claim, one of the following alternative treatments:

1.     the legal, equitable and contractual rights to which such Claim entitles the Holder thereof shall be reinstated and the Holder paid in accordance with such legal, equitable, and contractual rights;

2.     the Debtors shall surrender all collateral securing such Claim to the Holder thereof, in full satisfaction of such Holder's Allowed Class 1 Other Secured Claim, without representation or warranty by or recourse against the Debtors or Reorganized Debtors; or

3.     such Allowed Class 1 Other Secured Claim will be otherwise treated in a manner so that such Claim shall be rendered Unimpaired pursuant to section 1124 of the Bankruptcy Code.

The proposed treatment of each Class 1 Other Secured Claim shall be selected by the Plan Proponents. Any default with respect to any Class 1 Other Secured Claim that occurred prior to the Effective Date shall be deemed cured upon the Effective Date.

(c)     Voting: Class 1 is an Unimpaired Class, and the Holders of Allowed Class 1 Other Secured Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Class 1 Other Secured Claims are not entitled to vote to accept or reject this Plan.

**Section 3.2**     *Class 2 -- Priority Claims.*

(a)     Classification: Class 2 consists of all Priority Claims.

(b)     Treatment: The legal, equitable, and contractual rights of the Holders of Class 2 Priority Claims are unaltered by this Plan. Unless the Holder of such Claim and the Plan Proponents agree to a different treatment, each Holder of an Allowed Class 2 Priority Claim shall receive, in full and final satisfaction of such Allowed Class 2 Priority Claim, one of the following alternative treatments:

1.     to the extent then due and owing on the Effective Date, such Allowed Class 2 Priority Claim will be paid in full in Cash by the Debtors or the Reorganized Debtors on, or as soon as practical after, the Effective Date;

2.      to the extent not due and owing on the Effective Date, such Allowed Class 2 Priority
        Claim will be paid in full in Cash by the Debtors or the Reorganized Debtors when and
        as such Allowed Class 2 Priority Claim becomes due and owing in the ordinary course
        of business; or

3.      such Allowed Class 2 Priority Claim will be otherwise treated in a manner so that such
        Allowed Class 2 Priority Claim shall be rendered Unimpaired pursuant to section 1124
        of the Bankruptcy Code.

The proposed treatment of each Class 2 Priority Claim shall be selected by the Plan Proponents.

        (c)      Voting: Class 2 is an Unimpaired Class, and the Holders of Class 2 Priority
Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the
Bankruptcy Code. Therefore, the Holders of Allowed Class 2 Priority Claims are not entitled to vote to
accept or reject this Plan.

        **Section 3.3**      *Class 3 -- Secured Note Claims.*

        (a)      Classification: Class 3 consists of all Secured Notes Claims. The Secured
Notes Claims are Allowed in full and shall not be subject to any avoidance, reductions, set off, offset,
recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-
claims, defenses, disallowance, impairment, or any other challenges under any applicable law or
regulation by any person or entity. The Secured Notes Claims are Allowed in an amount not less than
$195,747,000 plus applicable fees, charges, costs, and interest accrued but unpaid as of the Filing Date.

        (b)      Treatment: On the Effective Date, in exchange for their Allowed Secured Notes
Claims against each of the Debtors, Holders of Allowed Secured Notes Claims shall receive, on a Pro
Rata basis, (i) the Noteholder Cash, (ii) the New Notes, and (iii) 87.5% of the New Common Equity
issued and outstanding as of the Effective Date. The Holders of Allowed Secured Notes Claims shall
be deemed to waive their Secured Notes Deficiency Claim on the Effective Date.

        (c)      Voting: Class 3 is Impaired. Pursuant to section 1126 of the Bankruptcy Code,
each Holder of Class 3 Allowed Secured Notes Claims is entitled to vote to accept or reject this Plan.

        **Section 3.4**      *Class 4 -- General Unsecured Claims.*

        (a)      Classification: Class 4 consists of all General Unsecured Claims.

        (b)      Treatment: On the later of the Effective Date and the date on which such Claims
are Allowed, or, in each case, as soon thereafter as practicable, each Holder of an Allowed General
Unsecured Claim in Class 4 shall be paid in full and final satisfaction of such Holder's Allowed
General Unsecured Claim in Cash. A General Unsecured Claim that is not due and payable on or
before the Effective Date shall be paid thereafter (i) in the ordinary course of business in accordance
with the terms of any agreement that governs such General Unsecured Claim, or (ii) in accordance
with the course of practice between the Debtors and such Holder with respect to such General
Unsecured Claim

        (c)      Voting: Class 4 is an Unimpaired Class and the Holders of Class 4 General
Unsecured Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of

13

the Bankruptcy Code. Therefore, the Holders of Allowed Class 4 General Unsecured Claims are not entitled to vote to accept or reject this Plan.

>    **Section 3.5**    *Class 5 -- MFOC Note Claim.*

(a)    Classification: Class 5 consists of the MFOC Note Claim. The MFOC Note Claim is Allowed in full and shall not be subject to any avoidance, reductions, set off, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, or any other challenges under any applicable law or regulation by any person or entity. The MFOC Note Claim is Allowed in an amount not less than $6,478,030 plus applicable fees, charges, costs and interest accrued but unpaid as of the Filing Date.

(b)    Treatment: On the Effective Date, the Holder of the Allowed MFOC Note Claim in Class 5 shall receive, (i) 12.5% of the New Common Equity issued and outstanding as of the Effective Date, (ii) the Warrant, and (iii) $1.049 million in cash.

(c)    Voting: Class 5 is Impaired. Pursuant to section 1126 of the Bankruptcy Code, the Holder of the Class 5 MFOC Note Claim is entitled to vote to accept or reject this Plan.

>    **Section 3.6**    *Class 6 -- Intercompany Claims.*

(a)    Classification: Class 6 consists of the Intercompany Claims.

(b)    Treatment: The Intercompany Claims will be discharged on the Effective Date and the Holders of such Claims shall receive no recovery under this Plan.

(c)    Voting: Class 6 is an Impaired Class and pursuant to section 1126(g) of the Bankruptcy Code, the Holders of the Class 6 Intercompany Claim are conclusively deemed to reject this Plan.

>    **Section 3.7**    *Class 7 -- Section 510(b) Claims.*

(a)    Classification: Class 7 consists of the Section 510(b) Claims.

(b)    Treatment: The Section 510(b) Claims shall be deemed canceled and extinguished and shall be discharged on the Effective Date and the Holders of such Claims shall receive no recovery under this Plan.

(c)    Voting: Class 7 is an Impaired Class and pursuant to section 1126(g) of the Bankruptcy Code, the Holders of the Class 7 Section 510(b) Claims are conclusively deemed to reject this Plan.

>    **Section 3.8**    *Classes 8A -- 8C Interests.*

(a)    Classification: Class 8A consists of the MFOC Equity Interests, Class 8B consists of the MFOC Subsidiary Interests, and Class 8C consists of the MFFB Subsidiary Interests.

(b)    Treatment: MFH, as the Holder of the MFOC Equity Interest in Class 8A, shall receive no recovery under this Plan other than the releases and injunctive relief described in Sections 11.3 and 11.6 of this Plan. MFOC, as the Holder of the MFOC Subsidiary Interests in Class 8B, shall

have such Interests reinstated on the Effective Date and remain the 100% parent company of MFFB. MFFB, as the Holder of the MFFB Subsidiary Interests in Class 8C, shall have such Interests reinstated on the Effective Date and remain the 100% parent company of each of its subsidiaries who are Debtors.

(c)     Voting: Class 8A is an Impaired Class. Pursuant to section 1126 of the Bankruptcy Code, the Holder of Class 8A MFOC Equity Interests is entitled to vote to accept or reject this Plan. Classes 8B and 8C are Unimpaired Classes and the Holders of Class 8B MFOC Subsidiary Interests and 8C MFFB Subsidiary Interests are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Allowed Class 8B MFOC Subsidiary Interests and Class 8C MFFB Subsidiary Interests are not entitled to vote to accept or reject this Plan.

**Section 3.9**     *Special Provision Governing Unimpaired Claims.* Except as otherwise provided in this Plan, nothing under this Plan is intended to or shall affect the Debtors' or Reorganized Debtors' rights and defenses in respect of any Claim that is Unimpaired under this Plan, including, without limitation, all rights in respect of legal and equitable defenses to or setoffs or recoupment against or counter-claims with respect to such Unimpaired Claims.

## ARTICLE IV
## TREATMENT OF UNCLASSIFIED CLAIMS

**Section 4.1**     *Summary.* Pursuant to section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims against the Debtors are not classified for purposes of voting on, or receiving Distributions under, this Plan. Holders of such Claims are not entitled to vote on this Plan. All such Claims are instead treated separately in accordance with this Article IV and in accordance with the requirements set forth in section 1129(a)(9) of the Bankruptcy Code.

**Section 4.2**     *Administrative Expense Claims.*

(a)     Subject to the provisions of sections 328, 330(a) and 331 of the Bankruptcy Code, each Holder of an Allowed Administrative Expense Claim will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash on the latest of (i) on, or as soon as reasonably practical after, the Effective Date, (ii) as soon as practicable after the date on which such Claim becomes an Allowed Administrative Expense Claim, (iii) upon such other terms as may be agreed upon by such Holder and the Noteholder Committee or the Reorganized Debtors, or (iv) as otherwise ordered by the Bankruptcy Court; *provided, however*, that Allowed Administrative Expense Claims representing obligations incurred by the Debtors in the ordinary course of business, or otherwise assumed by the Debtors on the Effective Date pursuant to this Plan, including any tax obligations arising after the Filing Date, will be paid or performed by the Reorganized Debtors when due in accordance with the terms and conditions of the particular agreements or non-bankruptcy law governing such obligations.

(b)     Except as otherwise provided in this Plan, any Person asserting an Administrative Expense Claim, other than an Administrative Expense Claim (i) arising from the operation by the Debtors of their business in the ordinary course of business, or (ii) to the extent permitted by law, with respect to the fees and expenses of the Noteholder Committee and its professionals, and the fees and expenses of the Old Notes Trustee and its counsel, shall file a request

for payment of such Administrative Expense Claim with the clerk of the Bankruptcy Court within thirty days after the occurrence of the Effective Date. At the same time any Person files a request for payment of an Administrative Expense Claim, such Person shall also serve a copy of the request for payment of an Administrative Expense Claim upon counsel for the Reorganized Debtors. Any Person who fails to timely file and serve a request for payment of such Administrative Expense Claim shall be forever barred from seeking payment of such Administrative Expense Claim by the Debtors, the Estates, or the Reorganized Debtors.

(c)     Any Person seeking an award by the Bankruptcy Court of Professional Compensation shall file a final application with the Bankruptcy Court for allowance of Professional Compensation for services rendered and reimbursement of expenses incurred through the Effective Date within thirty days after the occurrence of the Effective Date.

**Section 4.3** *Priority Tax Claims.* With respect to any Allowed Priority Tax Claims not paid pursuant to prior Bankruptcy Court order, except to the extent that a holder of an Allowed Priority Tax Claim agrees to different treatment, each holder of an Allowed Priority Tax Claim will receive, at the option of the Plan Proponents, (i) on the Effective Date, Cash in an amount equal to such Allowed Priority Tax Claim, or (ii) commencing on the first anniversary of the Effective Date and continuing on each anniversary thereafter over a period not exceeding five years after the Filing Date, equal annual Cash payments in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest at the applicable rate under non-bankruptcy law, subject to the option of the Plan Proponents, to prepay the entire remaining amount of the Allowed Priority Tax Claim at any time, or (iii) upon such other terms determined by the Bankruptcy Court to provide the Holder of such Allowed Priority Tax Claim deferred Cash payments having a value, as of the Effective Date, equal to such Allowed Priority Tax Claim. All Allowed Priority Tax Claims which are not due and payable on or before the Effective Date will be paid in the ordinary course of business as such obligations become due.

## ARTICLE V
## ACCEPTANCE OR REJECTION OF THIS PLAN

**Section 5.1** *Voting Classes.* Each Holder of an Allowed Claim or Interest, as applicable, in Classes 3, 5, and 8A shall be entitled to vote to accept or reject this Plan.

**Section 5.2** *Acceptance by Voting Classes.* Holders of Allowed Claims or Interests in Classes 3, 5, and 8A shall have accepted this Plan if (i) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount and one-half in number of the Allowed Claims actually voting in Classes 3 and 5 have voted to accept this Plan, and (ii) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Interests actually voting in Class 8A have voted to accept this Plan.

**Section 5.3** *Presumed Acceptance of Plan.* Classes 1, 2, 4, 8B and 8C are Unimpaired under this Plan, and are therefore presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.

**Section 5.4** *Presumed Rejection of Plan.* Classes 6 and 7 are Impaired under this Plan, and are therefore presumed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code.

**Section 5.5** *Non-Consensual Confirmation.* To the extent that any of Classes 3, 5 and 8A vote to reject this Plan, the Plan Proponents reserve the right to seek (i) Confirmation of this Plan under section 1129(b) of the Bankruptcy Code, and/or (ii) modify this Plan in accordance with Section 14.1 hereof.

## ARTICLE VI
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**Section 6.1** *Assumption and Rejection of Executory Contracts and Unexpired Leases.* On the Effective Date, all Executory Contracts or Unexpired Leases of any of the Debtors will be deemed assumed in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, except those Executory Contracts or Unexpired Leases that (i) have been previously assumed or rejected by any Debtor (with the consent of the Noteholder Committee) pursuant to an order of the Bankruptcy Court, (ii) previously expired or terminated pursuant to its own terms, (iii) are the subject of a motion to assume or reject filed by any Debtor (with the consent of the Noteholder Committee) which is pending on the Effective Date, (iv) are identified as being Rejected Contracts on Schedule 6.1 to the Plan, or (v) are assumed or rejected pursuant to the terms of the Plan. An Executory Contract or Unexpired Lease that is deemed to be assumed pursuant to the foregoing sentence shall be referred to as an "*Assumed Contract.*" The Plan Proponents shall file Schedule 6.1 (the contents of which shall be acceptable to the Plan Proponents each in their sole discretion) with the Bankruptcy Court and serve Schedule 6.1 on the non-Debtor parties under the agreements listed thereon no later than ten days prior to the last date for filing objections to confirmation of the Plan, *provided, however,* that the Plan Proponents may amend Schedule 6.1 at any time prior to the Confirmation Hearing.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute findings by the Bankruptcy Court (1) approving the rejection of the Rejected Contracts and (2) with respect to the Assumed Contracts, that (i) the Reorganized Debtors had properly provided for the cure of any defaults that might have existed, (ii) each assumption was in the best interest of the Reorganized Debtors, their Estates, and all parties in interest in the Chapter 11 Cases and (iii) the requirements for assumption of any executory contract or unexpired lease to be assumed had been satisfied. Except as otherwise provided in the following sentence, all cure payments under any Assumed Contract would be made by the Reorganized Debtors on the Effective Date or as soon as practicable thereafter, *provided, however,* that any Claim arising on account of Cure Amounts shall be deemed to have been waived by any Non-Debtor Affiliate who is party to an Assumed Contract. In the event of a dispute, cure payments required by section 365(b)(1) of the Bankruptcy Code shall be paid upon entry of a Final Order resolving such dispute. Each Executory Contract or Unexpired Lease that is assumed by any Debtor (with the consent of the Noteholder Committee) under the Plan and pursuant to the Confirmation Order or pursuant to any other Final Order entered by the Bankruptcy Court shall be deemed to be assigned to the Reorganized Debtors on the later of (i) the Effective Date or (ii) the date of assumption.

All of the Debtors' programs, plans, agreements and arrangements relating to non-executive employee compensation and benefits, including, without limitation, all savings plans, retirement plans, healthcare plans, disability plans, severance plans, incentive plans, and life, accidental death and dismemberment insurance plans, entered into before the Filing Date and not since terminated, will be deemed to be, and will be treated as though they are, executory contracts that are assumed under this Section 6.1 of the Plan, and the Debtors' and Reorganized Debtors' obligations under such programs, plans, agreements

17

and arrangements will survive confirmation of the Plan and will be fulfilled in the ordinary course of business.

        **Section 6.2**     *Rejection Damages Claims.* All proofs of claim with respect to Claims arising from the rejection pursuant to this Plan of the Rejected Contracts, if any, must be filed with the clerk of the Bankruptcy Court and served upon counsel for the Reorganized Debtors within thirty days of the occurrence of the Effective Date. Any Claim arising from the rejection of Executory Contracts or Unexpired Leases that becomes an Allowed Claim is classified and shall be treated as a Class 4 General Unsecured Claim, as applicable; *provided, however,* that any Claim arising from a Rejected Contract shall be deemed to have been waived by any Non-Debtor Affiliate who is party to such a Rejected Contract. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed within the time required by this section will be forever barred from assertion against the Debtors, the Reorganized Debtors, the Estates, or property of the Debtors or Reorganized Debtors.

        **Section 6.3**     *Employment Agreements.* Except as otherwise provided in this Plan, to the extent the Debtors had employment agreements with any of their executives and key employees as of the Filing Date, the Plan Proponents will disclose on Schedule 6.1 whether they intend to reject such contracts. Notwithstanding anything to the contrary in this Plan, the Reorganized Debtors shall maintain all of their existing rights, including, without limitation, any rights that they may have to amend, modify, or terminate, the employment agreements assumed pursuant to this article, subject to the existing contractual rights, if any, of the directors, officers or employees affected thereby. All employment agreements assumed pursuant to this Section 6.3 of this Plan shall be deemed modified such that transactions contemplated by this Plan shall not be a "change in control" as defined in the relevant employment agreements. Any Holder of a Claim arising from the rejection of an employment agreement must file a proof of claim with the Bankruptcy Court within thirty days of the deemed rejection. Any Claims arising from the rejection of an employment agreement not filed within the time required by this section will be forever barred from assertion against the Debtors, the Reorganized Debtors, the Estates or property of the Debtors or Reorganized Debtors.

        **Section 6.4**     *Management Incentive Plan.* The Board of Directors of Reorganized MFOC shall have the authority to establish a Management Incentive Plan that shall be acceptable to the Noteholder Committee, as soon as practicable after the Effective Date, to provide designated members of senior management of the Reorganized Debtors with warrants and/or options for up to 10% of the equity of Reorganized MFOC, on a fully diluted basis, being reserved for issuance to senior management at the same strike price as the Warrant. The Management Incentive Plan will contain terms and conditions that shall be determined by the Board of Directors of Reorganized MFOC.

### ARTICLE VII
### MEANS FOR IMPLEMENTATION OF PLAN

        **Section 7.1**     *Continued Legal Existence.* Except as otherwise provided in this Plan, each of the Debtors will continue to exist after the Effective Date as a separate legal entity, with all the powers of such an entity (whether a corporation, limited liability company or other entity, as appropriate) under applicable law in the jurisdiction in which each applicable Debtor is incorporated or otherwise formed and pursuant to its certificate or articles of incorporation and by-laws or other organizational documents in effect prior to the Effective Date, except to the extent such certificate or

articles of incorporation and by-laws or other organizational documents are amended by this Plan, without prejudice to any right to terminate such existence (whether by merger or otherwise) under applicable law after the Effective Date.

   **Section 7.2**  *Sources of Cash for Distribution.*  All Cash necessary for the Reorganized Debtors to make payments required by this Plan shall be obtained from existing Cash balances, the Net Cash Proceeds held by the Old Notes Trustee, the operations of the Debtors or Reorganized Debtors or the Working Capital Facility.

   **Section 7.3**  *Reinstatement of Interests.*  There shall be no reinstatement or other recovery for the Interests held directly by MFH in MFOC in accordance with the terms of the Plan. The MFOC Subsidiary Interests held directly by MFOC and the MFFB Subsidiary Interests held by MFFB or its Subsidiary Debtors shall be reinstated in accordance with the terms of the Plan.

   **Section 7.4**  *Cancellation of Existing Securities and Agreements/Discharge of Old Notes Trustee.*  Except as set forth in the Plan, upon the Effective Date, the Existing Securities shall be cancelled and the holders thereof shall have no further rights or entitlements in respect thereof against the Debtors or Non-Debtor Affiliates except the rights to receive the distributions to be made to such holders under the Plan and all Liens against Non-Debtor Affiliates shall be automatically released.  To the extent possible, distributions to be made under the Plan to the beneficial owners of the Old Notes shall be made through The Depository Trust Company ("*DTC*") and its participants.  The Confirmation Order shall authorize and direct the Old Notes Trustee to take whatever action may be necessary or appropriate, in its reasonable discretion, to deliver the distributions, including, without limitation, obtaining an order of the Bankruptcy Court.  On the Effective Date, the Old Notes Trustee and its agents shall be discharged of all its obligations associated with (i) the Old Notes, (ii) the Old Notes Indenture, and (iii) any related documents, and released from all Claims arising in the Bankruptcy Cases.  As of the Effective Date, the Indenture shall be deemed fully satisfied and cancelled, except that such cancellation shall not impair the rights of the Holders of the Old Notes to receive distributions under the Plan, or the rights of the Old Notes Trustee under the Indenture Trustee Charging Lien, to the extent that the Old Notes Trustee has not received payment as provided for in Section 7.5 of the Plan.  On the Effective Date, all Liens in favor of the Old Notes Trustee for the benefit of the holders of the Old Notes or otherwise arising under the Old Notes Indenture shall be deemed released.

   **Section 7.5**  *Old Notes Trustee and Noteholder Committee Expenses.*  To the extent permitted by law, all outstanding fees and expenses of (i) the Old Notes Trustee and its counsel and (ii) the Noteholder Committee and its professionals shall be paid in Cash on the Effective Date by the Debtors or Reorganized Debtors as an Administrative Expense Claim, without the need for application to, or approval of, the Bankruptcy Court.  To the extent that the Old Notes Trustee in its capacity as trustee under the Indenture provides services related to the Distributions pursuant to this Plan, the Old Notes Trustee will be paid by the Reorganized Debtors, without Bankruptcy Court approval, the reasonable compensation for such services and reimbursement of reasonable expenses incurred in connection therewith, with such payments to be made on terms agreed to between the Old Notes Trustee and the Reorganized Debtors.

   **Section 7.6**  *Deferred Blackstone Fee.*  The Reorganized Debtors will pay not later than December 31, 2008 or earlier, should there be available net proceeds from the sale of TCBY, if sold, or any of the NexCen Shares, the remainder of the fees and expenses payable to Blackstone for

its financial advisory work for the Debtors. The Debtors estimate that the amount of such fees and expenses to be so paid will be approximately $1.0 million.

        **Section 7.7**      *Corporate Action.* Each of the matters provided for under this Plan involving the corporate structure of any Debtor or Reorganized Debtor or any corporate action to be taken by or required of any Debtor or Reorganized Debtor, including, without limitation, the adoption of the certificates of incorporation and bylaws of each of the Reorganized Debtors as provided for in Section 8.1 of this Plan, shall be deemed to have occurred and be effective as provided herein, and shall be authorized, approved and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by stockholders, members, creditors, directors, or managers of any of the Debtors or the Reorganized Debtors.

        **Section 7.8**      *Preservation of Causes of Action.* In accordance with section 1123(b)(3) of the Bankruptcy Code the Reorganized Debtors will retain and may (but are not required to) enforce all Retained Actions. After the Effective Date, the Reorganized Debtors, in their sole and absolute discretion, shall have the right to bring, settle, release, compromise, or enforce such Retained Actions (or decline to do any of the foregoing), without further approval of the Bankruptcy Court. The Reorganized Debtors or any successors, in the exercise of their sole discretion, may pursue such Retained Actions so long as it is in the best interests of the Reorganized Debtors or any successors holding such rights of action. The failure of the Debtors to specifically list any claim, right of action, suit, proceeding or other Retained Action in this Plan does not, and will not be deemed to, constitute a waiver or release by the Debtors or the Reorganized Debtors of such claim, right of action, suit, proceeding or other Retained Action, and the Reorganized Debtors will retain the right to pursue such claims, rights of action, suits, proceedings and other Retained Actions in their sole discretion and, therefore, no preclusion doctrine, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise) or laches will apply to such claim, right of action, suit, proceeding, or other Retained Action upon or after the confirmation or consummation of this Plan.

        **Section 7.9**      *Effectuating Documents; Further Transactions.* Each of the Debtors (subject to the consent of the Noteholder Committee) and Reorganized Debtors, and their respective officers and designees, is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan, or to otherwise comply with applicable law.

        **Section 7.10**      *Exemption From Certain Transfer Taxes and Recording Fees.* Pursuant to section 1146(a) of the Bankruptcy Code, any transfers from a Debtor to a Reorganized Debtor or to any other Person or entity pursuant to this Plan, or any agreement regarding the transfer of title to or ownership of any of the Debtors' real or personal property will not be subject to any document recording tax, stamp tax, conveyance fee, sales tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the Confirmation Order will direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**Section 7.11**    *Further Authorization.* The Reorganized Debtors shall be entitled to seek such orders, judgments, injunctions, and rulings as they deem necessary to carry out the intentions and purposes, and to give full effect to the provisions, of this Plan.

### ARTICLE VIII
### PROVISIONS REGARDING CORPORATE GOVERNANCE OF REORGANIZED DEBTORS

**Section 8.1**    *Certificates of Incorporation and By-Laws.* The organizational documents of each Reorganized Debtor shall be amended to conform with the requirements of section 1123(a)(6) of the Bankruptcy Code.

**Section 8.2**    *Directors and Officers of Reorganized Debtors.*

(a)    Directors. Pursuant to the Term Sheet, the initial Board of Directors of Reorganized MFOC shall consist of seven directors, four of whom shall be designated by the Noteholder Committee, and two of whom shall be designated jointly by Capricorn. The chief executive officer of Reorganized MFOC shall be the seventh director. The identities of the members of the initial Board of Directors to be designated by the Noteholder Committee and the identity of the chief executive officer have not been determined as of the date of this Plan and shall be disclosed in the Plan Supplement. The members of the initial Board of Directors to be designated by Capricorn are expected to be Don K. Rice and John D. Collins, each of whom is currently a director of MFFB, though it is possible that either or both of them may decline to be so designated prior to the Effective Date. The members of the initial Boards of Directors or equivalent governing bodies for the Reorganized Subsidiaries shall be selected by the initial Board of Directors for Reorganized MFOC and shall consist of officers or directors of the Reorganized Debtors. To the extent any such Person is an Insider (as defined in section 101(31) of the Bankruptcy Code), the nature of any compensation for such Person will also be disclosed prior to the Confirmation Hearing. Each of the Persons on the initial Boards of Directors of the respective Reorganized Debtors shall serve in accordance with the certificates of incorporation and bylaws of the respective Reorganized Debtor, as the same may be amended from time to time.

(b)    Officers. The identities of the initial officers of the Reorganized Debtors have not been determined as of the date hereof and shall be disclosed in the Plan Supplement. To the extent any such Person is an Insider (as defined in section 101(31) of the Bankruptcy Code), the nature of any compensation for such Person will also be disclosed at such time. The initial officers shall serve in accordance with the certificates of incorporation and bylaws of the applicable Reorganized Debtor, as the same may be amended from time to time.

**Section 8.3**    *Issuance of New Securities*

(a)    New Common Equity. On the Effective Date, Reorganized MFOC shall issue shares of New Common Equity pursuant to the Plan. The certificate of incorporation and by-laws for Reorganized MFOC, forms of which are annexed hereto as Exhibits 1 and 2 and are described in Appendix I to the Disclosure Statement, sets forth the rights of the New Common Equity. The New Common Equity shall be issued subject to the Stockholders Agreement, a form of which is annexed hereto as Exhibit 5 and described in Appendix III to the Disclosure Statement.

(b)    Warrant. On the Effective Date, Reorganized MFOC shall (i) issue the Warrant, a substantially similar form of which is annexed hereto as Exhibit 3 and described in Appendix IV to

the Disclosure Statement, and (ii) have authorized the issuance of New Common Equity issuable under the Warrant.

(c)    New Notes.  On the Effective Date, Reorganized MFFB and Reorganized MFFC, as co-issuers, shall issue $50 million in principal amount of New Notes (as described in Section 1.1, subject to an increase by the amount by which the Noteholder Cash is less than $90 million), which New Notes incorporate the terms and conditions set forth in the New Notes Indenture annexed hereto as Exhibit 4 and described in Appendix II to the Disclosure Statement. The "issue price" and "yield to maturity" of a New Note for U.S. federal income tax purposes shall be determined by the co-issuers and shall be binding on all holders and persons holding beneficial interests in the New Notes.

**Section 8.4**    *Stockholders Agreement.* All holders of New Common Equity and Warrant will be subject to the Stockholders Agreement which will, among other things, govern each holder of New Common Equity's and Warrant's access to information with respect to the Reorganized Debtors and the ability to transfer such holder's New Common Equity and Warrant. Each certificate representing share(s) of New Common Equity or Warrant shall bear a legend indicating that the New Common Equity and Warrant are subject to the Stockholders Agreement. The Stockholders Agreement, a form of which is annexed hereto as Exhibit 5 and described in Appendix III to the Disclosure Statement, will be effective as of the Effective Date.

## ARTICLE IX
## DISTRIBUTIONS UNDER THE PLAN

**Section 9.1**    *Disbursing Agent.* Unless otherwise provided for herein, all Distributions under this Plan shall be made by the Reorganized Debtors or their agent. Notwithstanding the foregoing, all Distributions to the Holders of Allowed Secured Notes Claims shall be made by the applicable Reorganized Debtor to such Holders through the Old Notes Trustee.

**Section 9.2**    *Distributions of Cash.* Any Distribution of Cash made by the Reorganized Debtors pursuant to this Plan shall, at the Reorganized Debtor's option, be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

**Section 9.3**    *Time Bar to Cash Payments.* Checks issued in respect of Allowed Claims shall be null and void if not negotiated within one hundred and eighty days after the date of issuance thereof. Requests for reissuance of any voided check shall be made directly to the Debtors or Reorganized Debtors by the holder of the Allowed Claim to whom such check was originally issued. Any Claim in respect of such a voided check shall be made on or before the later of (a) the first anniversary of the date on which such Distribution or payment was made and (b) one hundred and eighty days after the date of the issuance of such check. If no Claim is made as provided in the preceding sentence, all Claims in respect of void checks shall be discharged and forever barred and such unclaimed Distributions shall revert to the Debtors or Reorganized Debtors.

**Section 9.4**    *No Interest on Claims or Interests.* Unless otherwise specifically provided for in this Plan, the Confirmation Order, or a postpetition agreement in writing between the Debtors and a Holder, postpetition interest shall not accrue or be paid on Claims, and no Holder shall be entitled to interest accruing on or after the Filing Date on any Claim; *provided, however*, that in accordance with the Term Sheet, the Old Notes and MFOC Note shall accrue interest through the Effective Date. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on

any Disputed Claim in respect of the period from the Effective Date to the date a Final Distribution is made when and if such Disputed Claim becomes an Allowed Claim.

    **Section 9.5**  *Delivery of Distributions.* The Distribution to a Holder of an Allowed Claim shall be made by the Reorganized Debtors (i) at the last known address of such Holder according to the Debtors' books and records; (ii) at the address set forth on any proof of Claim filed by such Holder or at the address set forth in any written notices of address change delivered to the Debtors or Reorganized Debtors after the date of any related proof of Claim, or (iii) in the case of Secured Notes Claims, to the Old Notes Trustee for ultimate distribution to the Holders of such Secured Notes Claims. If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until the Reorganized Debtors are notified of such Holder's then-current address, at which time all missed Distributions shall be made to such Holder without interest. All Distributions returned to the Reorganized Debtors and not claimed within six months of return shall be irrevocably retained by the Reorganized Debtors notwithstanding any federal or state escheat laws to the contrary. Upon such reversion, the claim of any Holder or their successors with respect to such property shall be discharged and forever barred notwithstanding any federal or state escheat laws to the contrary.

    **Section 9.6**  *Distributions to Holders as of the Distribution Record Date.* All Distributions on Allowed Claims, except for distributions to Holders of Secured Notes Claims, shall be made to the Record Holders of such Claims. As of the close of business on the Distribution Record Date, there shall be no further changes in the Record Holder of any Claim. The Reorganized Debtors shall have no obligation to recognize any transfer of any Claim occurring after the Distribution Record Date. The Reorganized Debtors shall instead be entitled to recognize and deal for all purposes under this Plan with the Record Holders as of the Distribution Record Date. In the case of Secured Notes Claims, the distribution will be made to the Old Notes Trustee for ultimate distribution to the Holders of such Secured Notes Claims.

    **Section 9.7**  *Fractional Securities; Fractional Dollars.* Any other provision of this Plan notwithstanding, payments of fractions of shares of New Common Equity will not be made and shall be deemed to be zero. Any other provision of this Plan notwithstanding, the Reorganized Debtors shall not be required to make Distributions or payments of fractions of dollars. Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

    **Section 9.8**  *Withholding Taxes.* The Debtors or the Reorganized Debtors, as the case may be, shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions under this Plan shall be subject to any such withholding and reporting requirements.

## ARTICLE X
## PROCEDURES FOR TREATING AND RESOLVING DISPUTED CLAIMS

    **Section 10.1**  *Objections to Claims.* The Reorganized Debtors shall be entitled to object to Claims, *provided, however,* that the Debtors and Reorganized Debtors shall not be entitled to object to Claims (i) that have been Allowed by a Final Order entered by the Bankruptcy Court prior to the Effective Date or (ii) that are Allowed by the express terms of this Plan. Any objections to Claims must be filed by the Claims Objection Deadline.

**Section 10.2**     *Estimation of Claims.*  The Plan Proponents or the Reorganized Debtors, as the case may be, may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502 of the Bankruptcy Code regardless of whether the Plan Proponents or the Reorganized Debtors have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another.

**Section 10.3**     *Resolution of Claims Objections.*  On and after the Effective Date, the Reorganized Debtors shall have the authority to compromise, settle, otherwise resolve, or withdraw any objections to Claims without approval of the Bankruptcy Court.

**Section 10.4**     *Distributions After Allowance.*  On the first Distribution Date after a Disputed General Unsecured Claim becomes an Allowed General Unsecured Claim, the Holder of an Allowed General Unsecured Claim shall receive the Distribution to which such Holder is then entitled *plus* any Distribution such Holder would have received on a prior Distribution Date had such Holder's Claim been Allowed on such prior Distribution Date; *provided, however*, if the date such General Unsecured Claim becomes entitled to a Distribution is less than twenty Business Days prior to the next Distribution Date, the Distribution with respect to such Claim will be made on the first Distribution Date that occurs more than twenty Business Days after the Claim becomes entitled to a Distribution. All Distributions made under this article of this Plan will be made together with any dividends, payments, or other Distributions made on account of, as well as any obligations arising from, the distributed property as if such Claim had been an Allowed Claim on the dates Distributions were previously made to Allowed Holders included in the applicable Class.

## ARTICLE XI
## EFFECT OF PLAN ON CLAIMS AND INTERESTS

**Section 11.1**     *Revesting of Assets.*  Except as otherwise explicitly provided in this Plan, on the Effective Date, all property comprising the Estates (including Retained Actions, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall revest in the Reorganized Debtors, free and clear of all Claims, Liens, charges, encumbrances, rights and Interests of creditors and equity security holders, except as specifically provided in this Plan. As of the Effective Date, the Reorganized Debtors may operate their businesses and use, acquire, and dispose of property and settle and compromise Claims or Interests without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan or the Confirmation Order.

**Section 11.2**     *Release and Discharge of the Debtors.*  Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in this Plan or in the Confirmation Order, the Distributions and rights that are provided in this Plan shall be deemed to and hereby unconditionally and irrevocably release and discharge the Debtors, the Reorganized Debtors or their Estates from any and all claims, demands, debts, rights, Causes of Action or liabilities (other than the right to enforce obligations under this Plan, Confirmation Order, and the contracts, instruments, releases, agreements and documents delivered under this Plan), known or unknown, liquidated or unliquidated, fixed or contingent, matured or unmatured, foreseen or unforeseen, then existing or

thereafter arising, in law, equity or otherwise that relates to any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date.

### Section 11.3    *Releases.*

(a)    Debtor Releases.    On the Effective Date, and to the greatest extent permissible by law, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors and Reorganized Debtors, on behalf of themselves and their Estates shall be deemed to and hereby unconditionally and irrevocably release, waive and discharge all of the Debtors' respective officers serving on the Effective Date, current and former directors, legal and financial advisors, and other representatives of the Debtors, in each case in their capacity as such, the Non-Debtor Affiliates, including the Holder of the MFOC Equity Interests as of the Filing Date, the shareholders of the Non-Debtor Affiliates, in their capacity as such, the current and former members of the Noteholder Committee including their legal and financial advisors, in each case in their capacity as such, and the Old Notes Trustee, including its legal and financial advisors, in each case in their capacity as such (collectively, the "*Debtor Released Parties*"), from any and all claims, demands, debts, rights, Causes of Action or liabilities (other than the right to enforce obligations under this Plan, Confirmation Order, and the contracts, instruments, releases, agreements and documents delivered under this Plan), known or unknown, liquidated or unliquidated, fixed or contingent, matured or unmatured, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that relates to any pre-Filing Date act, omission, transaction, event or other occurrence, in any way relating to the Debtors, the Reorganized Debtors, the Bankruptcy Cases, the Plan, or the Disclosure Statement, except that no Debtor Released Party shall be released from any act or omission that constitutes willful misconduct or fraud.

(b)    Non-Debtor Affiliate Releases.    On the Effective Date, and to the greatest extent permissible by law, for good and valuable consideration, the adequacy of which is hereby confirmed, the Non-Debtor Affiliates, including the Holder of the MFOC Equity Interests as of the Filing Date, and the shareholders of the Non-Debtor Affiliates, in their capacity as such, shall be deemed to and hereby unconditionally and irrevocably release, waive and discharge the Debtors, and each of its and their Estates, Reorganized Debtors, all of the Debtors' respective officers serving on the Effective Date, current and former directors, legal and financial advisors, and other representatives of the Debtors, in each case in their capacity as such, the current and former members of the Noteholder Committee including their legal and financial advisors, in each case in their capacity as such, and the Old Notes Trustee, including its legal and financial advisors, in each case in their capacity as such (collectively, the "*Non-Debtor Affiliate Released Parties*"), from any and all claims, demands, debts, rights, Causes of Action or liabilities (other than the right to enforce obligations under this Plan, Confirmation Order, and the contracts, instruments, releases, agreements and documents delivered under this Plan), known or unknown, liquidated or unliquidated, fixed or contingent, matured or unmatured, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that relates to any pre-Filing Date act, omission, transaction, event or other occurrence, in any way relating to the Debtors, the Reorganized Debtors, the Bankruptcy Cases, the Plan, or the Disclosure Statement, except that no Non-Debtor Affiliate Released Party shall be released from any act or omission that constitutes willful misconduct or fraud.

(c)    Noteholder Committee and Old Notes Trustee Releases.    On the Effective Date, and to the greatest extent permissible by law, for good and valuable consideration, the adequacy of which is hereby confirmed, the current and former members of the Noteholder Committee, in their

capacity as such, and the Old Notes Trustee, in its capacity as such, shall be deemed to and hereby unconditionally and irrevocably release, waive and discharge the Debtors, and each of its and their Estates, Reorganized Debtors, all of the Debtors' respective officers serving on the Effective Date, current and former directors, legal and financial advisors, and other representatives of the Debtors, in each case in their capacity as such, and the Non-Debtor Affiliates, including the Holder of the MFOC Equity Interests as of the Filing Date, and the shareholders of the Non-Debtor Affiliates, in their capacity as such, (collectively, the *"Noteholder Committee Released Parties"*), from any and all claims, demands, debts, rights, Causes of Action or liabilities (other than the right to enforce obligations under this Plan, Confirmation Order, and the contracts, instruments, releases, agreements and documents delivered under this Plan), known or unknown, liquidated or unliquidated, fixed or contingent, matured or unmatured, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that relates to any pre-Filing Date act, omission, transaction, event or other occurrence, in any way relating to the Debtors, the Reorganized Debtors, the Bankruptcy Cases, the Plan, or the Disclosure Statement, except that no Noteholder Committee Released Party shall be released from any act or omission that constitutes willful misconduct or fraud.

(d)     Holder of Old Notes Releases.  On the Effective Date, and to the greatest extent permissible by law, for good and valuable consideration, the adequacy of which is hereby confirmed, the Holders of Old Notes, in their capacity as such, shall be deemed to and hereby unconditionally and irrevocably release, waive and discharge the Debtors, and each of its and their Estates, Reorganized Debtors, all of the Debtors' respective officers serving on the Effective Date, current and former directors, legal and financial advisors, and other representatives of the Debtors, in each case in their capacity as such, and the current and former members of the Noteholder Committee including their legal and financial advisors, in each case in their capacity as such, and the Non-Debtor Affiliates, including the Holder of the MFOC Equity Interests as of the Filing Date, and the shareholders of the Non-Debtor Affiliates, in their capacity as such, and the Old Notes Trustee, including its legal and financial advisors, in each case in their capacity as such (collectively, the *"Old Notes Released Parties"*), from any and all claims, demands, debts, rights, Causes of Action or liabilities (other than the right to enforce obligations under this Plan, Confirmation Order, and the contracts, instruments, releases, agreements and documents delivered under this Plan), known or unknown, liquidated or unliquidated, fixed or contingent, matured or unmatured, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that relates to any pre-Filing Date act, omission, transaction, event or other occurrence, in any way relating to the Debtors, the Reorganized Debtors, the Bankruptcy Cases, the Plan, or the Disclosure Statement, except that no Old Notes Released Party shall be released from any act or omission that constitutes willful misconduct or fraud.

**Section 11.4**     *Setoffs.*  The Debtors may, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that the Debtors may have against such Holder; but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such claim that the Debtors or the Reorganized Debtors may have against such Holder.

**Section 11.5**     *Exculpation and Limitation of Liability.*  The Debtors, the Reorganized Debtors, the Noteholder Committee, the current and former members of the Noteholder Committee in their capacities as such, the Old Notes Trustee, in its capacity as such, and any of such parties' respective current and/or post-Filing Date and pre-Effective Date members, officers, directors, employees, advisors, attorneys, representatives, financial advisors, investment bankers, or agents and

any of such parties' successors and assigns, shall not have or incur, and are hereby released from, any claim, obligation, cause of action, or liability to any Holder of any Claim or Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or Affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Bankruptcy Cases, the negotiation, solicitation, and filing of this Plan, the filing of the Bankruptcy Cases, the pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, except for their willful misconduct or fraud, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under this Plan.

**Section 11.6** *Injunction.* **Except as otherwise expressly provided herein or in the Confirmation Order, all Persons or entities who have held, hold, or may hold Claims against or Interests in the Debtors are permanently enjoined, from and after the Effective Date, from: (i) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Interest against any of the Reorganized Debtors or the Non-Debtor Affiliates on account of such Claims or Interests; (ii) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against any Reorganized Debtor or Non-Debtor Affiliate with respect to such Claim or Interest; (iii) creating, perfecting, or enforcing any lien or encumbrance of any kind against any Reorganized Debtor or Non-Debtor Affiliate or against the property or interests in property of any Reorganized Debtor or Non-Debtor Affiliate with respect to such Claim or Interest; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation owed to any Reorganized Debtor or Non-Debtor Affiliate or against the property or interest in property of any Reorganized Debtor or Non-Debtor Affiliate with respect to such Claim or Interest, *provided, however,* that nothing contained herein shall limit a Person's ability to assert a valid defense to any Cause of Action, or limit a Person's ability to exercise its valid setoff or recoupment rights with respect to such Person's post-Filing Date claims against the Debtors or Reorganized Debtors and post-Filing Date debts owed to the Debtors or Reorganized Debtors; and (v) pursuing any claim released pursuant to this Article XI of this Plan.**

**Section 11.7** *Effect of Effective Date.*

(a) Binding Effect. On the Effective Date, the provisions of this Plan shall be binding on the Debtors, the Estates, all Holders of Claims against or Interests in the Debtors, and all other parties in interest whether or not such Holders are Impaired and whether or not such Holders have accepted this Plan.

(b) Effect of Effective Date on Automatic Stay. Except as provided otherwise in this Plan, from and after the Effective Date, the automatic stay of section 362(a) of the Bankruptcy Code shall terminate.

(c) Filing of Reports. The Reorganized Debtors shall file all reports and pay all fees required by the Bankruptcy Code, Bankruptcy Rules, U.S. Trustee guidelines, and the rules and orders of the Bankruptcy Court.

(d) Post-Effective Date Retention of Professionals. Upon the Effective Date, any requirement that professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate, and the Reorganized Debtors will employ and pay professionals in the ordinary course of business.

**ARTICLE XII**
**CONDITIONS PRECEDENT**

**Section 12.1** *Conditions to Confirmation.* The following are conditions precedent to confirmation of this Plan that may be satisfied or waived in accordance with Section 12.3 of this Plan:

(a)    This Plan and Disclosure Statement shall be filed on the Filing Date;

(b)    On the Filing Date (or as soon as practicable, but not later than one week, thereafter), the Debtors shall file any other pleadings necessary to effectuate the confirmation of this Plan on an expedited and efficient basis;

(c)    The combined hearing seeking approval of the Disclosure Statement and confirmation of the Plan shall have occurred within thirty-five days of the Filing Date;

(d)    The Disclosure Statement and Plan, including any exhibits, appendices and related documents, that are not inconsistent with the terms set forth herein and acceptable to the Noteholder Committee, in its sole discretion, shall have been approved by a final, non-appealable order of the Bankruptcy Court, in form and substance acceptable to the Noteholder Committee, within forty-five days of the Filing Date;

(e)    The Effective Date shall have occurred within sixty days of the Filing Date;

(f)    One or more of the Bankruptcy Cases shall not have been converted to a case under Chapter 7 of the Bankruptcy Code, unless such conversion is made with the prior written consent of the Noteholder Committee, which consent shall be provided or withheld in the Noteholder Committee's sole discretion;

(g)    There shall not have been the appointment of a trustee, receiver or examiner with expanded powers in one or more of the Bankruptcy Cases unless such appointment is made with the prior written consent of the Noteholder Committee, which consent shall be provided or withheld in the Noteholder Committee's sole discretion; and

(h)    The Debtors shall not have submitted any amendment, modification or filing seeking to amend or modify this Plan, Disclosure Statement or any documents related to the foregoing, including motions, notices, exhibits, appendices and orders, in any manner not acceptable to the Noteholder Committee, in its sole discretion.

**Section 12.2** *Conditions to the Effective Date.* The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with Section 12.3 of this Plan:

(a)    The Confirmation Order in form and substance acceptable to the Plan Proponents each in their sole discretion shall have become a Final Order and shall not have been vacated or modified;

(b)    It shall be no later than sixty days from the Filing Date;

(c)     The Debtors shall not have experienced a material adverse effect (as defined in the Term Sheet) prior to the Effective Date and the holders of a majority of the Old Notes held by the members of the Noteholder Committee shall not have invoked such condition;

(d)     All documents and agreements to be executed on the Effective Date or otherwise necessary to implement this Plan shall be effective on the Effective Date;

(e)     The Debtors shall have received any authorization, consent, regulatory approval, ruling, letter, opinion, or document that may be necessary to implement this Plan or that is required by law, regulation, or order; and

(f)     The New Common Equity, Warrant, and New Notes shall have been issued in accordance with this Plan.

**Section 12.3**     *Waiver of Conditions to Confirmation or Consummation.* The conditions set forth in Section 12.1 and Section 12.2 of this Plan may be waived, in whole or in part, by the Noteholder Committee without any notice to any other parties in interest or the Bankruptcy Court and without a hearing, other than the notice that shall be provided to the Debtors; *provided, however,* the conditions to the Effective Date in Section 12.2(a), 12.2(e) and 12.2(f) of this Plan may only be waived, in whole or in part, by consent of both Plan Proponents, each in their sole discretion. The failure of the Noteholder Committee or, as applicable, the Plan Proponents, to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time prior to the Confirmation Date for the conditions set forth in Section 12.1 or the Effective Date for the conditions set forth in Section 12.2.

**Section 12.4**     *Effect of Non-Occurrence of the Effective Date.* If the Effective Date shall not occur notwithstanding Section 12.3, this Plan shall be null and void and nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims against or Interests in a Debtor; (b) prejudice in any manner the rights of the Debtors, including without limitation, the right to seek a further extension of the exclusivity periods under section 1121(d) of the Bankruptcy Code; or (c) constitute an admission, acknowledgement, offer or undertaking by the Debtors.

## ARTICLE XIII
## RETENTION AND SCOPE OF JURISDICTION OF THE BANKRUPTCY COURT

**Section 13.1**     *Retention of Jurisdiction.* Subsequent to the Effective Date, the Bankruptcy Court shall have or retain jurisdiction for the following purposes:

(a)     To adjudicate objections concerning the allowance, priority or classification of Claims or Interests and any subordination thereof, and to establish a date or dates by which objections to Claims must be filed to the extent not established herein;

(b)     To liquidate the amount of any Disputed, contingent or unliquidated Claim, to estimate the amount of any Disputed, contingent or unliquidated Claim, and to establish the amount of any reserve required to be withheld from any Distribution under this Plan.

(c)     To resolve all matters related to the rejection, and assumption and/or assignment of any Executory Contract or Unexpired Lease of the Debtors;

(d)     To hear and rule upon all Retained Actions, Avoidance Actions and other Causes of Action commenced and/or pursued by the Debtors and/or the Reorganized Debtors;

(e)     To hear and rule upon all applications for Professional Compensation;

(f)     To remedy any defect or omission or reconcile any inconsistency in this Plan, as may be necessary to carry out the intent and purpose of this Plan;

(g)     To construe or interpret any provisions in this Plan and to issue such orders as may be necessary for the implementation, execution and consummation of this Plan, to the extent authorized by the Bankruptcy Code;

(h)     To adjudicate controversies arising out of the administration of the Estates or the implementation of this Plan;

(i)     To make such determinations and enter such orders as may be necessary to effectuate all the terms and conditions of this Plan, including the Distribution of funds from the Estates and the payment of Claims;

(j)     To determine any suit or proceeding brought by the Debtors and/or the Reorganized Debtors to recover property under any provisions of the Bankruptcy Code;

(k)     To hear and determine any tax disputes concerning the Debtors and to determine and declare any tax effects under this Plan;

(l)     To determine such other matters as may be provided for in this Plan or the Confirmation Order or as may be authorized by or under the provisions of the Bankruptcy Code;

(m)     To determine any controversies, actions or disputes that may arise under the provisions of this Plan, or the rights, duties or obligations of any Person under the provisions of this Plan; and

(n)     To enter a final decree.

**Section 13.2**     *Alternative Jurisdiction.*  In the event that the Bankruptcy Court is found to lack jurisdiction to resolve any matter, then the District Court shall hear and determine such matter. If the District Court does not have jurisdiction, then the matter may be brought before any court having jurisdiction with regard thereto.

**Section 13.3**     *Final Decree.*  The Bankruptcy Court may, upon application of the Reorganized Debtors, at any time on or after one hundred twenty days after the Initial Distribution Date, enter a final decree in these cases, notwithstanding the fact that additional funds may eventually be distributed to parties in interest. In such event, the Bankruptcy Court may enter an Order closing these cases pursuant to section 350 of the Bankruptcy Code, *provided, however*, that: (i) the Reorganized Debtors shall continue to have the rights, powers, and duties set forth in this Plan; (ii) any provision of this Plan requiring the absence of an objection shall no longer be required, except as otherwise ordered by the Bankruptcy Court; and (iii) the Bankruptcy Court may from time to time reopen the Bankruptcy Cases if appropriate for any of the following purposes: (a) administering Assets; (b) entertaining any adversary proceedings, contested matters or applications the Debtors have

30

brought or bring with regard to the liquidation of Assets and the prosecution of Causes of Action; (c) enforcing or interpreting this Plan or supervising its implementation; or (d) for other cause.

## ARTICLE XIV
## MISCELLANEOUS PROVISIONS

**Section 14.1**      *Modification of the Plan.* The Plan Proponents may modify this Plan pursuant to section 1127 of the Bankruptcy Code and as herein provided, to the extent applicable law permits; *provided, however,* that this Plan may not be modified in a manner inconsistent with the Restructuring Support Agreements and Term Sheet unless otherwise agreed by all the parties to such agreements. Subject to the limitations contained herein, the Plan Proponents may modify this Plan in accordance with this paragraph, before or after confirmation, without notice or hearing, or after such notice and hearing as the Bankruptcy Court deems appropriate, if the Bankruptcy Court finds that the modification does not materially and adversely affect the rights of any parties in interest which have not had notice and an opportunity to be heard with regard thereto. In the event of any modification on or before confirmation, any votes to accept or reject this Plan shall be deemed to be votes to accept or reject this Plan as modified, unless the Bankruptcy Court finds that the modification materially and adversely affects the rights of parties in interest which have cast said votes. The Plan Proponents reserve the right in accordance with section 1127 of the Bankruptcy Code to modify this Plan at any time before the Confirmation Date.

**Section 14.2**      *Securities Law Matters.* It is an integral and essential element of this Plan that the issuance of the New Common Equity, Warrant and New Notes pursuant to this Plan shall be exempt from registration under the Securities Act, pursuant to Section 1145 of the Bankruptcy Code and from registration under state securities laws. Any New Common Equity, the Warrant and New Notes issued to an "affiliate" of the Debtors within the meaning of the Securities Act or any Person the Debtors reasonably determine to be an "underwriter," and which does not agree to resell such securities only in "ordinary trading transactions," within the meaning of Section 1145(b)(1) of the Bankruptcy Code, shall be subject to such transfer restrictions and bear such legends as shall be appropriate to ensure compliance with the Securities Act. Nothing in this Plan is intended to preclude the SEC from exercising its police and regulatory powers relating to the Debtors or any other entity.

**Section 14.3**      *Plan Supplement.* The Plan Supplement which will contain schedules of the directors and officers of the Reorganized Debtors and information regarding the Working Capital Facility, shall be filed with the Bankruptcy Court no later than five days prior to the commencement of the hearing on confirmation of this Plan. Notwithstanding the foregoing, the Plan Proponents may amend the Plan Supplement and any attachments thereto, through and including the Confirmation Date.

**Section 14.4**      *Allocation of Plan Distributions Between Principal and Interest.* To the extent that any Allowed Claim entitled to a Distribution under this Plan is composed of indebtedness and accrued but unpaid interest thereon, such distribution shall, to the extent permitted by applicable law, be allocated for United States federal income tax purposes to accrued but unpaid interest on the Claim first and then, to the extent the consideration exceeds such amount, to the portion of the Claim representing the principal amount thereof.

**Section 14.5**      *Creditors' Committee.* On the Effective Date, the Creditors' Committee, if any such committee is appointed in the Bankruptcy Cases, shall dissolve automatically, whereupon its members, professionals, and agents shall be released from any further duties and

31

responsibilities in the Bankruptcy Cases and under the Bankruptcy Code, except for the limited purposes of filing applications for Professional Compensation in accordance with Section 4.2 of this Plan.

      **Section 14.6**    *Applicable Law.* Except to the extent that the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under this Plan shall be governed by the laws of the State of Delaware.

      **Section 14.7**    *Preparation of Estates' Returns and Resolution of Tax Claims.* The Debtors or Reorganized Debtors shall file all tax returns and other filings with governmental authorities and may file determination requests under section 505(b) of the Bankruptcy Code to resolve any Disputed Claim relating to taxes with a governmental authority.

      **Section 14.8**    *Notice.* Any notices, requests, and demands required or permitted to be provided under this Plan, in order to be effective, shall be in writing (including, without express or implied limitation, by facsimile transmission), and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed to counsel listed on the first page of this Plan.

      **Section 14.9**    *Headings.* The headings of the articles and the sections of this Plan have been used for convenience only and shall not limit or otherwise affect the meaning thereof.

      **Section 14.10**    *Revocation of Plan.* The Plan Proponents collectively reserve the right, unilaterally and unconditionally, to revoke and/or withdraw this Plan at any time prior to entry of the Confirmation Order, and upon such revocation and/or withdrawal this Plan shall be deemed null and void and of no force and effect.

      **Section 14.11**    *Severability of Plan Provisions.* If, prior to entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be illegal, unenforceable, impermissible, invalid, or void, or otherwise constitute grounds for denying confirmation of this Plan, the Bankruptcy Court shall, with the consent of the Plan Proponents, have the power to interpret, modify or delete such term or provision (or portions thereof) to make it valid and enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be illegal, unenforceable, impermissible, invalid, or void, and such term shall then be operative as interpreted, modified or deleted. Notwithstanding any such interpretation, modification or deletion, the remainder of the terms and provisions of this Plan shall in no way be affected, impaired, or invalidated by such interpretation, modification, or deletion.

      **Section 14.12**    *No Admissions; Objection to Claims.* Nothing in this Plan shall be deemed to constitute an admission that any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity as being the Holder of a Claim is the Holder of an Allowed Claim, except as expressly provided in this Plan. The failure of the Plan Proponents to object to or examine any Claim for purposes of voting shall not be deemed a waiver of the Plan Proponents rights to object to or reexamine such Claim in whole or in part.

      **Section 14.13**    *No Bar to Suits.* Except as otherwise provided in Article II of this Plan, neither this Plan nor confirmation hereof shall operate to bar or estop the Debtors or Reorganized Debtors from commencing any Cause of Action, or any other legal action against any Holder of a

Claim or any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity, whether such Cause of Action, or any other legal action arose prior to or after the Confirmation Date and whether or not the existence of such Cause of Action, or any other legal action was disclosed in any disclosure statement filed by the Debtors in connection with this Plan or whether or not any payment was made or is made on account of any Claim.

**Section 14.14**     *Exhibits/Schedules.* All exhibits and schedules to this Plan and Disclosure Statement, including the Plan Supplement, and all attachments thereto, are incorporated into and are a part of this Plan as if set forth in full herein.

**Section 14.15**     *Conflicts.* In the event that provisions of the Disclosure Statement and provisions of this Plan conflict, the terms of this Plan shall govern.

Dated: August 15, 2008

Respectfully submitted,

Mrs. Fields' Original Cookies, Inc., et al.
(on behalf of itself, MFFB and the Subsidiary Debtors)

| | |
|---|---|
| By: | /s/ Michael R. Ward |
| Name: | Michael R. Ward |
| Title: | Executive Vice President and Chief Legal Officer |

Ad Hoc Noteholder Committee
(by its counsel)

| | |
|---|---|
| By: | Akin Gump Strauss Hauer & Feld LLP By: /s/ Fred S. Hodara |
| Name: | Fred S. Hodara |
| Title: | A Member of the Firm |

| MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP | AKIN GUMP STRAUSS HAUER & FELD LLP |
|---|---|
| David R. Hurst, Esq. (Bar No. 3743) | Fred S. Hodara, Esq. |
| Mark L. Desgrosseilliers, Esq. | 590 Madison Avenue |
| (Bar No. 4083) | New York, New York 10022 |
| 1105 North Market Street, Suite 1500 | Telephone: (212) 872-1000 |
| Wilmington, Delaware 19801 | |
| Telephone: (302) 504-7800 | David M. Dunn, Esq. |
| | 1333 New Hampshire Avenue, N.W. |
| | Washington, D.C. 20036 |
| | Telephone: (202) 736-8000 |
| Proposed Counsel for the Debtors and | |
| Debtors-in-Possession | -and- |
| | |
| SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP | YOUNG CONAWAY STARGATT & TAYLOR, LLP |
| Mark S. Chehi, Esq. (Bar No. 2855) | Robert S. Brady, Esq. (Bar No. 2847) |
| One Rodney Square | The Brandywine Building |
| PO Box 636 | 1000 West Street, 17th Floor |
| Wilmington, Delaware 19899 | Wilmington, Delaware 19801 |
| Telephone: (302) 651-3000 | Telephone: (302) 571-6600 |
| | |
| Proposed Special Corporate Counsel for the Debtors and Debtors-in-Possession | Co-Counsel for the Ad Hoc Noteholder Committee |

**JOINT PREPACKAGED PLAN OF REORGANIZATION
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE OF
MRS. FIELDS' ORIGINAL COOKIES, INC.
AND CERTAIN SUBSIDIARIES**

# PLAN EXHIBITS

**Exhibit 1**

## FORM OF
## SECOND AMENDED AND RESTATED
## CERTIFICATE OF INCORPORATION
## OF
## MRS. FIELDS' ORIGINAL COOKIES, INC.

Mrs. Fields' Original Cookies, Inc., a corporation organized and existing under the laws of the State of Delaware, DOES HEREBY CERTIFY AS FOLLOWS:

1.      The name of the Corporation is "Mrs. Fields' Original Cookies, Inc." The Corporation was originally incorporated under the name "Cookie Acquisition Inc." and the original certificate of incorporation was filed with the Secretary of State of the State of Delaware on February 13, 1996 (the *"Original Certificate"*). The Corporation filed a restated certificate of incorporation with the Secretary of State of the State of Delaware on August 7, 1996 (the *"Restated Certificate"*), which restated the provisions of the Original Certificate in order to, among other things, change the name of the Corporation to "Mrs. Fields' Original Cookies, Inc."

2.      This Second Amended and Restated Certificate of Incorporation (this *"Certificate"*) was duly adopted by the Board of Directors and the stockholders of the Corporation in accordance with Sections 228, 242 and 245 of the General Corporation Law of the State of Delaware (the *"DGCL"*).

3.      This Certificate amends and restates the provisions of the Restated Certificate.

4.      This Certificate shall be effective on the date of filing with the Secretary of State of the State of Delaware.

5.      The text of the Restated Certificate is hereby restated and amended in its entirety to read as follows:

### ARTICLE I
### NAME

The name of the corporation is Mrs. Fields' Original Cookies, Inc. (the *"Corporation"*).

### ARTICLE II
### PURPOSE

The purpose for which the Corporation is organized is to engage in any lawful act or activity for which corporations may be organized under the DGCL.

### ARTICLE III
### REGISTERED AGENT

The street address of the registered office of the Corporation in the State of Delaware is 1209 Orange Street, in the City of Wilmington, County of New Castle, and the name of the Corporation's registered agent at such address is The Corporation Trust Company.

## ARTICLE IV
## CAPITALIZATION

Section 4.1    <u>Authorized Capital Stock</u>.  The total number of shares of all classes of capital stock which the Corporation is authorized to issue is 100,000 shares, consisting of 90,000 shares of common stock, par value $0.01 per share (the *"Common Stock"*), and 10,000 shares of preferred stock, par value $0.001 per share (the *"Preferred Stock"*).  The powers, preferences and relative, participating, optional and other special rights of the respective classes of the Corporation's capital stock or the holders thereof and the qualifications, limitations and restrictions thereof are as follows:

Section 4.2    <u>Preferred Stock</u>.

(a)    The Preferred Stock may be issued from time to time in one or more series.  The Board of Directors (the *"Board"*) is hereby expressly authorized to provide for the issuance of shares of Preferred Stock in one or more series and to establish from time to time the number of shares to be included in each such series and to fix the voting powers, if any, designations, powers, preferences and relative, participating, optional and other special rights, if any, of each such series and the qualifications, limitations and restrictions thereof, as shall be stated in the resolution(s) adopted by the Board providing for the issuance of such series and included in a certificate of designations (a *"Preferred Stock Designation"*) filed pursuant to the DGCL.

(b)    The number of authorized shares of Preferred Stock may be increased or decreased (but not below the number of shares thereof then outstanding) by the affirmative vote of the holders of a majority of the outstanding shares of Common Stock, without a vote of the holders of the Preferred Stock, or any series thereof, unless a vote of any such holders of Preferred Stock is required pursuant to another provision of this Certificate, including any Preferred Stock Designation.

Section 4.3    <u>Common Stock</u>.

(a)    The holders of shares of Common Stock shall be entitled to one vote for each such share on each matter properly submitted to the stockholders on which the holders of shares of Common Stock are entitled to vote.  Except as otherwise required by law or this Certificate (including any Preferred Stock Designation), at any annual or special meeting of the stockholders the Common Stock shall have the exclusive right to vote for the election of directors and on all other matters properly submitted to a vote of the stockholders.

(b)    Subject to the rights of the holders of Preferred Stock, the holders of shares of Common Stock shall be entitled to receive such dividends and other distributions (payable in cash, property or capital stock of the Corporation) when, as and if declared thereon by the Board from time to time out of any assets or funds of the Corporation legally available therefor and shall share equally on a per share basis in such dividends and distributions.

2

(c)    In the event of any voluntary or involuntary liquidation, dissolution or winding up of the Corporation, after payment or provision for payment of the debts and other liabilities of the Corporation, and subject to the rights of the holders of Preferred Stock in respect thereof, the holders of shares of Common Stock shall be entitled to receive all the remaining assets of the Corporation available for distribution to its stockholders, ratably in proportion to the number of shares of Common Stock held by them.

## ARTICLE V
## DIRECTORS

Section 5.1    Board Powers.    The business and affairs of the Corporation shall be managed by, or under the direction of, the Board.    In addition to the powers and authority expressly conferred upon the Board by the DGCL, this Certificate or the Bylaws (the "*Bylaws*") of the Corporation, the Board is hereby empowered to exercise all such powers and do all such acts and things as may be exercised or done by the Corporation, subject, nevertheless, to the provisions of the DGCL, this Certificate and any Bylaws adopted by the stockholders; provided, however, that no Bylaws hereafter adopted by the stockholders shall invalidate any prior act of the Board that would have been valid if such Bylaws had not been adopted.

Section 5.2    Number of Directors.    The number of directors of the Corporation shall be seven (7), and thereafter shall, subject to any vote or consent expressly required by this Certificate, be fixed from time to time in accordance with the Bylaws.

Section 5.3    Election.    Unless and except to the extent that the Bylaws shall so require, the election of directors need not be by written ballot.

## ARTICLE VI
## BYLAWS

In furtherance and not in limitation of the powers conferred upon it by law, the Board shall have the power to adopt, amend, alter or repeal the Bylaws.    The Bylaws also may be adopted, amended, altered or repealed by the stockholders.

## ARTICLE VII
## LIMITED LIABILITY; INDEMNIFICATION

Section 7.1    Limitation of Personal Liability.    No person who is or was a director of the Corporation shall be personally liable to the Corporation or any of its stockholders for monetary damages for breach of fiduciary duty as a director, except to the extent such exemption from liability or limitation thereof is not permitted by the DGCL as the same exists or hereafter may be amended.    If the DGCL is hereafter amended to authorize corporate action further limiting or eliminating the liability of directors, then the liability of a director to the Corporation or its stockholders shall be limited or eliminated to the fullest extent permitted by the DGCL, as so amended.    Any repeal or amendment of this Section 7.1 by the stockholders of the Corporation or by changes in law, or the adoption of any other provision of this Certificate inconsistent with this Section 7.1 will, unless otherwise required by law, be prospective only (except to the extent such amendment or change in law permits the Corporation to further limit or eliminate the

3

liability of directors) and shall not adversely affect any right or protection of a director of the Corporation existing at the time of such repeal or amendment or adoption of such inconsistent provision with respect to acts or omissions occurring prior to such repeal or amendment or adoption of such inconsistent provision.

Section 7.2    Indemnification.

(a)    Each person who is or was made a party or is threatened to be made a party to or is otherwise involved in any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (hereinafter a *"proceeding"*) by reason of the fact that he or she is or was a director, officer, employee or agent of the Corporation or, while a director, officer, employee or agent of the Corporation, is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation or of a partnership, joint venture, trust or other enterprise, including service with respect to an employee benefit plan (hereinafter a *"Covered Person"*), whether the basis of such proceeding is alleged action in an official capacity as a director, officer, employee or agent, or in any other capacity while serving as a director, officer, employee or agent, shall be indemnified and held harmless by the Corporation to the fullest extent authorized or permitted by applicable law, as the same exists or may hereafter be amended, against all expense, liability and loss (including, without limitation, attorneys' fees, judgments, fines, ERISA excise taxes and penalties and amounts paid in settlement) reasonably incurred or suffered by such Covered Person in connection with such proceeding, and such right to indemnification shall continue as to a person who has ceased to be a director, officer, employee or agent and shall inure to the benefit of his or her heirs, executors and administrators; provided, however, that, except for proceedings to enforce rights to indemnification, the Corporation shall indemnify a Covered Person in connection with a proceeding (or part thereof) initiated by such Covered Person only if such proceeding (or part thereof) was authorized by the Board. The right to indemnification conferred by this Section 7.2 shall be a contract right and shall include the right to be paid by the Corporation the expenses incurred in defending or otherwise participating in any such proceeding in advance of its final disposition.

(b)    The rights conferred on any Covered Person by this Section 7.2 shall not be exclusive of any other rights which any Covered Person may have or hereafter acquire under law, this Certificate, the Bylaws, an agreement, vote of stockholders or disinterested directors, or otherwise.

(c)    Any repeal or amendment of this Section 7.2 by the stockholders of the Corporation or by changes in law, or the adoption of any other provision of this Certificate inconsistent with this Section 7.2, will, unless otherwise required by law, be prospective only (except to the extent such amendment or change in law permits the Corporation to provide broader indemnification rights on a retroactive basis than permitted prior thereto), and will not in any way diminish or adversely affect any right or protection existing at the time of such repeal or amendment or adoption of such inconsistent provision in respect of any act or omission occurring prior to such repeal or amendment or adoption of such inconsistent provision.

4

(d)    This Section 7.2 shall not limit the right of the Corporation, to the extent and in the manner authorized or permitted by law, to indemnify and to advance expenses to persons other than Covered Persons.

## ARTICLE VIII
## AMENDMENT OF CERTIFICATE OF INCORPORATION

The Corporation reserves the right to amend, alter, change or repeal any provision contained in this Certificate (including any Preferred Stock Designation), in the manner now or hereafter prescribed by this Certificate and the DGCL; and except as set forth in ARTICLE VII, all rights, preferences and privileges herein conferred upon stockholders, directors or any other persons by and pursuant to this Certificate in its present form or as hereafter amended are granted subject to the right reserved in this Article.

## ARTICLE IX
## CORPORATE OPPORTUNITY

In recognition and anticipation that (i) certain holders of Common Stock, their Affiliates, and their respective directors, principals, officers, employees and/or other representatives may now engage, may continue to engage, or may, in the future, decide to engage, in the same or similar activities or related lines of business as those in which the Corporation, directly or indirectly, may engage and/or other business activities that overlap with or compete with those in which the Corporation, directly or indirectly, may engage, and (ii) members of the Board who are not employees of the Corporation (*"Non-Employee Directors"*) and their respective Affiliates may now engage, may continue to engage, or may, in the future, decide to engage, in the same or similar activities or related lines of business as those in which the Corporation, directly or indirectly, may engage and/or other business activities that overlap with or compete with those in which the Corporation, directly or indirectly, may engage, the provisions of this Article IX are set forth to regulate and define the conduct of certain affairs of the Corporation with respect to certain classes or categories of business opportunities as they may involve the holders of Common Stock, the Non-Employee Directors or their respective Affiliates and the powers, rights, duties and liabilities of the Corporation and its directors, officers and stockholders in connection therewith.    Solely for purposes of this Article IX, *"Affiliate"* shall mean (A) in respect of any specified person (other than the Corporation), any other person that, directly or indirectly, is controlled by, controls or is under common control with such specified person and shall include any principal, member, director, partner, stockholder, officer, employee or other representative of any of the foregoing, (B) in respect of a Non-Employee Director, such Non-Employee Director's employer and its Affiliates and any person that, directly or indirectly, is controlled by such Non-Employee Director (other than the Corporation and any entity that is controlled by the Corporation) and (C) in respect of the Corporation, any person that, directly or indirectly, is controlled by the Corporation.

Section 9.1    Identified Persons.   None of (i) the holders of Common Stock or any of their Affiliates or (ii) any Non-Employee Director or any of his or her Affiliates (the persons identified in (i) and (ii) above being referred to, collectively, as *"Identified Persons"* and, individually, as an *"Identified Person"*) shall have any duty to refrain, directly or indirectly, from (x) engaging in a corporate opportunity in the same or similar business activities or lines of

5

business in which the Corporation or any of its Affiliates now engages or proposes to engage or (y) otherwise competing with the Corporation, and, to the fullest extent permitted by the DGCL, no Identified Person shall be liable to the Corporation or its stockholders for breach of any fiduciary duty solely by reason of the fact that such Identified Person engages in any such activities. The Corporation hereby renounces any interest or expectancy in, or in being offered an opportunity to participate in, any business opportunity which may be a corporate opportunity for both an Identified Person and the Corporation or any of its Affiliates, except as specifically provided in Section 9.3.

Section 9.2    No Duty.    In the event that any Identified Person acquires knowledge of a potential transaction or other business opportunity which may be a corporate opportunity both for itself or himself and the Corporation or any of its Affiliates, such Identified Person shall have no duty to communicate or offer such transaction or other business opportunity to the Corporation or any of its Affiliates and, to the fullest extent permitted by the DGCL, shall not be liable to the Corporation or its stockholders for breach of any fiduciary duty as a stockholder, director or officer of the Corporation solely by reason of the fact that such Identified Person pursues or acquires such corporate opportunity for itself or himself, or offers or directs such corporate opportunity to another person.

Section 9.3    Reservation of Rights.    The Corporation does not renounce its interest in any corporate opportunity offered to any Non-Employee Director if such opportunity is expressly offered to such person solely in his or her capacity as a director of the Corporation and the provisions of Section 9.1 and Section 9.2 shall not apply to any such corporate opportunity.

Section 9.4    No Potential Corporate Opportunity.    In addition to and notwithstanding the foregoing provisions of this Article IX, a corporate opportunity shall be deemed not to be a potential corporate opportunity for the Corporation if it is a business opportunity that the Corporation is not financially able or contractually permitted or legally able to undertake, or that is, from its nature, not in the line of the Corporation's business or is of no practical advantage to it or that is one in which the Corporation has no interest or reasonable expectancy.

**[Signature page follows]**

6

IN WITNESS WHEREOF, Mrs. Fields' Original Cookies, Inc. has caused this Second Amended and Restated Certificate to be duly executed in its name and on its behalf by its _____ this ___ day of _____, 2008.

**MRS. FIELDS' ORIGINAL COOKIES, INC.**

By: _____

Name: _____

Title: _____

**Exhibit 2**

FORM OF

AMENDED AND RESTATED

BYLAWS

OF

MRS. FIELDS' ORIGINAL COOKIES, INC.,

a Delaware corporation

(the "*Corporation*")

(Adopted as of_____, 2008)

**FORM OF**

**BYLAWS**

**OF**

**MRS. FIELDS' ORIGINAL COOKIES, INC.**

## ARTICLE I.
## OFFICES

**Section 1.1.    Registered Office.**  The registered office of the Corporation within the State of Delaware shall be located at either (a) the principal place of business of the Corporation in the State of Delaware or (b) the office of the corporation or individual acting as the Corporation's registered agent in Delaware.

**Section 1.2.    Additional Offices.**  The Corporation may, in addition to its registered office in the State of Delaware, have such other offices and places of business, both within and outside the State of Delaware, as the Board of Directors of the Corporation (the *"Board"*) may from time to time determine or as the business and affairs of the Corporation may require.

## ARTICLE II.
## STOCKHOLDERS MEETINGS

**Section 2.1.    Annual Meetings.**  Unless the members of the Board (the *"Directors"*) are elected by written consent in lieu of an annual meeting as permitted by applicable law or an annual meeting is otherwise not required by applicable law, an annual meeting of stockholders shall be held at such place and time and on such date as shall be determined by the Chairman of the Board (the *"Chairman"*) and stated in the notice of the meeting, provided that the Board may in its sole discretion determine that the meeting shall not be held at any place, but may instead be held solely by means of remote communication pursuant to Section 9.5(a).  At each annual meeting, the stockholders shall elect Directors of the Corporation and may transact any other business as may properly be brought before the meeting.   Stockholders may, unless the Corporation's Certificate of Incorporation, as the same may be amended or restated from time to time (the *"Certificate of Incorporation"*), provides otherwise, act by written consent to elect Directors; provided, however, that if such consent is less than unanimous, such action by written consent may be in lieu of holding an annual meeting only if all of the Directorships to which Directors could be elected at an annual meeting held at the effective time of such action are vacant and are filled by such action.

**Section 2.2.    Special Meetings.**  Except as otherwise required by applicable law or provided in the Certificate of Incorporation, special meetings of stockholders, for any purpose or purposes, may be called only by the Chairman, by three or more members of the Board or by the Secretary at the request in writing of stockholders holding shares representing a majority of the voting power of the outstanding shares entitled to vote on the matter for which such meeting is to be called.  The Secretary shall call such a meeting upon receiving such a request.  Special meetings of stockholders shall be held at such place and time and on such date as shall be determined by the Chairman and stated in the Corporation's notice of the meeting, provided that

the Board may in its sole discretion determine that the meeting shall not be held at any place, but may instead be held solely by means of remote communication pursuant to Section 9.5(a).

Section 2.3.   **Notices.**   Notice of each stockholders meeting stating the place, if any, date, and time of the meeting, and the means of remote communication, if any, by which stockholders and proxyholders may be deemed to be present in person and vote at such meeting, shall be given in the manner permitted by Section 9.3 to each stockholder entitled to vote thereat by the Corporation not less than 10 nor more than 60 days before the date of the meeting. If said notice is for a stockholders meeting other than an annual meeting, it shall in addition state the purpose or purposes for which the meeting is called, and the business transacted at such meeting shall be limited to the matters so stated in the Corporation's notice of meeting (or any supplement thereto).

Section 2.4.   **Quorum.**   Except as otherwise provided by applicable law, the Certificate of Incorporation or these Bylaws, the presence, in person or by proxy, at a stockholders meeting of the holders of shares of outstanding capital stock of the Corporation representing a majority of the voting power of all outstanding shares of capital stock of the Corporation entitled to vote at such meeting shall constitute a quorum for the transaction of business at such meeting, except that when specified business is to be voted on by a class or series of stock voting as a class, the holders of shares representing a majority of the voting power of the outstanding shares of such class or series shall constitute a quorum of such class or series for the transaction of such business. If a quorum shall not be present at any meeting of the stockholders, the chairman of the meeting or the stockholders entitled to vote thereat so present, by a majority in voting power thereof, may adjourn the meeting from time to time in the manner provided in Section 2.6 until a quorum shall attend. The stockholders present at a duly convened meeting may continue to transact business until adjournment, notwithstanding the withdrawal of enough stockholders to leave less than a quorum. Shares of its own stock belonging to the Corporation or to another corporation, if a majority of the voting power of the shares entitled to vote in the election of directors of such other corporation is held, directly or indirectly, by the Corporation, shall neither be entitled to vote nor be counted for quorum purposes; provided, however, that the foregoing shall not limit the right of the Corporation or any such other corporation to vote shares held by it in a fiduciary capacity.

Section 2.5.   **Voting of Shares.**

(a)   Voting Lists.   The Secretary shall prepare, or shall cause the officer or agent who has charge of the stock ledger of the Corporation to prepare, at least 10 days before each meeting of stockholders, a complete list of the stockholders of record entitled to vote thereat arranged in alphabetical order and showing the address and the number of shares registered in the name of each stockholder. Nothing contained in this Section 2.5(a) shall require the Corporation to include electronic mail addresses or other electronic contact information on such list. Such list shall be open to the examination of any stockholder, for any purpose germane to the meeting, during ordinary business hours for a period of at least 10 days prior to the meeting: (i) on a reasonably accessible electronic network, provided that the information required to gain access to such list is provided with the notice of the meeting, or (ii) during ordinary business hours, at the principal place of business of the Corporation. In the event that the Corporation determines to make the list available on an electronic network, the Corporation may take

reasonable steps to ensure that such information is available only to stockholders of the Corporation. If the meeting is to be held at a place, then the list shall be produced and kept at the time and place of the meeting during the whole time thereof, and may be inspected by any stockholder who is present. If a meeting of stockholders is to be held solely by means of remote communication as permitted by Section 9.5(a), the list shall be open to the examination of any stockholder during the whole time of the meeting on a reasonably accessible electronic network, and the information required to access such list shall be provided with the notice of meeting. The stock ledger shall be the only evidence as to who are the stockholders entitled to examine the list required by this Section 2.5(a) or to vote in person or by proxy at any meeting of stockholders.

(b)    Manner of Voting.    At any stockholders meeting, every stockholder entitled to vote may vote in person or by proxy. If authorized by the Board, the voting by stockholders or proxyholders at any meeting conducted by remote communication may be effected by a ballot submitted by electronic transmission (as defined in Section 9.3(c)), provided that any such electronic transmission must either set forth or be submitted with information from which the Corporation can determine that the electronic transmission was authorized by the stockholder or proxyholder. The Board, in its discretion, or the chairman of the meeting of stockholders, in such person's discretion, may require that any votes cast at such meeting shall be cast by written ballot.

(c)    Proxies.    Each stockholder entitled to vote at a meeting of stockholders or to express consent or dissent to corporate action in writing without a meeting may authorize another person or persons to act for such stockholder by proxy, but no such proxy shall be voted or acted upon after three years from its date, unless the proxy provides for a longer period. Proxies need not be filed with the Secretary until the meeting is called to order, but shall be filed with the Secretary before being voted. Without limiting the manner in which a stockholder may authorize another person or persons to act for such stockholder as proxy, either of the following shall constitute a valid means by which a stockholder may grant such authority:

(i)    A stockholder may execute a writing authorizing another person or persons to act for such stockholder as proxy. Execution may be accomplished by the stockholder or such stockholder's authorized officer, director, employee or agent signing such writing or causing such person's signature to be affixed to such writing by any reasonable means, including, but not limited to, by facsimile signature.

(ii)    A stockholder may authorize another person or persons to act for such stockholder as proxy by transmitting or authorizing the transmission of an electronic transmission to the person who will be the holder of the proxy, provided that any such electronic transmission must either set forth or be submitted with information from which it can be determined that the electronic transmission was authorized by the stockholder.

Any copy, facsimile telecommunication or other reliable reproduction of the writing or transmission authorizing another person or persons to act as proxy for a stockholder may be substituted or used in lieu of the original writing or transmission for any and all purposes for which the original writing or transmission could be used; provided that such copy, facsimile

3

telecommunication or other reproduction shall be a complete reproduction of the entire original writing or transmission.

        (d)    Required Vote.  Subject to the rights of the holders of one or more series of preferred stock of the Corporation ("*Preferred Stock*"), voting separately by class or series, to elect Directors pursuant to the terms of one or more series of Preferred Stock, the election of Directors shall be determined by a plurality of the votes cast by the stockholders present in person or represented by proxy at the meeting and entitled to vote thereon.  All other matters shall be determined by the vote of a majority of the votes cast by the stockholders present in person or represented by proxy at the meeting and entitled to vote thereon, unless the matter is one upon which, by applicable law, the Certificate of Incorporation or these Bylaws, a different vote is required, in which case such provision shall govern and control the decision of such matter.

        (e)    Inspectors of Election.  The Board may, and shall if required by law, in advance of any meeting of stockholders, appoint one or more persons as inspectors of election, who may be employees of the Corporation or otherwise serve the Corporation in other capacities, to act at such meeting of stockholders or any adjournment thereof and to make a written report thereof.  The Board may appoint one or more persons as alternate inspectors to replace any inspector who fails to act.  If no inspectors of election or alternates are appointed by the Board, the chairman of the meeting shall appoint one or more inspectors to act at the meeting.  Each inspector, before discharging his or her duties, shall take and sign an oath faithfully to execute the duties of inspector with strict impartiality and according to the best of his or her ability.  The inspectors shall ascertain and report the number of outstanding shares and the voting power of each; determine the number of shares present in person or represented by proxy at the meeting and the validity of proxies and ballots; count all votes and ballots and report the results; determine and retain for a reasonable period a record of the disposition of any challenges made to any determination by the inspectors; and certify their determination of the number of shares represented at the meeting and their count of all votes and ballots.  No person who is a candidate for an office at an election may serve as an inspector at such election.  Each report of an inspector shall be in writing and signed by the inspector or by a majority of them if there is more than one inspector acting at such meeting.  If there is more than one inspector, the report of a majority shall be the report of the inspectors.

      **Section 2.6.**    **Adjournments.**  Any meeting of stockholders, annual or special, may be adjourned by the chairman of the meeting or by the stockholders present and entitled to vote thereat, by a majority in voting power thereof, from time to time, whether or not there is a quorum, to reconvene at the same or some other place.  Notice need not be given of any such adjourned meeting if the date, time, place, if any, thereof, and the means of remote communication, if any, by which stockholders and proxyholders may be deemed to be present in person and vote at such adjourned meeting are announced at the meeting at which the adjournment is taken.  At the adjourned meeting the stockholders, or the holders of any class or series of stock entitled to vote separately as a class, as the case may be, may transact any business that might have been transacted at the original meeting.  If the adjournment is for more than 30 days, or if after the adjournment a new record date is fixed for the adjourned meeting, notice of the adjourned meeting shall be given to each stockholder of record entitled to vote at the meeting.

**Section 2.7. Conduct of Meetings.** The chairman of each annual and special meeting of stockholders shall be the Chairman or, in the absence (or inability or refusal to act) of the Chairman, such other person as shall be appointed by the Board, or in the absence of such appointment, a chairman chosen at the meeting. The date and time of the opening and the closing of the polls for each matter upon which the stockholders will vote at a meeting shall be announced at the meeting by the chairman of the meeting. The Board may adopt such rules and regulations for the conduct of the meeting of stockholders as it shall deem appropriate. Except to the extent inconsistent with these Bylaws or such rules and regulations as adopted by the Board, the chairman of any meeting of stockholders shall have the right and authority to convene and to adjourn the meeting, to prescribe such rules, regulations and procedures and to do all such acts as, in the judgment of such chairman, are appropriate for the proper conduct of the meeting. Unless and to the extent determined by the Board or the chairman of the meeting, meetings of stockholders shall not be required to be held in accordance with the rules of parliamentary procedure. The secretary of each annual and special meeting of stockholders shall be the Secretary or, in the absence (or inability or refusal to act) of the Secretary, an Assistant Secretary so appointed to act by the chairman of the meeting. In the absence (or inability or refusal to act) of the Secretary and all Assistant Secretaries, the chairman of the meeting may appoint any person to act as secretary of the meeting.

**Section 2.8. Consents in Lieu of Meeting.** Unless otherwise provided by the Certificate of Incorporation, any action required or permitted to be taken at any annual or special meeting of stockholders may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by the holders of outstanding stock having not less than the minimum voting power that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted and shall be delivered to the Corporation to its registered office in the State of Delaware, the Corporation's principal place of business, or the Secretary. Every written consent shall bear the date of signature of each stockholder who signs the consent and no written consent shall be effective to take the corporate action referred to therein unless, within 60 days of the date the earliest dated consent is delivered to the Corporation, a written consent or consents signed by a sufficient number of holders to take such action are delivered to the Corporation by delivery to the Corporation's registered office in the State of Delaware, the Corporation's principal place of business, or the Secretary. Delivery made to the Corporation's registered office shall be by hand or by certified or registered mail, return receipt requested. An electronic transmission consenting to the action to be taken and transmitted by a stockholder, proxyholder or a person or persons authorized to act for a stockholder or proxyholder shall be deemed to be written, signed and dated for purposes hereof if such electronic transmission sets forth or is delivered with information from which the Corporation can determine that such transmission was transmitted by a stockholder or proxyholder (or by a person authorized to act for a stockholder or proxyholder) and the date on which such stockholder, proxyholder or authorized person transmitted such transmission. The date on which such electronic transmission is transmitted shall be deemed to be the date on which such consent was signed. No consent given by electronic transmission shall be deemed to have been delivered until such consent is reproduced in paper form and delivered to the Corporation by delivery either to the Corporation's registered office in the State of Delaware, the Corporation's principal place of business, or the Secretary. Delivery made to the Corporation's registered office shall be made by hand or by certified or registered mail, return receipt requested. Notwithstanding the limitations on delivery in the

previous sentence, consents given by electronic transmission may be otherwise delivered to the Corporation's principal place of business or to the Secretary if, to the extent, and in the manner provided by resolution of the Board. Any copy, facsimile or other reliable reproduction of a consent in writing may be substituted or used in lieu of the original writing for any and all purposes for which the original writing could be used; provided that such copy, facsimile or other reproduction shall be a complete reproduction of the entire original writing. Prompt notice of the taking of the corporate action without a meeting by less than unanimous written consent shall be given to those stockholders who have not consented in writing and who, if the action had been taken at a meeting, would have been entitled to notice of the meeting if the record date for such meeting had been the date that written consents signed by a sufficient number of holders were delivered to the Corporation as provided in this Section 2.8.

## ARTICLE III.
## DIRECTORS

**Section 3.1.    Powers.** The business and affairs of the Corporation shall be managed by or under the direction of the Board, which may exercise all such powers of the Corporation and do all such lawful acts and things as are not by statute or by the Certificate of Incorporation or by these Bylaws required to be exercised or done by the stockholders. Directors need not be stockholders or residents of the State of Delaware.

**Section 3.2.    Term.** Except as otherwise provided in the Certificate of Incorporation and that certain Stockholders Agreement of the Company dated August __, 2008, as may be amended from time to time (the *"Stockholders Agreement"*), the Directors shall be elected at the annual meeting of stockholders to hold office until the next succeeding annual meeting of stockholders.    Except as otherwise provided in the Certificate of Incorporation or the Stockholders Agreement, each Director shall hold office for the term for which such Director is elected and until his or her successor shall have been elected and qualified, subject to such Director's earlier death, resignation, retirement, disqualification or removal.

**Section 3.3.    Newly Created Directorships and Vacancies.** Except as otherwise provided in the Certificate of Incorporation or the Stockholders Agreement, vacancies resulting from death, resignation, retirement, disqualification, removal or other cause and newly created Directorships resulting from an increase in the number of Directors elected by all of the stockholders having the right to vote as a single class may be filled by a Majority Vote of the Directors (as defined below) or by the stockholders.  Except as otherwise provided in the Certificate of Incorporation or the Stockholders Agreement, if the holders of any class or classes of stock or series thereof are entitled to elect one or more Directors by the Certificate of Incorporation, vacancies and newly created Directorships of such class or classes or series may be filled only by a majority of the Directors elected by such class or classes or series thereof then in office, by a sole remaining Director so elected, or by the stockholders of such class or classes or series thereof.    Except as otherwise provided in the Certificate of Incorporation or Stockholders Agreement, any Director elected or chosen in accordance with this Section 3.3 shall hold office until the next annual election of Directors and until his or her successor shall have been elected and qualified, subject to such Director's earlier death, resignation, retirement, disqualification or removal. *"Majority Vote"* means, with respect to any matter to be voted on by

the Board, the written approval of, or the affirmative vote by, a majority of the Directors serving on the Board.

**Section 3.4.   Compensation.**   Unless otherwise restricted by the Certificate of Incorporation or these Bylaws, the Board shall have the authority to fix the compensation of Directors. The Directors may be reimbursed their expenses, if any, of attendance at each meeting of the Board and may be paid either a fixed sum for attendance at each meeting of the Board or other compensation as Director. No such payment shall preclude any Director from serving the Corporation in any other capacity and receiving compensation therefor. Members of committees of the Board may be allowed like compensation and reimbursement of expenses for attending committee meetings.

## ARTICLE IV.
## BOARD MEETINGS

**Section 4.1.   Annual Meetings.**   The Board shall meet as soon as practicable after the adjournment of each annual stockholders meeting at the place of the annual stockholders meeting unless the Chairman shall fix another time and place and give notice thereof in the manner required herein for special meetings of the Board. No notice to the directors shall be necessary to legally convene this meeting, except this Section 4.1.

**Section 4.2.   Regular Meetings.**   The Board shall meet no less frequently than quarterly at such place and time as shall be determined by the Chairman. Not less than five Business Days before each such meeting, the Chairman, President or Secretary shall deliver to each Director, together with the notice of each such meeting, an agenda specifying in reasonable detail the matters to be discussed at the applicable meeting. Any Director that wishes to have any additional matter discussed at any such meeting shall give to the Secretary and each other Director notice of each matter it so wishes to discuss, not less than two Business Days prior to such meeting.

**Section 4.3.   Special Meetings.**   Special meetings of the Board, to be held at the offices of the Corporation (or such other place as shall be agreed by Majority Vote), shall be called at the direction of the Chairman or by three or more Directors for reasonable cause shown (which is understood to include, without limitation, any meeting called by such Directors to review any determination made by the Corporation pursuant to the Stockholders Agreement), upon not less than five Business Days' notice given by the Chairman, the President, the Secretary or a Director. Emergency meetings of the Board may be held at the offices of the Corporation (or such other place as shall be agreed by Majority Vote) and called at the direction of the Chairman or by any Director, upon not less than three Business Days' telephone notice (to be confirmed by written facsimile notice or electronic transmission) given by the Chairman, the President, the Secretary or a Director, specifying in reasonable detail the nature of such emergency.   The term "emergency meeting" refers only to meetings called for the sole purpose of addressing an action taken by less than the Directors required by the Stockholders Agreement.

**Section 4.4.   Quorum; Required Vote.**   The presence of that number of Directors elected in accordance with the Stockholders Agreement and representing a majority of the outstanding shares of the common stock of the Corporation shall constitute a quorum. A quorum

must exist at all times of a meeting, including the reconvening of any meeting that has been adjourned, for any action taken at such meeting to be valid. Except as otherwise specified by the Certificate of Incorporation or the Stockholders Agreement, all decisions of the Board shall be taken by a majority of the Directors present at a meeting at which a quorum exists for such decision or action to be valid. Any Director may participate in any meeting of the Board of Directors by telephone and arrangements will be made to ensure that any Director so participating by telephone may hear and be heard by all other Directors participating in the meeting.

**Section 4.5.   Consent In Lieu of Meeting**.   Unless otherwise restricted by the Certificate of Incorporation or these Bylaws, any action required or permitted to be taken at any meeting of the Board or any committee thereof may be taken without a meeting if all members of the Board or committee, as the case may be, consent thereto in writing or by electronic transmission, and the writing or writings or electronic transmission or transmissions (or paper reproductions thereof) are filed with the minutes of proceedings of the Board or committee. Such filing shall be in paper form if the minutes are maintained in paper form and shall be in electronic form if the minutes are maintained in electronic form.

**Section 4.6.   Organization**.   The chairman of each meeting of the Board shall be the Chairman or, in the absence (or inability or refusal to act) of the Chairman, a Director selected by the Chairman, or if such a person shall not have been selected (or is unable or unwilling to act), the Chief Executive Officer (if he or she shall be a Director), or in the absence (or inability or refusal to act) of the Chief Executive Officer or if the Chief Executive Officer is not a Director, a chairman elected from the Directors present. The Secretary shall act as secretary of all meetings of the Board.   In the absence (or inability or refusal to act) of the Secretary, an Assistant Secretary shall perform the duties of the Secretary at such meeting.  In the absence (or inability or refusal to act) of the Secretary and all Assistant Secretaries, the chairman of the meeting may appoint any person to act as secretary of the meeting.

### ARTICLE V.
### COMMITTEES OF DIRECTORS

**Section 5.1.   Establishment**.   The Board shall establish and maintain such committees as required by the Stockholders Agreement and may designate one or more additional committees, each such committee to consist of one or more Directors.  Each committee shall keep regular minutes of its meetings and report the same to the Board when required.  Subject to the terms of the Stockholders Agreement, the Board shall have the power at any time to fill vacancies in, to change the membership of, or to dissolve any such committee.

**Section 5.2.   Available Powers**.   Any committee established pursuant to Section 5.1 hereof, to the extent permitted by applicable law and by resolution of the Board, shall have and may exercise all of the powers and authority of the Board in the management of the business and affairs of the Corporation, and may authorize the seal of the Corporation to be affixed to all papers that may require it.

**Section 5.3.    Alternate Members.** The Board may designate one or more Directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of such committee.

**Section 5.4.    Procedures.** Unless the Board otherwise provides, the time, date, place, if any, and notice of meetings of a committee shall be determined by such committee. At meetings of a committee, a majority of the number of members of the committee (but not including any alternate member, unless such alternate member has replaced any absent or disqualified member at the time of, or in connection with, such meeting) shall constitute a quorum for the transaction of business. The act of a majority of the members present at any meeting at which a quorum is present shall be the act of the committee, except as otherwise specifically provided by applicable law, the Certificate of Incorporation, these Bylaws or the Board. If a quorum is not present at a meeting of a committee, the members present may adjourn the meeting from time to time, without notice other than an announcement at the meeting, until a quorum is present. Unless the Board otherwise provides and except as provided in these Bylaws, each committee designated by the Board may make, alter, amend and repeal rules for the conduct of its business. In the absence of such rules each committee shall conduct its business in the same manner as the Board is authorized to conduct its business pursuant to Article III and Article IV of these Bylaws.

## ARTICLE VI.
## OFFICERS

**Section 6.1.    Officers.** The officers of the Corporation elected by the Board shall be a Chairman, a Chief Executive Officer, a President, a Treasurer, a Secretary and such other officers (including without limitation a Chief Financial Officer, Vice Presidents, Assistant Secretaries and Assistant Treasurers) as the Board from time to time may determine. Officers elected by the Board shall each have such powers and duties as generally pertain to their respective offices, subject to the specific provisions of this Article VI. Such officers shall also have such powers and duties as from time to time may be conferred by the Board. The Chairman, Chief Executive Officer or President may also appoint such other officers (including without limitation one or more Vice Presidents and Controllers) as may be necessary or desirable for the conduct of the business of the Corporation. Such other officers shall have such powers and duties and shall hold their offices for such terms as may be provided in these Bylaws or as may be prescribed by the Board or, if such officer has been appointed by the Chairman, Chief Executive Officer or President, as may be prescribed by the appointing officer.

(a)    Chairman of the Board. The Chairman shall preside when present at all meetings of the stockholders and the Board. The Chairman shall advise and counsel the Chief Executive Officer and other officers and shall exercise such powers and perform such duties as shall be assigned to or required of the Chairman from time to time by the Board or these Bylaws.

(b)    Chief Executive Officer. The Chief Executive Officer shall be the chief executive officer of the Corporation, shall have general supervision of the affairs of the Corporation and general control of all of its business subject to the ultimate authority of the Board, and shall be responsible for the execution of the policies of the Board. In the absence (or inability or refusal to act) of the Chairman, the Chief Executive Officer (if he or she shall be a Director) shall preside when present at all meetings of the stockholders and the Board.

9

(c)     President.    The President shall be the chief operating officer of the Corporation and shall, subject to the authority of the Chief Executive Officer and the Board, have general management and control of the day-to-day business operations of the Corporation and shall consult with and report to the Chief Executive Officer.    The President shall make recommendations to the Chief Executive Officer on all operational matters that would normally be reserved for the final executive responsibility of the Chief Executive Officer.    The Chief Executive Officer and the President may be the same person.

(d)     Vice Presidents.    In the absence (or inability or refusal to act) of the President, the Vice President (or in the event there be more than one Vice President, the Vice Presidents in the order designated by the Board) shall perform the duties and have the powers of the President. Any one or more of the Vice Presidents may be given an additional designation of rank or function.

(e)     Secretary.

(i)     The Secretary shall attend all meetings of the stockholders, the Board and (as required) committees of the Board and shall record the proceedings of such meetings in books to be kept for that purpose.    The Secretary shall give, or cause to be given, notice of all meetings of the stockholders and special meetings of the Board and shall perform such other duties as may be prescribed by the Board, the Chairman, Chief Executive Officer or President.    The Secretary shall have custody of the corporate seal of the Corporation and the Secretary, or any Assistant Secretary, shall have authority to affix the same to any instrument requiring it, and when so affixed, it may be attested by his or her signature or by the signature of such Assistant Secretary.    The Board may give general authority to any other officer to affix the seal of the Corporation and to attest the affixing thereof by his or her signature.

(ii)     The Secretary shall keep, or cause to be kept, at the principal executive office of the Corporation or at the office of the Corporation's transfer agent or registrar, if one has been appointed, a stock ledger, or duplicate stock ledger, showing the names of the stockholders and their addresses, the number and classes of shares held by each and, with respect to certificated shares, the number and date of certificates issued for the same and the number and date of certificates cancelled.

(f)     Assistant Secretaries.    The Assistant Secretary or, if there be more than one, the Assistant Secretaries in the order determined by the Board shall, in the absence (or inability or refusal to act) of the Secretary, perform the duties and have the powers of the Secretary.

(g)     Treasurer.    The Treasurer shall perform all duties commonly incident to that office (including, without limitation, the care and custody of the funds and securities of the Corporation which from time to time may come into the Treasurer's hands and the deposit of the funds of the Corporation in such banks or trust companies as the Board, the Chief Executive Officer or the President may authorize).

10

(h)    Assistant Treasurers.  The Assistant Treasurer or, if there shall be more than one, the Assistant Treasurers in the order determined by the Board shall, in the absence (or inability or refusal to act) of the Treasurer, perform the duties and exercise the powers of the Treasurer.

Section 6.2.    Term of Office; Removal; Vacancies.  The elected officers of the Corporation shall be elected annually by the Board at its first meeting held after each annual meeting of stockholders. All officers elected by the Board shall hold office until the next annual meeting of the Board and until their successors are duly elected and qualified or until their earlier death, resignation, retirement, disqualification, or removal from office.  Any officer may be removed, with or without cause, at any time by the Board.  Any officer appointed by the Chairman, Chief Executive Officer or President may also be removed, with or without cause, by the Chairman, Chief Executive Officer or President, as the case may be, unless the Board otherwise provides.  Any vacancy occurring in any elected office of the Corporation may be filled by the Board.  Any vacancy occurring in any office appointed by the Chairman, Chief Executive Officer or President may be filled by the Chairman, Chief Executive Officer or President, as the case may be, unless the Board then determines that such office shall thereupon be elected by the Board, in which case the Board shall elect such officer.

Section 6.3.    Other Officers.  The Board may delegate the power to appoint such other officers and agents, and may also remove such officers and agents or delegate the power to remove same, as it shall from time to time deem necessary or desirable.

Section 6.4.    Multiple Officeholders; Stockholder and Director Officers.  Any number of offices may be held by the same person unless the Certificate of Incorporation or these Bylaws otherwise provide.  Officers need not be stockholders or residents of the State of Delaware.

## ARTICLE VII.
## SHARE CERTIFICATES

Section 7.1.    Entitlement to Certificates.  The shares of the Corporation shall be represented by certificates, provided that the Board may provide by resolution or resolutions that some or all of any or all classes or series of its stock shall be uncertificated shares. Any such resolution shall not apply to shares represented by a certificate until such certificate is surrendered to the Corporation. Notwithstanding the adoption of such a resolution by the Board, every holder of stock represented by certificates and upon request every holder of uncertificated shares shall be entitled to have a certificate signed in accordance with Section 7.3 representing the number of shares registered in certificate form.  The Corporation shall not have power to issue a certificate representing shares in bearer form.

Section 7.2.    Multiple Classes of Stock.  If the Corporation shall be authorized to issue more than one class of stock or more than one series of any class, the Corporation shall (a) cause the powers, designations, preferences and relative, participating, optional or other special rights of each class of stock or series thereof and the qualifications, limitations or restrictions of such preferences or rights to be set forth in full or summarized on the face or back of any certificate that the Corporation issues to represent shares of such class or series of stock or (b) in the case of

11

uncertificated shares, within a reasonable time after the issuance or transfer of such shares, send to the registered owner thereof a written notice containing the information required to be set forth on certificates as specified in clause (a) above; provided, however, that, except as otherwise provided by applicable law, in lieu of the foregoing requirements, there may be set forth on the face or back of such certificate or, in the case of uncertificated shares, on such written notice a statement that the Corporation will furnish without charge to each stockholder who so requests the powers, designations, preferences and relative, participating, optional or other special rights of each class of stock or series thereof and the qualifications, limitations or restrictions of such preferences or rights.

Section 7.3.    Signatures.    Each certificate representing capital stock of the Corporation shall be signed by or in the name of the Corporation by (a) the Chairman, the Chief Executive Officer, the President or a Vice President and (b) the Treasurer, an Assistant Treasurer, the Secretary or an Assistant Secretary of the Corporation.    Any or all the signatures on the certificate may be a facsimile.    In case any officer, transfer agent or registrar who has signed or whose facsimile signature has been placed upon a certificate shall have ceased to be such officer, transfer agent or registrar before such certificate is issued, such certificate may be issued by the Corporation with the same effect as if such person were such officer, transfer agent or registrar on the date of issue.

Section 7.4.    Consideration and Payment for Shares.

(a)    Subject to applicable law and the Certificate of Incorporation, shares of stock may be issued for such consideration, having in the case of shares with par value a value not less than the par value thereof, and to such persons, as determined from time to time by the Board.    The consideration may consist of any tangible or intangible property or benefit to the Corporation including cash, promissory notes, services performed, contracts for services to be performed or other securities.

(b)    Subject to applicable law and the Certificate of Incorporation, shares may not be issued until the full amount of the consideration has been paid, unless upon the face or back of each certificate issued to represent any partly paid shares of capital stock or upon the books and records of the Corporation in the case of partly paid uncertificated shares, there shall have been set forth the total amount of the consideration to be paid therefor and the amount paid thereon up to and including the time said certificate representing certificated shares or said uncertificated shares are issued.

Section 7.5.    Lost, Destroyed or Wrongfully Taken Certificates.

(a)    In case of loss, destruction or wrongful taking of a certificate representing shares of the capital stock of the Corporation, no new certificate shall be issued in lieu thereof except upon satisfactory proof to the Corporation of such loss or destruction, and upon the giving to the Corporation of satisfactory security against loss by bond or otherwise.    Any such new certificate shall be plainly marked "Duplicate" upon its face.

(b)    If a certificate representing shares of the capital stock of the Corporation has been lost, destroyed or wrongfully taken, and the owner fails to notify the Corporation of that

12

fact within a reasonable time after the owner has notice of such loss, destruction or wrongful taking and the Corporation registers a transfer of such shares before receiving notification, the owner shall be precluded from asserting against the Corporation any claim for registering such transfer or a claim to a new certificate representing such shares or such shares in uncertificated form.

**Section 7.6.    Transfer of Stock.**  If a certificate representing shares of the capital stock of the Corporation is presented to the Corporation with an indorsement requesting the registration of transfer of such shares or an instruction is presented to the Corporation requesting the registration of transfer of uncertificated shares, the Corporation shall register the transfer as requested if:

(a)    in the case of certificated shares, the certificate representing such shares has been surrendered;

(b)    (i) with respect to certificated shares, the indorsement is made by the person specified by the certificate as entitled to such shares; (ii) with respect to uncertificated shares, an instruction is made by the registered owner of such uncertificated shares; or (iii) with respect to certificated shares or uncertificated shares, the indorsement or instruction is made by any other appropriate person or by an agent who has actual authority to act on behalf of the appropriate person;

(c)    the Corporation has received a guarantee of signature of the person signing such indorsement or instruction or such other reasonable assurance that the indorsement or instruction is genuine and authorized as the Corporation may request;

(d)    the transfer does not violate any restriction on transfer imposed by the Corporation that is enforceable in accordance with Section 7.8(a); and

(e)    such other conditions for such transfer as described in the Stockholders Agreement and as shall be provided for under applicable law have been satisfied.

**Section 7.7.    Registered Stockholders.**  Before due presentment for registration of transfer of a certificate representing shares of the capital stock of the Corporation or of an instruction requesting registration of transfer of uncertificated shares, the Corporation may treat the registered owner as the person exclusively entitled to inspect for any proper purpose the stock ledger and the other books and records of the Corporation, vote such shares, receive dividends or notifications with respect to such shares and otherwise exercise all the rights and powers of the owner of such shares, except that a person who is the beneficial owner of such shares (if held in a voting trust or by a nominee on behalf of such person) may, upon providing documentary evidence of beneficial ownership of such shares and satisfying such other conditions as are provided under applicable law, may also so inspect the books and records of the Corporation.

**Section 7.8.    Effect of the Corporation's Restriction on Transfer.**

(a)    A written restriction on the transfer or registration of transfer of shares of the capital stock of the Corporation or on the amount of shares of the capital stock of the

Corporation that may be owned by any person or group of persons, if permitted by the DGCL and noted conspicuously on the certificate representing such shares or, in the case of uncertificated shares, contained in a notice sent by the Corporation to the registered owner of such shares within a reasonable time after the issuance or transfer of such shares, may be enforced against the holder of such shares or any successor or transferee of the holder including an executor, administrator, trustee, guardian or other fiduciary entrusted with like responsibility for the person or estate of the holder.

(b)    A restriction imposed by the Corporation on the transfer or the registration of shares of the capital stock of the Corporation or on the amount of shares of the capital stock of the Corporation that may be owned by any person or group of persons, even if otherwise lawful, is ineffective against a person without actual knowledge of such restriction unless: (i) the shares are certificated and such restriction is noted conspicuously on the certificate; or (ii) the shares are uncertificated and such restriction was contained in a notice sent by the Corporation to the registered owner of such shares within a reasonable time after the issuance or transfer of such shares.

Section 7.9.    Regulations. The Board shall have power and authority to make such additional rules and regulations, subject to any applicable requirement of law, as the Board may deem necessary and appropriate with respect to the issue, transfer or registration of transfer of shares of the capital stock of the corporation or certificates representing such shares. The Board may appoint one or more transfer agents or registrars and may require for the validity thereof that certificates representing shares bear the signature of any transfer agent or registrar so appointed.

## ARTICLE VIII.
## INDEMNIFICATION

Section 8.1.    Right to Indemnification. Each person who was or is made a party or is threatened to be made a party to or is otherwise involved in any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (hereinafter a "*proceeding*"), by reason of the fact that he or she is or was a Director, officer, employee or agent of the Corporation or, while a Director, officer, employee or agent of the Corporation, is or was serving at the request of the Corporation as a Director, officer, employee or agent of another corporation or of a partnership, joint venture, trust or other enterprise, including service with respect to an employee benefit plan (hereinafter a "*Covered Person*"), whether the basis of such proceeding is alleged action in an official capacity as a Director, officer, employee or agent, or in any other capacity while serving as a Director, officer, employee or agent, shall be indemnified and held harmless by the Corporation to the fullest extent authorized or permitted by applicable law, as the same exists or may hereafter be amended, against all expense, liability and loss (including, without limitation, attorneys' fees, judgments, fines, ERISA excise taxes and penalties and amounts paid in settlement) reasonably incurred or suffered by such Covered Person in connection with such proceeding; provided, however, that, except as provided in Section 8.3 with respect to proceedings to enforce rights to indemnification, the Corporation shall indemnify a Covered Person in connection with a proceeding (or part thereof) initiated by such Covered Person only if such proceeding (or part thereof) was authorized by the Board.

**Section 8.2.    Right to Advancement of Expenses.**    In addition to the right to indemnification conferred in <u>Section 8.1</u>, a Covered Person shall also have the right to be paid by the Corporation the expenses (including, without limitation, attorneys' fees) incurred in defending, testifying, or otherwise participating in any such proceeding in advance of its final disposition (hereinafter an *"advancement of expenses"*); provided, however, that, if the Delaware General Corporation Law (*"DGCL"*) requires, an advancement of expenses incurred by a Covered Person in his or her capacity as a director or officer of the Corporation (and not in any other capacity in which service was or is rendered by such Covered Person, including, without limitation, service to an employee benefit plan) shall be made only upon delivery to the Corporation of an undertaking (hereinafter an *"undertaking"*), by or on behalf of such Covered Person, to repay all amounts so advanced if it shall ultimately be determined by final judicial decision from which there is no further right to appeal (hereinafter a *"final adjudication"*) that such Covered Person is not entitled to be indemnified for such expenses under this <u>Article VIII</u> or otherwise.

**Section 8.3.    Right of Indemnitee to Bring Suit.**    If a claim under <u>Section 8.1</u> or <u>Section 8.2</u> is not paid in full by the Corporation within 60 days after a written claim therefor has been received by the Corporation, except in the case of a claim for an advancement of expenses, in which case the applicable period shall be 20 days, the Covered Person may at any time thereafter bring suit against the Corporation to recover the unpaid amount of the claim.  If successful in whole or in part in any such suit, or in a suit brought by the Corporation to recover an advancement of expenses pursuant to the terms of an undertaking, the Covered Person shall also be entitled to be paid the expense of prosecuting or defending such suit.  In (a) any suit brought by the Covered Person to enforce a right to indemnification hereunder (but not in a suit brought by a Covered Person to enforce a right to an advancement of expenses) it shall be a defense that, and (b) in any suit brought by the Corporation to recover an advancement of expenses pursuant to the terms of an undertaking, the Corporation shall be entitled to recover such expenses upon a final adjudication that, the Covered Person has not met any applicable standard for indemnification set forth in the DGCL.  Neither the failure of the Corporation (including its Directors who are not parties to such action, a committee of such Directors, independent legal counsel, or its stockholders)  to have made a determination prior to the commencement of such suit that indemnification of the Covered Person is proper in the circumstances because the Covered Person has met the applicable standard of conduct set forth in the DGCL, nor an actual determination by the Corporation (including a determination by its Directors who are not parties to such action, a committee of such Directors, independent legal counsel, or its stockholders) that the Covered Person has not met such applicable standard of conduct, shall create a presumption that the Covered Person has not met the applicable standard of conduct or, in the case of such a suit brought by the Covered Person, shall be a defense to such suit.  In any suit brought by the Covered Person to enforce a right to indemnification or to an advancement of expenses hereunder, or by the Corporation to recover an advancement of expenses pursuant to the terms of an undertaking, the burden of proving that the Covered Person is not entitled to be indemnified, or to such advancement of expenses, under this <u>Article VIII</u> or otherwise shall be on the Corporation.

**Section 8.4.    Non-Exclusivity of Rights.**    The rights provided to Covered Persons pursuant to this <u>Article VIII</u> shall not be exclusive of any other right which any Covered Person

may have or hereafter acquire under applicable law, the Certificate of Incorporation, these Bylaws, an agreement, a vote of stockholders or disinterested Directors, or otherwise.

**Section 8.5. Insurance.** The Corporation may maintain insurance, at its expense, to protect itself and/or any Director, officer, employee or agent of the Corporation or another corporation, partnership, joint venture, trust or other enterprise against any expense, liability or loss, whether or not the Corporation would have the power to indemnify such person against such expense, liability or loss under the DGCL.

**Section 8.6. Indemnification of Other Persons.** This Article VIII shall not limit the right of the Corporation to the extent and in the manner authorized or permitted by law to indemnify and to advance expenses to persons other than Covered Persons. Without limiting the foregoing, the Corporation may, to the extent authorized from time to time by the Board, grant rights to indemnification and to the advancement of expenses to any employee or agent of the Corporation and to any other person who is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation or of a partnership, joint venture, trust or other enterprise, including service with respect to an employee benefit plan, to the fullest extent of the provisions of this Article VIII with respect to the indemnification and advancement of expenses of Covered Persons under this Article VIII.

**Section 8.7. Amendments.** Any repeal or amendment of this Article VIII by the Board or the stockholders of the Corporation or by changes in applicable law, or the adoption of any other provision of these Bylaws inconsistent with this Article VIII, will, to the extent permitted by applicable law, be prospective only (except to the extent such amendment or change in applicable law permits the Corporation to provide broader indemnification rights to Covered Persons on a retroactive basis than permitted prior thereto), and will not in any way diminish or adversely affect any right or protection existing hereunder in respect of any act or omission occurring prior to such repeal or amendment or adoption of such inconsistent provision.

**Section 8.8. Certain Definitions.** For purposes of this Article VIII, (a) references to "other enterprise" shall include any employee benefit plan; (b) references to "fines" shall include any excise taxes assessed on a person with respect to an employee benefit plan; (c) references to "serving at the request of the Corporation" shall include any service that imposes duties on, or involves services by, a person with respect to any employee benefit plan, its participants, or beneficiaries; and (d) a person who acted in good faith and in a manner such person reasonably believed to be in the interest of the participants and beneficiaries of an employee benefit plan shall be deemed to have acted in a manner "not opposed to the best interest of the Corporation" for purposes of Section 145 of the DGCL.

**Section 8.9. Contract Rights.** The rights provided to Covered Persons pursuant to this Article VIII shall be contract rights and such rights shall continue as to a Covered Person who has ceased to be a Director, officer, agent or employee and shall inure to the benefit of the Covered Person's heirs, executors and administrators.

**Section 8.10. Severability.** If any provision or provisions of this Article VIII shall be held to be invalid, illegal or unenforceable for any reason whatsoever: (a) the validity, legality and enforceability of the remaining provisions of this Article VIII shall not in any way be