(f)     The Holder of a Global Note may grant proxies and otherwise authorize any Person, including Agent Members and Persons that may hold interests through Agent Members, to take any action which a Holder is entitled to take under this Indenture or the Notes.

(g)     The Trustee shall have no obligation or duty to monitor, determine or inquire as to compliance with any restrictions on transfer imposed under this Indenture or under applicable law with respect to any transfer of any interest in any Note (including any transfers between or among Agent Members or beneficial owners of interests in any Global Note) other than to require delivery of such certificates and other documentation or evidence as are expressly required by, and to do so if and when expressly required by the terms of, this Indenture, and to examine the same to determine substantial compliance as to form with the express requirements hereof.

(h)     Neither the Trustee nor any Agent shall have any responsibility for any actions taken or not taken by DTC.

SECTION 2.16.   *Transfers of Global Notes and Physical Notes.*

A transfer of a Global Note or a Physical Note (including the right to receive principal and interest payable thereon) may be made only by the Registrar's entering the transfer in the Register. Prior to such entry, the Issuers shall treat the person in whose name such Note is registered as the owner of the Note for all purposes.

SECTION 2.17.   *Payment of Interest; Interest Rights; Preserved.*

Interest on any Note which is payable, and is punctually paid or duly provided for, on any Interest Payment Date shall be paid to the Person in whose name that Note (or one or more predecessor Notes) is registered at the close of business on the Regular Record Date for such interest.

Any interest on any Note which is payable, but is not punctually paid or duly provided for, on any Interest Payment Date (herein called "*Defaulted Interest*") shall forthwith cease to be payable to the Holder on the relevant Record Date by virtue of having been such Holder on such date, and such Defaulted Interest may be paid by the Issuers, at the election in each case, as provided in clause (1) or (2) below:

(1)     The Issuers may elect to make payment of any Defaulted Interest to the Persons in whose names the Notes (or their respective predecessor Notes) are registered at the close of business on a Special Record Date for the payment of such Defaulted Interest, which shall be fixed in the following manner. The Issuers shall notify the Trustee in writing of the amount of Defaulted Interest proposed to be paid on each Security and the date of the proposed payment, and at the same time the Issuers shall deposit with the Trustee an amount of Additional Notes or money, as determined by the Company pursuant to *Section 2.02* hereof, equal to the aggregate amount proposed to be paid in respect of such Defaulted Interest or shall make arrangements satisfactory to the Trustee for such deposit prior to the date of the proposed payment, such Additional Notes or money, as applicable, when deposited to be held in trust for the benefit of the Persons entitled to such Defaulted Interest as in this clause provided. Thereupon the Trustee shall

fix a Special Record Date for the payment of such Defaulted Interest which shall be not more than 15 days and not less than 10 days after the receipt by the Trustee of the notice of the proposed payment. The Trustee shall promptly notify the Issuers of such Special Record Date and, in the name and at the sole expense of the Issuers, shall cause notice of the proposed payment of such Defaulted Interest and the Special Record Date therefor to be mailed, first-class postage prepaid, to each Holder at this address as it appears in the Register, not less than 10 days prior to such Special Record Date. Notice of the proposed payment of such Defaulted Interest and the Special Record Date therefor having been so mailed, such Defaulted Interest shall be paid to the Persons in whose names the Notes (or their respective Predecessor Securities) are registered at the close of business on such Special Record Date and shall no longer be payable pursuant to the following clause (2).

(2)     The Issuers may make payment of any Defaulted Interest in any other lawful manner not inconsistent with the requirements of any securities exchange on which the Notes may be listed, and upon such notice as may be required by such exchange, if, after written notice given by the Issuer to the Trustee of the proposed payment pursuant to this clause, such manner of payment shall be deemed practicable by the Trustee in its reasonable judgment.

Subject to the foregoing provisions of this Section, each Note delivered under this Indenture upon registration, transfer, or in exchange for, or in lieu of any other Note shall carry the rights to interest accrued and unpaid, and to accrue, which were carried by such other Note.

SECTION 2.18.    *Computation of Interest.*

Interest on the Notes shall be computed on the basis of a 360-day year of twelve 30-day months.

SECTION 2.19.    *Additional Notes.*

In the event the Company on behalf of the Issuers determines to issue Additional Notes pursuant to *Section 2.02*, the Company shall deliver an Officer's Certificate and Additional Notes as required by *Section 2.03* and an Officers' Certificate setting forth the following information:

(1)     The aggregate principal amount of such Additional Notes to be authenticated and delivered on the applicable issue date; and

(2)     The proposed issue date of such Additional Notes, which shall be an Interest Payment Date.

If the proposed Interest Payment Date occurs during the two-year period following the Issue Date and the Issuers elect to pay interest in Additional Securities, the Issuers shall deliver at least 5 Business Days prior to the Record Date the Officers' Certificate required by this *Section 2.19*, the Board Resolution and Officers' Certificate required by *Section 2.02*, and shall provide notice of such election (including the amounts of Additional Notes) to all Holders in the manner provided in *Section 11.02*.

## ARTICLE THREE
## REDEMPTION AND PREPAYMENT

SECTION 3.01.   *Optional Redemption.*

The Issuers may, at their option, redeem the Notes, in whole or in part, at specified times and under specified conditions, as set forth in Paragraph 6 of the Notes. If the Issuers elect to redeem Notes pursuant to Paragraph 6 of the Notes, they shall, at least forty-five (45) days (or such shorter period as the Trustee may agree) before the Redemption Date, furnish to the Trustee and Paying Agent an Officers' Certificate setting forth the Redemption Date and the principal amount of the Notes to be redeemed and the clause of this Indenture or the Notes pursuant to which the redemption shall occur.

Each Officers' Certificate provided for in this *Section 3.01* shall be accompanied by an Opinion of Counsel stating that such redemption shall comply with the conditions contained herein and in the Notes.

SECTION 3.02.   *Selection of Notes to be Redeemed.*

If fewer than all of the Notes are to be redeemed pursuant to Paragraph 6 of the Notes, the Trustee shall select the Notes to be redeemed:

(1)   in compliance with the requirements of the principal national securities exchange, if any, on which such Notes are listed or

(2)   if such Notes are not then listed on a national securities exchange, by lot; *provided that* no partial redemption will reduce the principal amount of a Note not redeemed to less than $1,000; and *provided, further,* that if a partial redemption is made with the proceeds of an Equity Offering then the selection of the Notes or portions thereof for redemption shall be made by the Trustee only on a pro rata basis or on as nearly a *pro rata* basis as is practicable (subject to the procedures of DTC), unless such method is prohibited.

The Trustee shall make the selection from the Notes outstanding and not previously called for redemption and shall promptly notify the Issuers in writing of the Notes selected for redemption and, in the case of any Note selected for partial redemption, the principal amount at maturity thereof, to be redeemed. Notes in denominations of $1,000 or less in principal amount at maturity may be redeemed only in whole. The Trustee may select for redemption portions (equal to $1,000 in principal amount at maturity or any integral multiple thereof) of the principal of Notes that have denominations larger than $1,000. Provisions of this Indenture that apply to Notes called for redemption also apply to portions of Notes called for redemption.

SECTION 3.03.   *Notice of Redemption.*

At least thirty (30) days but not more than sixty (60) days before a Redemption Date, the Issuers shall mail or cause to be mailed a notice of redemption by first class mail, postage prepaid, to each Holder whose Notes are to be redeemed at its registered address, with a copy to the Trustee and any Paying Agent. At the Issuers' written request, the Trustee shall give the

notice of redemption in the Issuers' name and at the Issuers' expense. Failure to give notice of redemption, or any defect therein to any Holder of any Note selected for redemption shall not impair or affect the validity of the redemption of any other Note.

Each notice of redemption shall identify the Notes to be redeemed and shall state:

    (1)    the Redemption Date;

    (2)    the Redemption Price and the amount of accrued interest, if any, to be paid;

    (3)    the name and address of the Paying Agent;

    (4)    the CUSIP number;

    (5)    the place where such Notes called for redemption must be surrendered to the Paying Agent to collect the Redemption Price plus accrued interest, if any;

    (6)    that, unless the Issuers fail to deposit with the Paying Agent funds in satisfaction of the applicable redemption price, interest on Notes called for redemption ceases to accrue on and after the Redemption Date in accordance with *Section 3.05*, and the only remaining right of the Holders of such Notes is to receive payment of the Redemption Price plus accrued interest, if any, upon surrender to the Paying Agent of the Notes redeemed;

    (7)    if any Note is being redeemed in part, the portion of the principal amount of such Note to be redeemed and that, after the Redemption Date, and upon surrender of such Note, a new Note or Notes in the aggregate principal amount equal to the unredeemed portion thereof shall be issued; and

    (8)    if fewer than all the Notes are to be redeemed, the identification of the particular Notes (or portion thereof) to be redeemed, as well as the aggregate principal amount of Notes to be redeemed and the aggregate principal amount of Notes to be outstanding after such partial redemption.

If any of the Notes to be redeemed is in the form of a Global Note, then the Issuers shall modify such notice to the extent necessary to accord with the procedures of DTC applicable to redemption.

SECTION 3.04.  *Effect of Notice of Redemption*.

Once notice of redemption is mailed in accordance with *Section 3.03*, Notes or portions thereof called for redemption shall become irrevocably due and payable on the Redemption Date and at the Redemption Price plus accrued interest, if any. Upon surrender to the Trustee or Paying Agent, such Notes or portions thereof called for redemption shall be paid at the Redemption Price plus accrued interest thereon to the Redemption Date, but installments of interest, the maturity of which is on or prior to the Redemption Date, shall be payable to Holders of record at the close of business on the relevant Record Dates referred to in the Notes.

SECTION 3.05.   *Deposit of Redemption Price.*

Not later than 10:00 a.m. local time in the place of payment on the Redemption Date, the Issuers shall deposit with the Paying Agent U.S. Legal Tender sufficient to pay the Redemption Price plus accrued interest, if any, of all Notes or portions thereof to be redeemed on that date.

The Paying Agent shall promptly return to the Issuers any U.S. Legal Tender so deposited which is not required for that purpose, except with respect to monies owed as obligations to the Trustee pursuant to *Article Seven*.

If the Issuers comply with the preceding paragraph, then, unless the Issuers default in the payment of such Redemption Price plus accrued interest, if any, interest on the Notes to be redeemed shall cease to accrue on and after the applicable Redemption Date, whether or not such Notes are presented for payment.

SECTION 3.06.   *Notes Redeemed in Part.*

Upon surrender of a Note that is to be redeemed in part, the Company shall issue and the Trustee shall authenticate for the Holder at the expense of the Company a new Note or Notes equal in principal amount to the unredeemed portion of the Note surrendered.

SECTION 3.07.   *Mandatory Prepayment.*

(a)     To the extent that the Issuers sell or cause to be sold any or all of the NexCen Stock or any or all of the Capital Stock of TCBY or all or substantially all of the assets of TCBY, which sales shall constitute Asset Sales and be subject to the provisions the first paragraph of Section 4.13, the Issuers shall first use the Net Cash Proceeds therefrom to pay the Covered Obligations (as defined in the Plan) and then to prepay the Notes on a date not more than 45 days after the receipt of the applicable Net Cash Proceeds from such sale (an "Asset Sale Mandatory Prepayment Date") in an amount equal to 100% of such remaining Net Cash Proceeds (the "Asset Sale Mandatory Prepayment Amount"), unless the amount of such Net Cash Proceeds is less than $50,000.

(b)     The Notes shall be prepaid from the Net Cash Proceeds received from the exercise of the Warrants or from an issuance of Capital Stock other than Disqualified Capital Stock and other than pursuant to transactions described in Section 4.10(b) on a date not more than 45 days after receipt of the applicable Net Cash Proceeds from such issuance of such Capital Stock in an amount equal to 100% of the Net Cash Proceeds therefrom (the "Equity Mandatory Prepayment Amount"), unless the amount of such Net Cash Proceeds is less than $50,000.

(c)     On the fifth Business Day following the receipt of Net Cash Proceeds pursuant to a transaction covered by clause (a) or (b) of this Section 3.07, the Company shall deliver to the Trustee an Officers' Certificate selling forth a description of the applicable transaction and a calculation of the applicable Net Cash Proceeds and the applicable Mandatory Prepayment Amount. On or before the record date for the Mandatory Prepayment, the Company shall publicly announce the aggregate amount of the Mandatory Prepayment.

(d)     The record date for any such Mandatory Prepayment shall be fifteen days after the receipt by the Company or its Restricted Subsidiaries of the applicable Net Cash Proceeds. On or prior to 10:00 a.m., New York City time, on any Mandatory Prepayment Date, the Company shall deposit with the Trustee or with the Paying Agent the Mandatory Prepayment Amount.

(e)     The Mandatory Prepayment Amount shall be applied on a pro rata basis to make a partial payment of principal on each Note and accrued and unpaid interest on the portion of the principal being so repaid on the Mandatory Prepayment Date, *provided, however,* that installments of interest whose Interest Payment Date is on or prior to the Mandatory Prepayment Date shall be payable to the Holders of such Notes, or one or more predecessor Notes, registered as such at the close of business on the relevant Record Dates according to their terms.

## ARTICLE FOUR
## COVENANTS

SECTION 4.01.    *Payment of Notes.*

The Issuers shall pay the principal of, or premium, if any, or interest on the Notes on the dates and in the manner provided in the Notes and in this Indenture. An installment of principal of, or premium, if any, or interest on the Notes shall be considered paid on the date it is due if the Trustee or Paying Agent (other than the Issuers or an Affiliate of the Issuers) holds on that date U.S. Legal Tender designated for and sufficient to pay the installment in full.

Notwithstanding anything to the contrary contained in this Indenture, the Issuers may, to the extent they are required to do so by law, deduct or withhold income or other similar taxes imposed by the United States from principal or interest payments hereunder.

SECTION 4.02.    *Maintenance of Office or Agency.*

The Issuers shall maintain the office or agency required under *Section 2.04.* The Issuers shall give prior written notice to the Trustee of the location, and any change in the location, of such office or agency. If at any time the Issuers shall fail to maintain any such required office or agency or shall fail to furnish the Trustee with the address thereof, such presentations, surrenders, notices and demands may be made or served at the Corporate Trust Office and the Issuers hereby appoint the Trustee as their agent to receive all such presentations, surrenders, notices and demands.

SECTION 4.03.    *Corporate Existence.*

Except as otherwise permitted by *Article Four, Article Five* and *Article Ten,* the Parent and the Issuers shall do or cause to be done, at their own cost and expense, all things necessary to preserve and keep in full force and effect their limited liability company or corporate existence and the limited liability company or corporate existence of each of their respective Restricted Subsidiaries in accordance with the respective organizational documents of the Parent, the Issuers and each such Restricted Subsidiary and the material rights (charter and statutory) and franchises of the Parent, the Issuers and each such Restricted Subsidiary; *provided, however,* that the Parent and the Issuers shall not be required to preserve, with respect to themselves, any material right or franchise and, with respect to any of the Restricted Subsidiaries (other than the

46

Issuers), any such existence, material right or franchise, if the Boards of Directors of the Issuers or the Parent, as the case may be, shall determine in good faith that the preservation thereof is no longer desirable in the conduct of the business of the Issuers and their Restricted Subsidiaries, taken as a whole, or the Parent and its Subsidiaries, taken as a whole, as the case be.

SECTION 4.04.    *Payment of Taxes and Other Claims*.

The Parent and the Issuers shall pay or discharge or cause to be paid or discharged, before the same shall become delinquent, (i) all material taxes, assessments and governmental charges (including withholding taxes and any penalties, interest and additions to taxes) levied or imposed upon them or any of their respective Restricted Subsidiaries or their properties or any of such Restricted Subsidiaries' properties and (ii) all material lawful claims for labor, materials and supplies that, if unpaid, might by law become a Lien upon their properties or any of their respective Restricted Subsidiaries' properties; *provided, however*, that the Parent and the Issuers shall not be required to pay or discharge or cause to be paid or discharged any such tax, assessment, charge or claim whose amount, applicability or validity is being or shall be contested in good faith by appropriate proceedings properly instituted and diligently conducted for which adequate reserves, to the extent required under GAAP, have been taken.

SECTION 4.05.    *Maintenance of Properties and Insurance*.

(a)    The Parent and the Issuers shall, and shall cause each of their respective Restricted Subsidiaries to, maintain in good working order and condition in all material respects (subject to ordinary wear and tear) their properties that are used or useful in the conduct of their business and that are material to the conduct of such business, and make all necessary repairs, renewals, replacements, additions, betterments and improvements thereto and actively conduct and carry on their business; *provided, however*, that nothing in this *Section 4.05* shall prevent the Parent, the Issuers or any of their respective Restricted Subsidiaries from discontinuing the operation and maintenance of any of their properties if such discontinuance is, in the good faith judgment of the Board of Directors or other governing body of the Parent, the Issuers or the Restricted Subsidiary concerned, as the case may be, desirable in the conduct of their businesses and is not disadvantageous in any material respect to the Holders.

(b)    The Parent and the Issuers shall maintain insurance (including appropriate self-insurance) against loss or damage of the kinds that, in the good faith judgment of the Issuers, are adequate and appropriate for the conduct of the business of the Parent, the Issuers and the Domestic Restricted Subsidiaries in a prudent manner, with reputable insurers or with the government of the United States or an agency or instrumentality thereof, in such amounts, with such deductibles, and by such methods as shall be customary, in the good faith judgment of the Issuers or the Parent, as the case may be, for companies similarly situated in the industry.

SECTION 4.06.    *Compliance Certificate; Notice of Default*.

(a)    The Issuers shall deliver to the Trustee, within ninety (90) days after the end of the Company's fiscal year, an Officers' Certificate stating that a review of the activities of the Parent, the Issuers and their respective Restricted Subsidiaries during the preceding fiscal year has been made under the supervision of the signing Officers (one of whom is the principal

47

executive officer, principal financial officer or principal accounting officer) with a view to determining whether they have kept, observed, performed and fulfilled their obligations under this Indenture and the other Indenture Documents and further stating, as to each such Officer signing such certificate, that to the best of such Officer's actual knowledge the Parent, the Issuers and their respective Restricted Subsidiaries during such preceding fiscal year have kept, observed, performed and fulfilled each and every condition and covenant under this Indenture and the other Indenture Documents in all material respects and at the date of such certificate there is no Default or Event of Default that has occurred and is continuing or, if such signers do know of such Default or Event of Default, the certificate shall describe the Default or Event of Default and its status with particularity.

(b)  So long as not contrary to the then current recommendations of the American Institute of Certified Public Accountants, the annual financial statements delivered pursuant to *Section 4.23* shall be accompanied by a written report of the Parent's independent accountants (who shall be a firm of established national reputation) that in conducting their audit of such financial statements nothing has come to their attention that would lead them to believe that the Issuers has violated any provisions of *Article Four* or *Article Five* insofar as they relate to accounting matters or, if they believe that any such violation has occurred, specifying the nature and period of existence thereof, it being understood that such accountants shall not be liable directly or indirectly to any Person for any failure to obtain knowledge of any such violation.

(c)  The Issuers shall, so long as any Notes are outstanding, upon any Officer of the Issuers or the Parent becoming aware of any Default or Event of Default, deliver to the Trustee an Officers' Certificate specifying such Default or Event of Default within five (5) Business Days of such Officer becoming aware of such occurrence.

SECTION 4.07.  *Waiver of Stay, Extension or Usury Laws.*

The Issuers covenant (to the extent that it may lawfully do so) that they shall not at any time insist upon, plead, or in any manner whatsoever claim or take the benefit or advantage of, any stay or extension law or any usury law or other law that would prohibit or forgive the Issuers from paying all or any portion of the principal of, premium, if any, or interest on the Notes as contemplated herein, wherever enacted, now or at any time hereafter in force, or which may affect the covenants or the performance of this Indenture; and (to the extent that they may lawfully do so) the Issuers hereby expressly waive all benefit or advantage of any such law, and covenant that they shall not, by resort to any such law, hinder, delay or impede the execution of any power herein granted to the Trustee, but shall suffer and permit the execution of every such power as though no such law had been enacted.

SECTION 4.08.  *Limitation on Incurrence of Additional Indebtedness.*

The Parent and Issuers will not, and will not permit any of their respective Restricted Subsidiaries to, directly or indirectly, create, incur, assume, guarantee, acquire, become liable, contingently or otherwise, with respect to, or otherwise become responsible for payment of (collectively, "*incur*") any Indebtedness (other than Permitted Indebtedness); *provided, however,* that if no Default or Event of Default shall have occurred and be continuing at the time of or as a consequence of the incurrence of any such Indebtedness, the Parent, the Issuers or any of their

Restricted Subsidiaries that is or, upon such incurrence, becomes a Guarantor may incur Indebtedness (including, without limitation, Acquired Indebtedness) if on the date of the incurrence of such Indebtedness the Consolidated Fixed Charge Coverage Ratio of the Parent will be, after giving effect to the incurrence thereof and the application of the proceeds thereof, greater than 2.0 to 1.0.

SECTION 4.09.    *Limitation on Sale and Leaseback Transactions.*

The Parent and the Issuers will not, and will not permit any Restricted Subsidiary of the Company or the Parent to, enter into any Sale and Leaseback Transaction with respect to any of their or such Restricted Subsidiary's property unless (1) the Parent, the Issuers or such Restricted Subsidiary would be entitled to (a) incur Indebtedness in an amount equal to the Attributable Debt with respect to such Sale and Leaseback Transaction pursuant to *Section 4.08* and (b) create a Lien on such property securing such Attributable Debt pursuant to *Section 4.16*, and (2) the Sale and Leaseback Transaction is treated as an Asset Sale and the Issuers apply the proceeds of such transaction in compliance with *Section 4.13*.

SECTION 4.10.    *Limitation on Restricted Payments.*

(a)    The Parent and Issuers will not, and will not cause or permit any of their respective Restricted Subsidiaries to, directly or indirectly:

(1)    declare or pay any dividend or make any distribution on or in respect of shares of Capital Stock of the Parent, the Company or their respective Restricted Subsidiaries to holders of such Capital Stock, other than (i) dividends or distributions payable in Qualified Capital Stock of the Parent, (ii) dividends and distributions payable to the Parent, the Company or another Restricted Subsidiary of the Company or the Parent, as the case may be, and (iii) *pro rata* dividends or distributions payable by a Restricted Subsidiary of the Parent or the Company that is not a Wholly-Owned Subsidiary of the Company to minority holders of Capital Stock of such Restricted Subsidiary;

(2)    purchase, redeem or otherwise acquire or retire for value any Capital Stock of the Parent held by any Person other than the Parent, the Company or a Wholly-Owned Restricted Subsidiary of the Parent or the Company other than in exchange for Qualified Capital Stock of the Parent, the Company or their respective Restricted Subsidiaries or any warrants, rights or options to purchase or acquire shares of any class of such Capital Stock;

(3)    make any principal payment on, purchase, defease, redeem, prepay or otherwise acquire or retire for value, prior to any scheduled final maturity, scheduled repayment or scheduled sinking fund payment, any Indebtedness of the Issuers or any Guarantor that is subordinate or junior in right of payment to the Notes or a Guarantee; or

(4)    make any Investment (other than Permitted Investments),

(each of the foregoing actions set forth in *clauses (1), (2), (3)* and *(4)* being referred to as a "*Restricted Payment*"); if at the time of such Restricted Payment or immediately after giving effect thereto,

        (i)      a Default or an Event of Default shall have occurred and be continuing; or

        (ii)      the Parent is not able to incur at least \$1.00 of additional Indebtedness (other than Permitted Indebtedness) in compliance with *Section 4.08*; or

        (iii)      the aggregate amount of Restricted Payments (including such proposed Restricted Payment) made subsequent to the Issue Date (the amount expended for such purposes, if other than in cash, being the Fair Market Value of such property as determined in good faith by the Board of Directors of the Company at the time of the making thereof) shall exceed the sum of:

            (u)      50% of the cumulative Consolidated Net Income (or if cumulative Consolidated Net Income is a deficit, 100% of such Consolidated Net Income) of the Parent earned during the period commencing with the first full fiscal quarter ending after the Issue Date and ending on the last day of the Parent's most recent fiscal month occurring prior to the date the Restricted Payment occurs (the "*Reference Date*") (treating such period as a single accounting period); *plus*

            (v)      100% of the aggregate Net Cash Proceeds received by the Parent from any Person (other than the Company or a Restricted Subsidiary of the Company or the Parent) from the issuance and sale subsequent to the Issue Date and on or prior to the Reference Date of Qualified Capital Stock of the Parent other than pursuant to the transactions described in the Plan or the exercise of the Warrants; *plus*

            (w)      100% of the aggregate Net Cash Proceeds received by the Parent, the Company or any of its Restricted Subsidiaries subsequent to the Issue Date and on or prior to the Reference Date from the issuance and sale of Indebtedness (including Disqualified Capital Stock of the Parent) that has been converted into or exchanged for Qualified Capital Stock of the Parent together with the aggregate cash received by the Parent, the Company or such Restricted Subsidiary at the time of such conversion or exchange and the amount of any accrued interest then outstanding on any Indebtedness that is paid in Qualified Capital Stock of the Parent; *plus*

            (x)      without duplication of any amounts included in *clause (iii)(v)* above, 100% of the aggregate Net Cash Proceeds of any equity contribution received by the Parent from a holder of the Parent's Capital Stock (other than the Company or a Restricted Subsidiary of the Company or the Parent) subsequent to the Issue Date and on or prior to the Reference Date; *plus*

            (y)      the sum of (1) without duplication of any amounts included in Consolidated Net Income in *clause (iii)(u)* above, the aggregate amount paid in cash or Cash Equivalents to the Parent, the Company or a Restricted Subsidiary of

the Company or the Parent on or with respect to Investments (other than Permitted Investments) made subsequent to the Issue Date whether through interest payments, principal payments, dividends or other distributions or payments, (2) the net cash proceeds received by the Parent, the Company or any of their respective Restricted Subsidiaries from the disposition of all or any portion of such Investments (other than to the Company or a Restricted Subsidiary of the Company or the Parent) and (3) upon redesignation of an Unrestricted Subsidiary as a Restricted Subsidiary, the fair market value of such Subsidiary; *provided*, *however*, that the sum of *clauses (1)*, *(2)* and *(3)* above shall not exceed the aggregate amount of all such Investments made subsequent to the Issue Date.

In the case of *clauses (iii)(v)* and *(w)* above, any Net Cash Proceeds from issuances and sales of Qualified Capital Stock of the Parent financed directly or indirectly using funds borrowed from the Parent, the Company or any Subsidiary of the Company or the Parent, shall be excluded until and to the extent such borrowing is repaid.

(b)    Notwithstanding the provisions of *Section 4.10(a)*, the provisions set forth in *Section 4.10(a)* do not prohibit:

(1)    the payment of any dividend or other distribution or redemption within 60 days after the date of declaration of such dividend or call for redemption if such payment would have been permitted on the date of declaration or call for redemption;

(2)    the repurchase, redemption or other acquisition or retirement of any shares of Qualified Capital Stock of the Parent, either (i) solely in exchange for other shares of Qualified Capital Stock of the Parent or (ii) if no Default or Event of Default shall have occurred and be continuing or would exist after giving effect thereto, through the application of net proceeds of a substantially concurrent sale for cash (other than to the Company or a Restricted Subsidiary of the Company or the Parent) of shares of Qualified Capital Stock of the Parent;

(3)    the repurchase, retirement, redemption or other repayment or acquisition of any Indebtedness of the Issuers or the Guarantors that is subordinate or junior in right of payment to the Notes and Guarantees either (i) solely in exchange for shares of Qualified Capital Stock of the Parent, or (ii) if no Default or Event of Default shall have occurred and be continuing or would exist after giving effect thereto, through the application of net proceeds of a substantially concurrent sale for cash (other than to the Company or a Restricted Subsidiary of the Company or the Parent) of (a) shares of Qualified Capital Stock of the Parent or (b) Refinancing Indebtedness;

(4)    if no Default or Event of Default shall have occurred and be continuing or would exist after giving effect thereto, an Investment through the application of the net proceeds of a substantially concurrent sale for cash (other than to the Company or a Restricted Subsidiary of the Company or the Parent) of shares of Qualified Capital Stock of the Parent;

(5)     if no Default or Event of Default shall have occurred and be continuing or would exist after giving effect thereto, a Restricted Payment to pay for the repurchase or other acquisition of shares of Capital Stock of the Company from officers, former officers, employees, former employees, directors or former directors of the Parent, the Company or any of their respective Subsidiaries (or permitted transferees of such officers, former officers, employees, former employees, directors or former directors) pursuant to the terms of any agreements (including employment agreements) or plans (or amendments thereto) under which such Capital Stock was issued; *provided, however,* that the aggregate amount of such repurchases and other acquisitions shall not exceed $1.0 million in any fiscal year, plus up to $500,000 of any unused amount permitted under this *clause (5)* for the immediately preceding year; and

(6)     if no Default or Event of Default shall have occurred and be continuing or would exist after giving effect thereto, payments or distributions to dissenting stockholders of Capital Stock of the Parent pursuant to applicable law, pursuant to or in connection with a consolidation, merger or transfer of assets that complies with the provisions of this Indenture applicable to mergers, consolidations and transfers of all or substantially all of the property and assets of the Parent, the Company or any of their respective Restricted Subsidiaries; and

(7)     the Refinancing Transactions.

For purposes of determining compliance with this *Section 4.10*, in the event that an item meets the criteria of more than one of the categories described in *clauses (1)* through *(6)* above, the Issuers shall, in their sole discretion, classify (or later reclassify) such item in any manner that complies with this covenant. In determining the aggregate amount of Restricted Payments made subsequent to the Issue Date in accordance with *clause (iii)* of *Section 4.10(a)*, amounts expended pursuant to *clauses (1), 2(ii), 3(ii)(a), (4), (5)* and *(6)* above shall be included in such calculation.

Not later than the date of making any Restricted Payment pursuant to *clause (iii)* of *Section 4.10(a),* or *clause (4)* of this *Section 4.10(b)*, the Issuers shall deliver to the Trustee an Officers' Certificate stating that such Restricted Payment complies with this Indenture and setting forth in reasonable detail the basis upon which the required calculations were computed, which calculations may be based upon the Parent's latest available internal monthly or quarterly, as the case may be, financial statements.

SECTION 4.11.    *Repurchase Upon Change of Control.*

(a)     Upon the occurrence of a Change of Control, the Issuers shall make an offer to purchase all outstanding Notes pursuant to the requirements described in *clause (b)* below (the *"Change of Control Offer"*) at a purchase price equal to 101% of the principal amount thereof on the date of purchase plus accrued and unpaid interest, if any, to the date of purchase.

(b)     Within thirty (30) days following the date upon which the Change of Control occurred, the Issuers shall send, by first class mail, postage prepaid, a notice to each record Holder as shown on the register of Holders, with a copy to the Trustee, which notice shall govern

the terms of the Change of Control Offer. The notice to the Holders shall contain all instructions and materials necessary to enable such Holders to tender Notes pursuant to the Change of Control Offer. Such notice shall state:

(1)    that the Change of Control Offer is being made pursuant to this *Section 4.11* and that, to the extent lawful, all Notes tendered and not withdrawn shall be accepted for payment;

(2)    the purchase price (including the amount of accrued interest, if any) and the purchase date (which shall be no earlier than thirty (30) days nor later than sixty (60) days from the date such notice is mailed, other than as may be required by law) (the "*Change of Control Payment Date*");

(3)    that any Note not tendered shall continue to accrue interest;

(4)    that, unless the Issuers default in making payment therefor, any Note accepted for payment pursuant to the Change of Control Offer shall cease to accrue interest after the Change of Control Payment Date;

(5)    that Holders electing to have a Note purchased pursuant to a Change of Control Offer shall be required to surrender the Note, with the form entitled "Option of Holder to Elect Purchase" on the reverse of the Note completed, to the Paying Agent at the address specified in the notice prior to the close of business on the third Business Day prior to the Change of Control Payment Date;

(6)    that Holders shall be entitled to withdraw their election if the Paying Agent receives, not later than five (5) Business Days prior to the Change of Control Payment Date, a telegram, telex, facsimile transmission or letter setting forth the name of the Holder, the principal amount of the Notes the Holder delivered for purchase and a statement that such Holder is withdrawing its election to have such Notes purchased;

(7)    that Holders whose Notes are purchased only in part shall be issued new Notes in a principal amount equal to the unpurchased portion of the Notes surrendered; *provided that* each Note purchased and each new Note issued shall be in an original principal amount of $1,000 or integral multiples thereof; and

(8)    the circumstances and relevant facts regarding such Change of Control.

If any of the Notes subject to the Change of Control Offer is in the form of a Global Note, then the Issuers shall modify such notice to the extent necessary to comply with the procedures of the Depositary applicable to repurchases.

On or before the Change of Control Payment Date, the Issuers shall, to the extent lawful (i) accept for payment Notes or portions thereof properly tendered pursuant to the Change of Control Offer, (ii) deposit with the Paying Agent U.S. Legal Tender sufficient to pay the purchase price plus accrued interest, if any, of all Notes or portions thereof so tendered and (iii) deliver or cause to be delivered to the Trustee the Notes so accepted together with an Officers' Certificate stating the aggregate principal amount of Notes or portions thereof being purchased by the

53

Issuers. The Paying Agent shall promptly mail to the Holders of Notes so tendered the purchase price for such Notes and the Issuers shall promptly issue and the Trustee shall promptly (but in any case not later than five days after the Change of Control Payment Date) authenticate and mail (or cause to be transferred by book entry) to each Holder a new Note equal in principal amount to any unpurchased portion of the Notes surrendered; *provided that* each such new Note shall be in a principal amount of $1,000 or an integral multiple thereof. Any Notes not so accepted shall be promptly mailed by the Issuers to the Holders thereof. For purposes of this *Section 4.11*, the Trustee shall act as the Paying Agent.

Any amounts remaining after the purchase of Notes pursuant to a Change of Control Offer shall be returned by the Trustee to the Issuers.

Neither the Board of Directors of the Company nor the Trustee may waive the Issuers' obligation to offer to purchase the Notes pursuant to this *Section 4.11*.

The Issuers shall not be required to make a Change of Control Offer upon a Change of Control if a third party makes the Change of Control Offer in the manner, at the times and otherwise in compliance with the requirements of this *Section 4.11* and purchases all Notes validly tendered and not withdrawn under such Change of Control Offer.

The Issuers shall comply with the requirements of Rule 14e-1 under the Exchange Act and any other securities laws and regulations thereunder to the extent such laws and regulations are applicable in connection with the repurchase of Notes pursuant to a Change of Control Offer. To the extent the provisions of any securities laws or regulations conflict with the provisions under this *Section 4.11*, the Issuers shall comply with the applicable securities laws and regulations and shall not be deemed to have breached their obligations under this *Section 4.11* by virtue thereof.

SECTION 4.12.    *[Reserved]*.

SECTION 4.13.    *Limitation on Asset Sales*.

The Parent and the Issuers will not, and will not permit any of their respective Restricted Subsidiaries to, consummate an Asset Sale unless:

(1)    the Parent, the Issuers or the applicable Restricted Subsidiary, as the case may be, receives consideration at the time of such Asset Sale at least equal to the Fair Market Value of the assets sold or otherwise disposed of (as determined in good faith by the Company's Board of Directors);

(2)    at least 75% of the consideration received by the Parent, the Issuers or the Restricted Subsidiary, as the case may be, from such Asset Sale shall be in the form of cash or Cash Equivalents and is received at the time of such disposition; *provided* that (a) the amount of any Indebtedness or other liabilities of the Parent, the Issuers or such Restricted Subsidiary (other than Indebtedness or liabilities that are by their terms subordinated to the Notes) that are assumed by the transferee of any such assets so long as the documents governing such liabilities provide that there is no further recourse to the Issuers or any of their Subsidiaries with respect to such liabilities and (b) the Fair Market

Value of any marketable securities, currencies, notes or other obligations received by the Issuers or any such Restricted Subsidiary in exchange for any such assets that are converted into cash or Cash Equivalents within 180 days after the consummation of such Asset Sale shall be deemed to be cash for purposes of this provision; and

(3)    upon the consummation of an Asset Sale, the Parent or the Issuers shall apply, or cause such Restricted Subsidiary to apply, the Net Cash Proceeds relating to such Asset Sale within 360 days of receipt thereof:

(a)    (i) in the case where the property or asset that was the subject of such Asset Sale does not constitute Collateral, to repay Indebtedness secured by a Lien of the type described in *clause (7)*, *(14)* or *(17)* of the definition of the term "Permitted Lien," (ii) in the case where the property or asset that was the subject of such Asset Sale is the property or asset of a Foreign Restricted Subsidiary, to repay Indebtedness of any Foreign Restricted Subsidiary or (iii) a combination of the foregoing *clauses (i)* and *(ii)*;

(b)    to make an investment in properties and assets that replace the properties and assets that were the subject of such Asset Sale or to make a capital expenditure or acquire other long term assets for use in a Related Business, or Capital Stock of a Person engaged, in a Related Business ("*Replacement Assets*");

(c)    a combination of prepayment and investment permitted by the foregoing *clauses (3)(a)* and *(3)(b)*; or

(d)    if applicable, to make a Mandatory Prepayment pursuant to the provisions of Section 3.07.

To the extent that the assets which were the subject of any Asset Sale constitute Collateral, all proceeds thereof shall, to the extent permitted by law, be subject to a perfected Lien in favor of the Trustee, and all Net Cash Proceeds from such an Asset Sale shall be deposited in the Collateral Account.

On the 361st day after an Asset Sale, if not made earlier, (a "*Net Proceeds Offer Trigger Date*"), such aggregate amount of Net Cash Proceeds which have not been applied on or before such Net Proceeds Offer Trigger Date as permitted in *clauses (3)(a)*, *(3)(b)* and *(3)(c)* of the preceding paragraph (after giving effect to reduction for the estimated expenses of such Issuer, the Parent or such Restricted Subsidiary in making the Net Proceeds Offer, as determined in good faith by the Company's Board of Directors, each a "*Net Proceeds Offer Amount*") shall be applied by the Issuers, the Parent or such Restricted Subsidiary to make an offer to purchase (the "*Net Proceeds Offer*") on a date (the "*Net Proceeds Offer Payment Date*") not less than 30 nor more than 45 days following the applicable Net Proceeds Offer Trigger Date, from all Holders on a *pro rata* basis, that amount of Notes equal to the Net Proceeds Offer Amount at a price equal to 100% of the aggregate principal amount of the Notes to be purchased, plus accrued and unpaid interest to the date of purchase; *provided*, *however*, that if at any time any non-cash consideration received by the Issuers, the Parent or any Restricted Subsidiary of the Company or the Parent, as the case may be, in connection with any Asset Sale is converted into or sold or otherwise

disposed of for cash (other than interest received with respect to any such non-cash consideration), then such conversion or disposition shall be deemed to constitute an Asset Sale hereunder on the date of such conversion or disposition, as the case may be, and the Net Cash Proceeds thereof shall be applied in accordance with this covenant.

The Issuers may at their election make a Net Proceeds Offer prior to being obligated to do so and may defer any Net Proceeds Offer until the sum of the aggregate Net Proceeds Offer Amount resulting from one or more Asset Sales that has not been applied pursuant to the immediately preceding paragraph, is equal to or in excess of $5.0 million, in which case the accumulation of such amount shall constitute a Net Proceeds Offer Trigger Date (at which time, the entire unutilized Trigger Amount, and not just the amount in excess of $5.0 million, shall be applied as required pursuant to the immediately preceding paragraph).

To the extent that the aggregate principal amount of Notes tendered pursuant to such Net Proceeds Offer is less than the Net Proceeds Amount (or, in the event the Issuers elect to defer the Net Proceeds Offer pursuant to the immediately preceding paragraph, the Trigger Amount), such deficiency shall be deemed to have been applied and the Issuers and their Restricted Subsidiaries may use such deficiency for general corporate purposes not otherwise prohibited by this Indenture. Upon completion of such Net Proceeds Offer, the Net Proceeds Offer Amount will be reset to zero (or, in the event the Issuers elect to defer the Net Proceeds Offer pursuant to the immediately preceding paragraph, upon completion of such Net Proceeds Offer, the Net Proceeds Amount will be reset to zero).

In the event of the transfer of substantially all (but not all) of the property and assets of the Parent, the Company or the Company's Restricted Subsidiaries as an entity to a Person in a transaction permitted under *Section 5.01*, which transaction does not constitute a Change of Control, the successor corporation shall be deemed to have sold the properties and assets of the Parent, the Company or the Company's Restricted Subsidiaries as an entity not so transferred for purposes of this covenant, and shall comply with the provisions of this *Section 4.13* with respect to such deemed sale as if it constituted an Asset Sale. In addition, the Fair Market Value of such properties and assets of the Company, the Parent or the Company's Restricted Subsidiaries as an entity deemed to be sold shall be deemed to be Net Cash Proceeds for purposes of this covenant.

Notwithstanding anything to the contrary contained in this covenant, the Issuers and their Restricted Subsidiaries will be permitted to consummate an Asset Sale without complying with such paragraphs to the extent that:

(1)     the consideration for such Asset Sale constitutes Replacement Assets; and

(2)     such Asset Sale is for Fair Market Value; *provided* that any consideration not constituting Replacement Assets received by the Issuers or any of their Restricted Subsidiaries in connection with any Asset Sale permitted to be consummated under this paragraph shall constitute Net Cash Proceeds subject to the provisions of the preceding paragraph.

Each notice of a Net Proceeds Offer shall be mailed to the Holders of record as shown on the register of Holders within 25 days following the Net Proceeds Offer Trigger Date, with a

copy to the Trustee, and shall comply with the procedures set forth in this Indenture. Upon receiving notice of the Net Proceeds Offer, Holders may elect to tender their Notes in whole or in part in integral multiples of $1,000 in exchange for cash. To the extent Holders properly tender Notes in an amount exceeding the Net Proceeds Offer Amount, Notes of tendering Holders will be purchased on a *pro rata* basis (based on amounts tendered and with such adjustments as may be reasonably deemed appropriate by the Issuers so that only Notes in denominations of $1,000 or multiples thereof shall be purchased). A Net Proceeds Offer shall remain open for a period of 20 business days or such longer period as may be required by law. If only a portion of a Note is purchased pursuant to a Net Proceeds Offer, a new Note in a principal amount equal to the portion thereof not purchased will be issued in the name of the Holder thereof upon cancellation of the original Note (or appropriate adjustments to the amount and beneficial interests in a Global Note will made). Notes (or portions thereof) purchased pursuant to a Net Proceeds Offer will be cancelled and cannot be reissued.

The Issuers shall comply with the requirements of Rule 14e-1 under the Exchange Act and any other securities laws and regulations thereunder to the extent such laws and regulations are applicable in connection with the repurchase of Notes pursuant to a Net Proceeds Offer. To the extent the provisions of any securities laws or regulations conflict with the provisions under this *Section 4.13*, the Issuers shall comply with the applicable securities laws and regulations and shall not be deemed to have breached their obligations under this *Section 4.13* by virtue thereof.

SECTION 4.14.    *Limitation on Dividend and Other Payment Restrictions Affecting Restricted Subsidiaries.*

The Issuers will not, and will not cause or permit any of their Restricted Subsidiaries to, directly or indirectly, create or otherwise cause or permit to exist or become effective any encumbrance or restriction on the ability of any Restricted Subsidiary of the Issuers to:

(1)    pay dividends or make any other distributions on or in respect of their Capital Stock;

(2)    make loans or advances or to pay any Indebtedness or other obligation owed to the Issuers or any other Restricted Subsidiary of the Issuers; or

(3)    transfer any of their property or assets to the Issuers or any other Restricted Subsidiary of the Issuers,

except for such encumbrances or restrictions existing under or by reason of:

(a)    applicable law;

(b)    this Indenture, the Notes, the Guarantees and the Collateral Agreements;

(c)    in the case of *clause (3)* above, (A) agreements or instruments that restrict in a customary manner the subletting, assignment or transfer of any property or asset that is a lease, license, conveyance or contract or similar property or asset, (B) any transfer of, agreement to transfer, option or right with

57

respect to, or Lien on, any property or assets of the Issuers or any Restricted Subsidiary not otherwise prohibited by this Indenture or (C) provisions arising or agreed to in the ordinary course of business not relating to Indebtedness that do not, individually or in the aggregate, detract from the value of property or assets of the Issuers or any of their Restricted Subsidiaries or the ability of the Issuers or such Restricted Subsidiary, as the case may be, to use such property or assets, in each case in any manner material to the Issuers or any of their Restricted Subsidiaries;

(d)     any agreement or instrument governing Acquired Indebtedness, which encumbrance or restriction is not applicable to any Person, or the properties or assets of any Person, other than the Person or the properties or assets of the Person so acquired;

(e)     agreements or instruments existing on the Issue Date to the extent and in the manner such agreements are in effect on the Issue Date;

(f)     provisions in agreements or instruments that prohibit the payment of dividends or the making of other distributions with respect to any Capital Stock of a Person other than on a pro rata basis;

(g)     restrictions on the transfer of assets subject to any Lien permitted under this Indenture imposed by the holder of such Lien;

(h)     restrictions imposed by any agreement to sell assets or Capital Stock permitted under this Indenture to any Person pending the closing of such sale;

(i)     provisions in joint venture agreements and other similar agreements (in each case relating solely to the respective joint venture or similar entity or the equity interests therein) entered into in the ordinary course of business;

(j)     restrictions contained in the terms of the Purchase Money Indebtedness or Capitalized Lease Obligations not incurred in violation of this Indenture; *provided* that such restrictions relate only to the property financed with such Indebtedness;

(k)     restrictions in other Indebtedness incurred in compliance with *Section 4.08*; *provided* that such restrictions, taken as a whole, will not materially affect the Company's ability to make anticipated principal or interest payments on the Notes (as determined in good faith by senior management or the Board of Directors of the Company);

(l)     restrictions on cash or other deposits imposed by customers under contracts or other arrangements entered into or agreed to in the ordinary course of business;

(m)  restrictions on the ability of any Foreign Restricted Subsidiary to make dividends or other distributions resulting from the operation of covenants contained in documentation governing Indebtedness of such Subsidiary permitted under this Indenture;

(n)  customary non-assignment provisions in leases, licenses and other contracts entered into in the ordinary course of business and consistent with past practices,

(o)  the issuance of Preferred Stock by a Restricted Subsidiary or the payment of dividends thereon in accordance with the terms thereof; *provided* that issuance of such Preferred Stock is permitted pursuant Section 4.08 hereof and the terms of such Preferred Stock do not expressly restrict the ability of a Restricted Subsidiary to pay dividends or make any other distributions on its Capital Stock (other than requirements to pay dividends or make or liquidation preferences on such Preferred Stock prior to paying any dividends or making any other distributions on such other Capital Stock);

(p)  customary provisions restricting subletting or assignment of any lease governing a leasehold interest;

(q)  encumbrances or restrictions contained in Interest Swap Agreements and Currency Agreements permitted from time to time under this Indenture;

(r)  restrictions on cash or other deposits or net worth imposed by customers under contracts entered into in the ordinary course of business; and

(s)  an agreement governing Indebtedness incurred to Refinance the Indebtedness issued, assumed or incurred pursuant to an agreement referred to in *clause (b), (d)* or *(e)* above; provided, however, that the provisions relating to such encumbrance or restriction contained in any such Indebtedness are no less favorable to the Issuers in any material respect as determined by the Board of Directors of the Company in its reasonable and good faith judgment than the provisions relating to such encumbrance or restriction contained in agreements referred to in such *clause (b), (d)* or *(e)*.

Nothing contained in this *Section 4.14* shall prevent the Parent, the Issuers or any of their respective Restricted Subsidiaries from creating, incurring, assuming or suffering to exist any Liens otherwise permitted in *Section 4.16*.

SECTION 4.15.  *Limitation on Issuances and Sales of Capital Stock of Subsidiaries.*

The Parent and the Issuers will not permit or cause any of their respective Restricted Subsidiaries to issue or sell any Capital Stock except:

(1)  to the Parent, the Issuers or a Wholly-Owned Restricted Subsidiary of the Issuers or the Parent;

(2)     issuances of directors' qualifying shares or sales to foreign nationals of shares of Capital Stock of Foreign Restricted Subsidiaries to the extent required by applicable law;

(3)     issuances or sales of shares of Common Stock of Restricted Subsidiaries to the extent required, as determined in good faith by the Board of Directors of the Company, to obtain or maintain any governmental license, privilege or other right that is necessary or useful in connection with the conduct by such Restricted Subsidiary of its business;

(4)     if, immediately after giving effect to such issuance or sale, such Restricted Subsidiary would no longer constitute a Restricted Subsidiary and any Investment in such Person remaining after giving effect to such issuance or sale would have been permitted to be made under *Section 4.10* if made on the date of such issuance or sale; or

(5)     sales of all of the Capital Stock of a Restricted Subsidiary of the Issuers or the Parent in compliance with the provisions of *Section 4.13*.

SECTION 4.16.   *Limitation on Liens.*

The Parent and the Issuers will not, and will not cause or permit any of their respective Restricted Subsidiaries to, directly or indirectly, create, incur, assume or permit or suffer to exist any Liens (other than Permitted Liens) of any kind against or upon any property or assets of the Parent, the Issuers or any of their respective Restricted Subsidiaries whether owned on the Issue Date or acquired after the Issue Date, or any proceeds therefrom, or assign or otherwise convey any right to receive income or profits therefrom.

SECTION 4.17.   *Limitations on Transactions with Affiliates.*

(a)     The Parent and the Issuers will not, and will not permit any of their respective Restricted Subsidiaries to, directly or indirectly, enter into or permit to exist any transaction or series of related transactions (including, without limitation, the purchase, sale, lease or exchange of any property or the rendering of any service) with, or for the benefit of, any of their Affiliates (each an "*Affiliate Transaction*"), other than (x) Affiliate Transactions permitted under paragraph (b) below and (y) Affiliate Transactions on terms that are no less favorable than those that might reasonably have been obtained in a comparable transaction at such time on an arm's-length basis from a Person that is not an Affiliate of the Parent, the Issuers or such Restricted Subsidiary.

All Affiliate Transactions (and each series of related Affiliate Transactions which are similar or part of a common plan) involving aggregate payments or other property with a Fair Market Value in excess of $2.5 million shall be approved by a majority of the disinterested members of the Board of Directors of the Parent or a majority of the disinterested members, if any, of the Board of Directors of that Company or such Restricted Subsidiary (or, the entire Board of Directors, in the event there are no disinterested members of the Board of Directors of that Company or such Restricted Subsidiary), as the case may be, such approval to be evidenced by a Board Resolution stating that such Board of Directors has determined that such transaction complies with the provisions set in this paragraph. If the Parent, the Issuers or any Restricted

60

Subsidiary of the Issuers or the Parent enters into an Affiliate Transaction (or a series of related Affiliate Transactions related to a common plan) that involves an aggregate Fair Market Value of more than $10.0 million, the Parent, the Issuers or such Restricted Subsidiary, as the case may be, shall, prior to the consummation thereof, obtain a favorable opinion as to the fairness of such transaction or series of related transactions to the Parent, the Issuers or the relevant Restricted Subsidiary, as the case may be, from a financial point of view, from an Independent Financial Advisor and file the same with the Trustee.

(b)    The restrictions set forth in the first paragraph of this *Section 4.17* shall not apply to:

(1)    reasonable fees and compensation paid to and indemnity provided on behalf of officers, directors, employees or consultants of the Parent, the Issuers or any Restricted Subsidiary of the Issuers or the Parent as determined in good faith by the Parent's Board of Directors or senior management;

(2)    transactions exclusively between or among the Parent, the Issuers and any of their respective Restricted Subsidiaries or exclusively between or among such Restricted Subsidiaries;

(3)    the Refinancing Transactions or any agreement as in effect on the Issue Date (including any transaction expressly provided for therein) and any amendment thereto or any replacement agreement thereto so long as (i) any such amendment or replacement agreement is not more disadvantageous to the Holders, in any material respect, than the original agreement as in effect on the Issue Date, *provided* that any such amendment or replacement agreement shall be approved by a majority of the disinterested members of the Board of Directors of the Parent, the Company or such Restricted Subsidiary, as the case may be, such approval to be evidenced by a Board Resolution stating that such Board of Directors has determined that the terms of such amendment or replacement agreement comply with the provisions set forth in *clause (a)* of this *Section 4.17* and *Section 4.10* and the terms of this *clause (3)*;

(4)    Restricted Payments permitted by this Indenture;

(5)    any employment, stock option, stock repurchase, employee benefit compensation, business expense reimbursement, severance, termination or other employment related agreements, arrangements or plans entered into by the Parent, the Issuers or any of their respective Restricted Subsidiaries in the ordinary course of business;

(6)    issuance of Qualified Capital Stock of the Parent and the granting of registration rights with respect to such Qualified Capital Stock;

(7)    any transaction on arm's-length terms with a non-Affiliate that becomes an Affiliate as a result of such transaction; and

(8)    arrangements with directors or officers of the Parent, the Company or any Restricted Subsidiary existing on the Issue Date and in effect on the Issue Date or as

modified thereafter; *provided* that any such modification shall be approved by a majority of the disinterested members of the Board of Directors of the Parent, the Company or such Restricted Subsidiary, as the case may be, such approval to be evidenced by a Board Resolution stating that such Board of Directors has determined that the terms of such modification comply with the provisions set forth in the first paragraph of this *Section 4.17.*

SECTION 4.18.   *Additional Subsidiary Guarantees.*

If the Parent, either of the Issuers or any of their respective Restricted Subsidiaries transfers or causes to be transferred, in one transaction or a series of related transactions, any property to any Person that is not a Guarantor but becomes a Domestic Restricted Subsidiary as a result of such transaction, or if the Parent, the Issuers or any of their Restricted Subsidiaries shall organize, acquire or otherwise invest in another Person that is not a Guarantor but becomes a Domestic Restricted Subsidiary as a result of such transaction, then such transferee or acquired or other Subsidiary shall:

(1)   execute and deliver to the Trustee a supplemental indenture in form reasonably satisfactory to the Trustee pursuant to which such Domestic Restricted Subsidiary shall unconditionally guarantee on a senior secured basis all of the Issuers' obligations under the Notes and this Indenture on the terms set forth herein;

(2)   (a) execute and deliver to the Trustee such amendments to the Collateral Agreements as the Trustee reasonably determines to be necessary or advisable in order to grant to the Trustee, for the benefit of the Holders, a perfected security interest in the Capital Stock of such new Domestic Restricted Subsidiary and any debt securities of such new Domestic Restricted Subsidiary, subject to Permitted Liens, which are owned by the Parent, the Issuers or such new Domestic Restricted Subsidiary and required to be pledged pursuant to the Security Agreement or the Pledge Agreement, (b) deliver to the Trustee any certificates representing such Capital Stock and debt securities, together with (i) in the case of such Capital Stock, undated stock powers or instruments of transfer, as applicable, endorsed in blank, and (ii) in the case of such debt securities, endorsed in blank, in each case executed and delivered by an Officer of such Issuer or such Subsidiary, as the case may be;

(3)   cause such new Domestic Restricted Subsidiary to take such other actions necessary or as the Trustee reasonably determines to be advisable to grant to the Trustee for the benefit of the Holders a perfected security interest in the assets of such new Domestic Restricted Subsidiary to the extent required pursuant to the terms of the Collateral Agreements, subject to the Permitted Liens, including the filing of Uniform Commercial Code financing statements or other applicable collateral filing documents in such jurisdictions as may be required by the Security Agreement or by law or as may be reasonably requested by the Trustee;

(4)   take such further action and execute and deliver such other documents specified in this Indenture to effectuate the foregoing; and

(5)    deliver to the Trustee an Opinion of Counsel that such supplemental indenture and any other documents required to be delivered have been duly authorized, executed and delivered by such new Domestic Restricted Subsidiary and constitutes a legal, valid, binding and enforceable obligation of such new Domestic Restricted Subsidiary and such other opinions regarding the perfection of such Liens in the Collateral of or consisting of the Capital Stock of such new Domestic Restricted Subsidiary as provided for in this Indenture.

Thereafter, such new Domestic Restricted Subsidiary shall be a Guarantor for all purposes of this Indenture.

SECTION 4.19.   *Impairment of Security Interest.*

None of the Parent, the Issuers or any of their Subsidiaries will take or knowingly omit to take any action which would materially impair the Liens in favor of the Trustee and the Holders, with respect to any material portion of the Collateral. None of the Parent, the Issuers nor any of their Domestic Restricted Subsidiaries shall grant to any Person (other than the Trustee), or permit any Person (other than the Trustee) to retain, any interest whatsoever in the Collateral other than Permitted Liens. None of the Parent, the Issuers or any of their respective Restricted Subsidiaries will enter into any agreement that requires the proceeds received from any sale of Collateral to be applied to repay, redeem, defease or otherwise acquire or retire any Indebtedness of any Person, other than as permitted by this Indenture, the Notes and the Collateral Agreements. The Parent and the Issuers shall, and shall cause each Guarantor to, at their sole cost and expense, execute and deliver all such agreements and instruments as the Trustee shall reasonably request to more fully or accurately describe the property intended to be Collateral or the obligations intended to be secured by the Collateral Agreements. The Parent and the Issuers shall, and shall cause each of their respective Restricted Subsidiaries to, at their sole cost and expense, file any such notice filings or other agreements or instruments as may be required under applicable law to perfect the Liens created by the Collateral Agreements, subject to Permitted Liens.

SECTION 4.20.   *Real Estate Mortgages and Recordings.*

With respect to any fee interest (as distinguished from any leasehold or other interest) in any real property (individually and collectively, the *"Premises"*) (A) owned by the Parent, the Issuers or any of their respective Domestic Restricted Subsidiaries on the Issue Date or (B) acquired by the Parent, the Issuers or any of their respective Domestic Restricted Subsidiaries after the Issue Date and, in each case, having (i) a purchase price or (ii) a Fair Market Value, of greater than $750,000:

(1)    the Issuers shall deliver to the Trustee, as mortgagee, a fully-executed counterpart of a Mortgage, duly executed by the Parent, the Issuers or the applicable Domestic Restricted Subsidiary, together with evidence of the completion (or satisfactory arrangements for the completion) of all recordings and filings of such Mortgage and fixture filings as may be necessary or desirable, to create a valid, perfected Lien, against the interest purported to be covered thereby;

(2)     to the extent practicable, the Trustee shall have received a mortgagee's title insurance policy in favor of the Trustee, as mortgagee, in an amount equal to 125% of the Fair Market Value of the property purported to be covered by such Mortgage and in form and substance and issued by a nationally-recognized title insurance company, with respect to the property purported to be covered by such Mortgage, insuring that the Lien created by such Mortgage constitutes a valid Lien on such interest accompanied by evidence of the payment in full of all premiums thereon; and

(3)     the Issuers shall deliver to the Trustee, with respect to each Premises that is the subject of such Mortgage, such other items that are required to be delivered pursuant to this Indenture.

SECTION 4.21.   *Conduct of Business.*

The Parent, the Company and their respective Restricted Subsidiaries will not engage in any businesses which are not the same, similar, ancillary or reasonably related to the businesses in which the Parent, the Issuers and their respective Restricted Subsidiaries are engaged on the Issue Date.

SECTION 4.22.   *Activities of MFFC.*

MFFC shall not hold any assets, become liable for any obligations, engage in any business activity or hold any Subsidiary; *provided* that MFFC shall be a co-issuer of the Notes pursuant to the terms of this Indenture or of any other similar debt securities and may engage in any activities directly related or necessary in connection therewith.

SECTION 4.23.   *Reports to Holders.*

(a)     The Company shall furnish to the Holders of the Notes:

(1)     within 20 days of the time periods specified in the SEC's rules and regulations, all annual financial information that would be required to be contained in a filing with the SEC on Form 10-K (including Rule 3-10 of Regulation S-X but excluding Rule 3-16 of Regulation S-X) and, within 5 days of the time periods specified in the SEC's rules and regulations, all quarterly financial information (which need not be reviewed by an independent registered public accounting firm, but shall be certified by a responsible officer of the Parent as being prepared in accordance with then applicable GAAP) that would be required to be contained in a filing with the SEC on Form 10-Q (including Rule 3-10 of Regulation S-X but excluding Rule 3-16 of Regulation S-X), in each case, if the Parent were required to file such Forms, including footnotes, a "Management's Discussion and Analysis of Financial Condition and Results of Operations" ("*MD&A*") and, with respect to the annual information only, a report thereon by the Parent's independent registered public accounting firm, except that none of such reports need include any certifications required under the Sarbanes-Oxley Act of 2002 or any rules of the SEC adopted pursuant thereto; and

(2)     the information that would be required to be contained in all current reports that would be required to be filed with the SEC on Form 8-K if the Parent or the

Company were required to file such reports (including any information that would be required to be filed as exhibits to a Form 8-K, except that the report need not include any certifications required under the Sarbanes-Oxley Act of 2002 or any rules of the SEC adopted pursuant thereto), in each case within the time period specified in the rules of the SEC adopted pursuant thereto.

(b)    In no event shall any financial information required to be furnished pursuant to *Section 4.23(a)(1)* be required to include any information required by, or to be prepared or approved in accordance with, or otherwise be subject to, any provision of Section 404 of the Sarbanes-Oxley Act of 2002 or any rules, regulations, or accounting guidance adopted pursuant to that section. Sections 314(a)(1), 314(a)(2) and 314(a)(3) of the Trust Indenture Act are deemed to be incorporated into this Indenture to the extent required by the Trust Indenture Act.

(c)    The Company agrees to deliver the financial information required by *Section 4.23(a)* by electronic transmission directly to any Holder and any owner of a beneficial interest in any Note that requests such delivery (who may, subject to this *Section 4.23*, transmit them to any prospective investor). The Company also agrees to make such reports available on a website to which such Holders and beneficial owners shall have access. The Company shall not be required to provide access to such website to any other Person who requests it unless such Person certifies to order to obtain access to such website that such Person, is engaged in the business of acquiring investments such as the Notes, is a prospective purchaser of Notes and not engaged in a Competitive Business (as defined below). Before displaying any of such reports, the website described in this subsection may also require the user to agree to be bound by an electronic agreement containing substantially the same terms as those set forth in clauses (1), (2) and (3) of *Section 4.23(d)* by electronically confirming that he or she has read said provisions and agrees to be bound by them.

(d)    Each Holder and each other Person (each such Holder or other Person, a "*Recipient*") who at any time receives any non-public information about the Parent, the Company and their respective businesses and finances within the meaning of applicable securities laws communicated in any report, described in *Section 4.23(a)* (collectively, the "*Non-Public Information*"), by accepting any such Information, shall be deemed to have acknowledged to and agreed with the Company and the Parent as follows:

(1)    The Recipient shall not use Non-Public Information if that use or communication would constitute a violation of applicable securities laws or regulations (including but not limited to laws or regulations prohibiting insider trading or tipping) and shall not communicate it to any other Person not bound by, or which has not otherwise agreed to abide by, the terms of this *clause (1)*, unless such information (i) is or becomes publicly available other than as a result of a disclosure known to the Recipient or is in violation of an agreement with or obligation to the Company and/or the Parent, (ii) was within the Recipient's possession prior to it being furnished to the Recipient by or on behalf of the Company, (iii) is or becomes available to the Recipient on a non-confidential basis from a source (other than the Company or the Parent) which is not known by the Recipient to be prohibited from disclosing such information to the Recipient by a legal, contractual or fiduciary obligation to the Company and/or the Parent, (iv) is independently developed by the Recipient without the benefit of any Non-

65

Public Information (information in clauses (i) – (iv) being "*Non-Confidential Information*") or (v) unless such disclosure is required by subpoena or the Parent, as the case may be or other legal process of a tribunal, in which case the Recipient shall give the Company and the Parent as much advance notice as is practicable before making disclosure so as to provide the Company and/or the Parent with an opportunity to seek a protective order or to take other action to protect the confidentiality of the Non-Public Information.

(2)     The Recipient represents and agrees that it is (i) a Holder of Notes, (ii) a prospective purchaser of Notes and in the business of buying securities such as the Notes and (iii) is not a Person engaged in the business of operating fitness centers or any business activity reasonably related thereto (a "*Competitive Business*").  Neither the Company nor the Parent shall have any obligation to provide any Non-Public Information to any Person engaged in a Competitive Business.

(3)     The Recipient shall not disclose any Non-Public Information to any Person that engaged in a Competitive Business unless such disclosure is required by subpoena or other legal process of a tribunal, in which case the Recipient shall give the Parent and the Company as much advance notice as is practicable before making disclosure so as to provide the Company and/or the Parent with an opportunity to seek a protective order or to take other action to protect the confidentiality of the Non-Public Information.

(e)     Any document delivered by the Company and/or the Parent pursuant to *Section 4.23* (in either paper or electronic form) shall be deemed to contain Non-Public Information and be treated as confidential for purposes of this *Section 4.23* unless the same is Non-Confidential Information.

(f)     No later than November 30, 2008, the Company shall host a conference call with Holders, any owner of a beneficial interest in any Note and any prospective purchaser of Notes to discuss the financial information of the Company and the Parent then available with respect to the quarter ended September 30, 2008.  With respect to each quarter thereafter, the Company shall host quarterly conference calls with such participants no later than 10 days after furnishing the quarterly financial information described in *Section 4.23*.  Beginning in 2009, the Company shall host a conference call with such participants no later than 10 days after furnishing the yearly information described in *Section 4.23*.  The Company may also require any participant in such calls to agree to be bound by an electronic or other agreement containing substantially the same terms as those set forth in *clauses (1), (2)* and *(3)* of *Section 4.23(d)*, and any other terms which subsequent to the date hereof may become required by applicable law, by electronically confirming that he or she has read such provisions and agrees to be bound by them.

(g)     Notwithstanding the requirements of this *Section 4.23*, the Company or the Parent, as the case may be, shall be deemed to have furnished the information to the Holders of the Notes as required by this *Section 4.23* if it has filed such information with the SEC and such information is publicly available.

SECTION 4.24.   *Payments for Consent.*

The Parent and the Issuers will not, and will not permit any of their respective Restricted Subsidiaries to, directly or indirectly, pay or cause to be paid any consideration to or for the benefit of any Holder for or as an inducement to any consent, waiver or amendment of any of the terms or provisions of this Indenture, the Notes or any Collateral Agreement unless such consideration is offered to be paid or is paid to all Holders that consent, waive or agree to amend in the time frame set forth in the solicitation documents relating to such consent, waiver or agreement.

## ARTICLE FIVE
## SUCCESSOR CORPORATION

SECTION 5.01.   *Merger, Consolidation and Sale of Assets.*

(a)      Neither Issuer will, in a single transaction or series of related transactions, consolidate or merge with or into any Person, or sell, assign, transfer, lease, convey or otherwise dispose of all or substantially all of its properties and assets to any Person or group of affiliated Persons, or permit any of its Restricted Subsidiaries to enter into any such transaction or series of related transactions if such transaction or series of related transactions, in the aggregate, would result in a sale, assignment, conveyance, transfer, lease or disposition of all or substantially all of the properties and assets of the Company and its Restricted Subsidiaries on a Consolidated basis to any other Person or group of affiliated Persons, unless at the time and after giving effect thereto:

(1)      either:

(a)      the Company shall be the surviving or continuing entity; or

(b)      the Person (if other than the Company) formed by such consolidation or into which an Issuer is merged or the Person which acquires by sale, assignment, transfer, lease, conveyance or other disposition the properties and assets of the Company or of the Company's Restricted Subsidiaries substantially as an entirety (the "*Surviving Entity*"):

(x)      shall be a limited liability company or a corporation organized and validly existing under the laws of the United States or any State thereof or the District of Columbia; and

(y)      shall expressly assume, (i) by supplemental indenture (in form and substance satisfactory to the Trustee), executed and delivered to the Trustee, the due and punctual payment of the principal of, and premium, if any, and interest on all of the Notes and the performance of every covenant of the Notes and this Indenture on the part of the Issuers to be performed or observed thereunder and (ii) by amendment, supplement or other instrument (in form and substance satisfactory to the Trustee), executed and delivered to the Trustee, all obligations of the Issuers under the Collateral Agreements and in connection therewith shall cause such

67

instruments to be filed and recorded in such jurisdictions and take such other actions as may be required by applicable law to perfect or continue the perfection of the Lien created under the Collateral Agreements on the Collateral owned by or transferred to the Surviving Entity;

(2)    except in the case of a consolidation or merger of an Issuer with or into a Wholly-Owned Subsidiary of the Company, or a sale, assignment, transfer, lease, conveyance or other disposition of all or substantially all of the assets of the Company to a Wholly-Owned Subsidiary of the Company, immediately after giving effect to such transaction and the assumption contemplated by *clause (1)(b)(y)* above (including giving effect to any Indebtedness (including Acquired Indebtedness) incurred or anticipated to be incurred in connection with or in respect of such transaction), the Company or such Surviving Entity, as the case may be, (a) shall have a Consolidated Net Worth at least equal to the Consolidated Net Worth of the Company immediately prior to such transaction and (b) shall be able to incur at least $1.00 of additional Indebtedness (other than Permitted Indebtedness) in compliance with *Section 4.08*;

(3)    except in the case of a consolidation or merger of the Issuers with or into a Wholly-Owned Subsidiary of the Company, or a sale, assignment, transfer, lease, conveyance or other disposition of all or substantially all of the assets of the Company to a Wholly-Owned Subsidiary of the Company, immediately after giving effect to such transaction and the assumption contemplated by *clause (1)(b)(y)* above (including, without limitation, giving effect to any Indebtedness (including Acquired Indebtedness) incurred or anticipated to be incurred and any Lien granted in connection with or in respect of the transaction), no Default or Event of Default shall have occurred or be continuing; and

(4)    the Issuers or the Surviving Entity shall have delivered to the Trustee an Officers' Certificate and an Opinion of Counsel, each stating that such consolidation, merger, sale, assignment, transfer, lease, conveyance or other disposition and, if a supplemental indenture is required in connection with such transaction, such supplemental indenture comply with the applicable provisions of this Indenture and that all conditions precedent in this Indenture relating to such transaction have been satisfied.

For purposes of the foregoing, the transfer (by lease, assignment, sale or otherwise, in a single transaction or series of transactions) of all or substantially all of the properties or assets of one or more Restricted Subsidiaries of the Company, or the Capital Stock of which constitutes all or substantially all of the properties and assets of the Company, shall be deemed to be the transfer of all or substantially all of the properties and assets of the Company.

(b)    The Parent will not, in a single transaction or series of related transactions, consolidate or merge with or into any Person, or sell, assign, transfer, lease, convey or otherwise dispose of all or substantially all of the Parent's assets in a transaction or series of related transactions to any Person or group of affiliated Persons unless at the time and after giving affect thereto:

68

(1)   either:

(a)   the Parent shall be the surviving or continuing entity; or

(b)   the Person (if other than the Company) formed by such consolidation or into which an Issuer is merged or the Person which acquires by sale, assignment, transfer, lease, conveyance or other disposition the properties and assets of the Parent:

(x)   shall be a limited liability company or a corporation organized and validly existing under the laws of the United States or any State thereof or the District of Columbia; and

(y)   shall expressly guarantee, (i) by supplemental indenture (in form and substance satisfactory to the Trustee), executed and delivered to the Trustee, the due and punctual payment of the principal of, and premium, if any, and interest on all of the Notes and the performance of every covenant of the Notes and this Indenture on the part of the Issuers to be performed or observed thereunder and (ii) by amendment, supplement or other instrument (in form and substance satisfactory to the Trustee), executed and delivered to the Trustee, all obligations of the Issuers under the Collateral Agreements and in connection therewith shall cause such instruments to be filed and recorded in such jurisdictions and take such other actions as may be required by applicable law to perfect or continue the perfection of the Lien created under the Collateral Agreements on the Collateral owned by or transferred to the surviving entity;

(2)   except in the case of a consolidation or merger of the Parent with or into the Company, or a sale, assignment, transfer, lease, conveyance or other disposition of all or substantially all of the assets of the Parent to the Company or a Wholly-Owned Subsidiary of the Company, immediately after giving effect to such transaction and the assumption contemplated by clause (1)(b)(y) above (including, without limitation, giving effect to any Indebtedness (including Acquired Indebtedness) incurred or anticipated to be incurred and any Lien granted in connection with or in respect of the transaction), no Default or Event of Default shall have occurred or be continuing; and

(3)   the Parent or the surviving entity shall have delivered to the Trustee an Officers' Certificate and an Opinion of Counsel, each stating that such consolidation, merger, sale, assignment, transfer, lease, conveyance or other disposition and, if a supplemental indenture is required in connection with such transaction, such supplemental indenture comply with the applicable provisions of this Indenture and that all conditions precedent in this Indenture relating to such transaction have been satisfied.

SECTION 5.02.   *Successor Entity Substituted.*

Upon any consolidation, combination or merger of an Issuer or any transfer of all or substantially all of the assets of the Company in accordance with the foregoing, in which such Issuer is not the continuing corporation, the Surviving Entity shall succeed to, and be substituted

for, and may exercise every right and power of, such Issuer under this Indenture and the Notes with the same effect as if such Surviving Entity had been named as such.  Upon such substitution the Issuer and any Guarantors that remain Subsidiaries of the Issuer shall be released from this Indenture and the Notes and each Issuer, if surviving, shall be automatically discharged from all of its obligations under this Indenture and the Notes.

### ARTICLE SIX
### DEFAULT AND REMEDIES

SECTION 6.01.   *Events of Default.*

The following events are defined as *"Events of Default"*:

(1)     the failure to pay the interest on any Notes or any other amount (other than principal for the Notes) when the same becomes due and payable and the default continues for a period of thirty (30) days;

(2)     the failure to pay the principal on any Notes, when such principal becomes due and payable, at maturity, upon Mandatory Prepayment, redemption or otherwise (including the failure to make a payment to purchase Notes tendered pursuant to a Change of Control Offer or a Net Proceeds Offer);

(3)     a default in the observance or performance of any other covenant or agreement contained in this Indenture (other than the payment of the principal of, or premium, if any, or interest on any Note) or any Collateral Agreement which default continues for a period of thirty (30) days after the Issuers receive written notice specifying the default (and demanding that such default be remedied and stating that such notice is a *"Notice of Default"*) from the Trustee or the Holders of at least 25% of the outstanding principal amount of the Notes (except in the case of a default with respect to *Section 5.01*, which will constitute an Event of Default with such notice requirement but without such passage of time requirement);

(4)     the failure to pay at final maturity (giving effect to any applicable grace periods and any extensions thereof) the principal amount of any Indebtedness of the Parent, either Issuer or any Restricted Subsidiary of the Company or the Parent or the acceleration of the final stated maturity of any such Indebtedness (which acceleration is not rescinded, annulled or otherwise cured within twenty (20) days of receipt by the Parent, such Issuer or such Restricted Subsidiary of notice of any such acceleration) if the aggregate principal amount of such Indebtedness, together with the principal amount of any other such Indebtedness in default for failure to pay principal at final maturity or which has been accelerated (in each case with respect to which the 20-day period described above has elapsed), aggregates $5.0 million or more at any time;

(5)     one or more judgments in an aggregate amount in excess of $7.5 million (net of any amounts that a reputable and creditworthy insurance company has acknowledged liability for in writing) shall have been rendered against the Parent, either Issuer or any Restricted Subsidiary of the Company or the Parent and such judgments

remain undischarged, unpaid or unstayed for a period of sixty (60) consecutive days after such judgment or judgments become final and non-appealable;

(6)    the Parent, either Issuer or any Significant Subsidiary of the Company or the Parent (A) commences a voluntary case or proceeding under any Bankruptcy Code or any other applicable federal, state or foreign bankruptcy, insolvency or similar law with respect to itself, (B) consents to the entry of an order for relief against it in an involuntary case under any Bankruptcy Code, (C) consents to the appointment of a Custodian of it or for substantially all of its property, (D) makes a general assignment for the benefit of its creditors; or (F) takes any corporate action to authorize or effect any of the foregoing;

(7)    a court of competent jurisdiction enters an order or decree that (A) is an order for relief in respect of the Parent, either Issuer or any Significant Subsidiary of the Company or the Parent in an involuntary case under the Bankruptcy Code or any other applicable federal, state or foreign bankruptcy, insolvency or similar law, (B) appoints a Custodian of the Company or any Significant Subsidiary of the Company or the Parent or for substantially all of its property or (C) orders the winding-up or liquidation of its affairs; and such order or decree shall remain unstayed and in effect for a period of sixty (60) consecutive days;

(8)    except with respect to a Collateral Agreement for which all or substantially all of the assets comprising the Collateral thereunder have been transferred or sold or the Lien thereon released as permitted under this Indenture, any Collateral Agreement at any time for any reason shall cease to be in full force and effect, or shall cease to be effective in all material respects to grant the Trustee the Liens with the priority purported to be created thereby on a material portion of the Collateral thereunder, subject to Permitted Liens and no other Liens except as expressly permitted by the applicable Collateral Agreement, in each case for thirty (30) days after the Issuers receive written notice thereof specifying such occurrence from the Trustee or the Holders of at least 25% of the outstanding principal amount of the Notes (with a copy to the Trustee);

(9)    failure of the Parent, either Issuer or a Restricted Subsidiary to make, when due, any transfer, delivery, pledge, assignment or grant of Collateral required to be made by it and such failure continues unremedied for ten Business Days after notice of such failure is given to the Company by the Trustee or to the Company and the Trustee by the Holders of at least 25% in aggregate principal amount of the outstanding Notes;

(10)   the Parent, either Issuer or any Guarantor that is a Significant Subsidiary of the Company or the Parent shall assert in writing that any Lien created under any Collateral Agreement is invalid or unenforceable; or

(11)   any Guarantee of a Guarantor that is the Parent or a Significant Subsidiary of the Company or the Parent ceases to be in full force and effect or any Guarantee of a Guarantor that is the Parent or a Significant Subsidiary is declared to be null and void and unenforceable or any Guarantee of a Guarantor that is the Parent or a Significant Subsidiary of the Company or the Parent is found to be invalid or the Parent or any Guarantor that is a Significant Subsidiary of the Company or the Parent denies its liability

71

under its Guarantee (other than by reason of the release of such Guarantor in accordance with the terms of this Indenture).

SECTION 6.02.  *Acceleration.*

(a)      If an Event of Default (other than an Event of Default specified in *Section 6.01(6)* or *(7)* above with respect to the Issuers) shall occur and be continuing and has not been waived, the Trustee or the Holders of at least 25% in principal amount of outstanding Notes may declare the principal of and premium, if any, accrued interest, on all the Notes to be due and payable by notice in writing to the Issuers and the Trustee specifying the respective Event of Default and that it is a "notice of acceleration" (the "*Acceleration Notice*"), and the same shall become immediately due and payable.

(b)      If an Event of Default specified in *Section 6.01(6)* or *(7)* above with respect to the Issuers occurs and is continuing, then all unpaid principal of, and premium, if any, and accrued and unpaid interest, on all of the outstanding Notes shall ipso facto become and be immediately due and payable without any declaration or other act on the part of the Trustee or any Holder.

(c)      At any time after such a declaration of acceleration has been made and before a judgment or decree for payment of the money due has been obtained by the Trustee as hereinafter provided in this Article, the Holders of at least a majority in aggregate principal amount of the outstanding Notes, by written notice to the Issuers and the Trustee, may rescind and annul such declaration and its consequences if:

(1)      the Issuers have paid or deposited with the Trustee a sum sufficient to pay:

(i)      the principal of any Notes which have become due otherwise than by such declaration of acceleration (including any Notes required to have been paid on a Redemption Date or a Mandatory Prepayment Date, or purchased pursuant to a Change of Control Payment Date or a Net Proceeds Offer Payment Date pursuant to a Change of Control Offer or a Net Proceeds Offer, as applicable, made by the Company) and, to the extent that payment of such interest is lawful, any interest thereon at the rate provided therefor in the Notes;

(ii)      to the extent that payment of such interest is lawful, interest upon overdue interest at the rate provided therefor in *Section 4.01* and the Notes, and all sums paid or advanced by the Trustee hereunder and the reasonable compensation, expenses, disbursements and advances of the Trustee, its agents and counsel and any other amount due under *Section 7.07*; and

(2)      all Events of Default, other than the non-payment of the principal of or interest on, the Notes which have become due solely by such declaration of acceleration, have been cured or waived as provided in *Section 6.04*.

No such rescission shall affect any subsequent default or impair any right consequent thereon.

SECTION 6.03.    *Other Remedies*.

If an Event of Default occurs and is continuing, the Trustee may pursue any available remedy by proceeding at law or in equity to collect the payment of principal of, premium, if any, or interest on the Notes or to enforce the performance of any provision of the Notes, this Indenture or any Collateral Agreement.

The Trustee may maintain a proceeding even if it does not possess any of the Notes or does not produce any of them in the proceeding. A delay or omission by the Trustee or any Holder in exercising any right or remedy accruing upon an Event of Default shall not impair the right or remedy or constitute a waiver of or acquiescence in the Event of Default. No remedy is exclusive of any other remedy. All available remedies are cumulative to the extent permitted by law.

SECTION 6.04.    *Waiver of Past Defaults*.

Subject to *Sections 2.10*, *6.07* and *9.02*, the Holders of a majority in principal amount of the Notes may waive any existing Default or Event of Default and its consequences, except (other than as provided in *Section 6.02(c)*) a default in the payment of the principal of or premium, if any, or interest on any Notes. When a Default or Event of Default is waived, it is cured and ceases to exist.

SECTION 6.05.    *Control by Majority*.

Subject to *Section 2.09*, the Holders of a majority in principal amount of the outstanding Notes may direct the time, method and place of conducting any proceeding for exercising any remedy available to the Trustee or exercising any trust or power conferred on the Trustee, including, without limitation, any remedies provided for in *Section 6.03*. Subject to *Section 7.01* and *7.02(l)*, however, the Trustee may refuse to follow any direction (which direction, if sent to the Trustee, shall be in writing) that the Trustee reasonably believes conflicts with any applicable law or this Indenture, that the Trustee determines may be unduly prejudicial to the rights of another Holder, or that may subject the Trustee to personal liability; *provided that* the Trustee may take any other action deemed proper by the Trustee which is not inconsistent with such direction (which direction, if sent to the Trustee, shall be in writing).

SECTION 6.06.    *Limitation on Suits*.

A Holder may not pursue any remedy with respect to this Indenture or the Notes unless:

(1)    the Holder gives to the Trustee written notice of a continuing Event of Default;

(2)    subject to *Section 2.10*, Holders of at least 25% in principal amount of the outstanding Notes make a written request to the Trustee to institute proceedings in respect of that Event of Default;

(3)    such Holders offer to the Trustee indemnity reasonably satisfactory to the Trustee against any loss, liability or expense to be incurred in compliance with such request;

(4)    the Trustee does not comply with the request within sixty (60) days after receipt of the request and the offer of indemnity; and

(5)    during such sixty (60) day period the Holders of a majority in principal amount of the outstanding Notes do not give the Trustee a written direction which, in the opinion of the Trustee, is inconsistent with the request.

A Holder may not use this Indenture to prejudice the rights of another Holder or to obtain a preference or priority over such other Holder.

SECTION 6.07.    *Rights of Holders to Receive Payment.*

Notwithstanding any other provision of this Indenture, the right of any Holder to receive payment of principal of, premium, if any, and interest on a Note, on or after the respective due dates expressed in such Note, or to bring suit for the enforcement of any such payment on or after such respective dates, shall not be impaired or affected without the consent of such Holder, except that no Holder shall have the right to institute any such suit, if and to the extent that the institution or prosecution thereof or the entry of judgment therein would under applicable law result in the surrender, impairment, waiver, or loss of the Liens of the Collateral Agreements upon any property or assets subject to the Liens.

SECTION 6.08.    *Collection Suit by Trustee.*

If an Event of Default specified in *Section 6.01(1)* or *(2)* occurs and is continuing, the Trustee may recover judgment (i) in its own name and (ii) in the case of the Trustee, as trustee of an express trust or on behalf of each of the Secured Parties, in each case against the Issuers or any other obligor on the Notes for the whole amount of principal of, premium, if any, and accrued interest remaining unpaid on, the Notes, together with interest on overdue principal and, to the extent that payment of such interest is lawful, interest on overdue installments of interest at the rate set forth in *Section 4.01* and such further amount as shall be sufficient to cover the costs and expenses of collection, including the reasonable compensation, expenses, disbursements and advances of the Trustee and its respective agents and counsel and any other amounts due the Trustee under the Collateral Agreements and *Section 7.07.*

SECTION 6.09.    *Trustee May File Proofs of Claim.*

The Trustee is authorized to file such proofs of claim and other papers or documents as may be necessary or advisable in order to have the claims of the Trustee (including any claim for the reasonable compensation, expenses, disbursements and advances of the Trustee, its agents and counsel) and the Holders allowed in any judicial proceedings relating to the Issuers or any other obligor upon the Notes, any of their respective creditors or any of their respective property and shall be entitled and empowered to collect and receive any monies or other property payable or deliverable on any such claims and to distribute the same, and any Custodian in any such judicial proceedings is hereby authorized by each Holder to make such payments to the Trustee

and, in the event that the Trustee shall consent to the making of such payments directly to the Holders, to pay to the Trustee any amount due to it for the reasonable compensation, expenses, taxes, disbursements and advances of the Trustee, its agents and counsel, and any other amounts due the Trustee under the Collateral Agreements and *Section 7.07*. The Issuers' payment obligations under this *Section 6.09* shall be secured in accordance with the provisions of *Section 7.07*. Nothing herein contained shall be deemed to authorize the Trustee to authorize or consent to or accept or adopt on behalf of any Holder any plan of reorganization, arrangement, adjustment or composition affecting the Notes or the rights of any Holder thereof, or to authorize the Trustee to vote in respect of the claim of any Holder in any such proceeding.

SECTION 6.10.   *Priorities.*

If the Trustee collects any money or property pursuant to this *Article Six*, it shall pay out the money in the following order:

First:  to the Trustee, the Paying Agent and the Registrar for amounts due under *Section 7.07* (including payment of all compensation expense, all liabilities incurred and all advances made by the Trustee and the costs and expenses of collection);

Second:  if the Holders are forced to proceed against the Issuers directly without the Trustee, to Holders for their collection costs;

Third:  to Holders for amounts due and unpaid on the Notes for principal, premium, if any, and interest, ratably, without preference or priority of any kind, according to the amounts due and payable on the Notes for principal, premium, if any, and interest, respectively; and

Fourth:  to the Issuers or any other obligor on the Notes, as their interests may appear, or as a court of competent jurisdiction may direct.

The Trustee, upon prior written notice to the Issuers, may fix a record date and payment date for any payment to Holders pursuant to this *Section 6.10.*

SECTION 6.11.   *Undertaking for Costs.*

All parties to this Indenture agree, and each Holder by its acceptance of its Note shall be deemed to have agreed, that in any suit for the enforcement of any right or remedy under this Indenture or in any suit against the Trustee for any action taken or omitted by it as Trustee, a court in its discretion may require the filing by any party litigant in the suit of an undertaking to pay the costs of the suit, and the court in its discretion may assess reasonable costs, including reasonable attorneys' fees, against any party litigant in the suit, having due regard to the merits and good faith of the claims or defenses made by the party litigant. This *Section 6.11* does not apply to a suit by the Trustee, a suit by a Holder pursuant to *Section 6.07*, or a suit by a Holder or Holders of more than 10% in principal amount of the outstanding Notes.

SECTION 6.12.   *Restoration of Rights and Remedies.*

If the Trustee or any Holder has instituted any proceedings to enforce any right or remedy under this Indenture and such proceeding has been discontinued or abandoned for any reason, or has been determined adversely to the Trustee or to such Holder, then and in every such case, subject to any determination in such proceeding, the Issuers, the Trustee and the Holders shall be restored severally and respectively to their former positions hereunder and thereafter all rights and remedies of the Trustee and the Holders shall continue as though no such proceeding has been instituted.

SECTION 6.13.   *Rights and Remedies Cumulative.*

Except as otherwise provided with respect to the replacement or payment of mutilated, destroyed, lost or stolen Notes in the last paragraph of *Section 2.08*, no right or remedy herein conferred upon or reserved to the Trustee or to the Holders is intended to be exclusive of any other right or remedy, and every right and remedy shall, to the extent permitted by law, be cumulative and in addition to every other right and remedy given hereunder or now or hereafter existing at law or in equity or otherwise. The assertion or employment of any right or remedy hereunder, or otherwise, shall not prevent the concurrent assertion or employment of any other appropriate right or remedy.

SECTION 6.14.   *Delay or Omission Not Waiver.*

No delay or omission of the Trustee or of any Holder of any Note to exercise any right or remedy accruing upon any Event of Default shall impair any such right or remedy or constitute a waiver of any such Event of Default or an acquiescence therein. Every right and remedy given by this Article or by law to the Trustee or to the Holders may be exercised from time to time, and as often as may be deemed expedient, by the Trustee or by the Holders, as the case may be.

## ARTICLE SEVEN
## TRUSTEE

SECTION 7.01.   *Duties of Trustee.*

The duties and responsibilities of the Trustee shall be as provided by the TIA and as set forth herein.

(a)     If an Event of Default has occurred and is continuing, the Trustee shall exercise such rights and powers vested in it by this Indenture and use the same degree of care and skill in its exercise thereof as a prudent person would exercise or use under the circumstances in the conduct of his or her own affairs.

(b)     Except during the continuance of an Event of Default:

(1)     the duties of the Trustee shall be determined solely by the express provisions of this Indenture and the TIA and the Trustee need perform only those duties as are specifically set forth in this Indenture and no covenants or obligations shall be implied in or read into this Indenture against the Trustee; and

(2)    in the absence of bad faith on its part, the Trustee may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon certificates or opinions furnished to the Trustee and conforming to the requirements of this Indenture; *provided, however*, in case of any such certificates or opinions furnished to the Trustee which by the provisions hereof are furnished to the Trustee, the Trustee shall examine the certificates and opinions to determine whether or not they conform to the requirements of this Indenture.

(c)    Notwithstanding anything to the contrary herein contained, the Trustee may not be relieved from liability for its own negligent action, its own negligent failure to act, or its own willful misconduct, except that:

(1)    this paragraph does not limit the effect of *paragraph (b)* of this *Section 7.01*;

(2)    the Trustee shall not be liable for any error of judgment made in good faith by a Trust Officer, unless it is proved that the Trustee was negligent in ascertaining the pertinent facts; and

(3)    the Trustee shall not be liable with respect to any action it takes or omits to take in good faith in accordance with a direction received by it pursuant to *Section 6.05*.

(d)    No provision of this Indenture shall require the Trustee to expend or risk its own funds or otherwise incur any liability. The Trustee shall be under no obligation to exercise of any of its rights or powers under this Indenture or the Collateral Agreements at the request, order or direction of any Holders unless such Holders have offered to the Trustee security and indemnity reasonably satisfactory to the Trustee against the costs and expenses which may be incurred by it in compliance with such request, order or direction.

(e)    Whether or not therein expressly so provided, every provision of this Indenture that in any way relates to the Trustee is subject to *paragraphs (a), (b), (c)* and *(d)* of this *Section 7.01*.

(f)    The Trustee shall not be liable for interest on any money or assets received by it except as the Trustee may agree in writing with the Issuers. Money and assets held in trust by the Trustee need not be segregated from other funds or assets held by the Trustee except to the extent required by law.

SECTION 7.02.    *Rights of Trustee*.

Subject to *Section 7.01*:

(a)    The Trustee may conclusively rely and shall be fully protected in acting or refraining from acting upon any resolution, certificate, statement instrument, opinion, report, request direction, consent, order, bond, note or other paper or document believed by it to be genuine and to have been signed or presented by the proper Person. The Trustee need not investigate any fact or matter stated in the document.

(b)    Before the Trustee acts or refrains from acting, it may consult with counsel of its selection and may require an Officers' Certificate or an Opinion of Counsel, or both, which shall conform to *Sections 11.04* and *11.05*. The Trustee shall not be liable for any action it takes or omits to take in good faith in reliance on such Officers' Certificate or Opinion of Counsel. The advice of the Trustee's counsel or any Opinion of Counsel shall be full and complete authorization and protection from liability in respect of any action taken, suffered or omitted by the Trustee hereunder in good faith and in reliance thereon.

(c)    The Trustee may act through its attorneys and agents and shall not be responsible for the misconduct or negligence of any agent appointed with due care.

(d)    The Trustee shall not be liable for any action that it takes or omits to take in good faith which it reasonably believes to be authorized or within its rights or powers under this Indenture.

(e)    The Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, notice, request, direction, consent, order, bond, debenture, or other paper or document, but the Trustee, in its discretion, may make such further inquiry or investigation into such facts or matters as it may see fit and, if the Trustee shall determine to make such further inquiry or investigation, it shall be entitled, upon reasonable notice to the Issuers, to examine the books, records and premises of the Issuers, personally or by agent or attorney at the sole cost of the Issuers and to consult with the officers and representatives of the Issuers, including the Issuers' accountants and attorneys. Except as expressly stated herein to the contrary, in no event shall the Trustee have any responsibility to ascertain whether there has been compliance with any of the covenants or provisions of *Articles Four* or *Five* hereof.

(f)    The Trustee shall not be required to give any bond or surety in respect of the performance of its powers and duties hereunder.

(g)    Unless otherwise specifically provided in this Indenture, any demand, request, direction or notice from the Issuers shall be sufficient if signed by an Officer of the Issuers and any resolution of the Board of Directors shall be sufficient if evidenced by a copy of such resolution certified by an Officer of the Issuers to have been duly adopted and in full force and effect on the date hereof.

(h)    The Trustee shall not be deemed to have notice or be charged with knowledge of any Default or Event of Default unless a Trust Officer of the Trustee has actual notice thereof or unless the Trustee shall have received from the Issuers, any Guarantor or any other obligor upon the Notes or from any Holder written notice thereof at its address set forth in *Section 11.02* hereof, and such notice references the Notes and this Indenture.

(i)    The rights, privileges, protections, immunities and benefits given to the Trustee, including, without limitation, its right to be indemnified, are extended to, and shall be enforceable by, the Trustee in each of its capacities hereunder, and each agent, custodian and other Person employed to act hereunder.

78

(j)     The Trustee may request that the Issuers deliver an Officers' Certificate setting forth the names of individuals and/or titles of officers authorized at such time to take specified actions pursuant to this Indenture, which Officers' Certificate may be signed by any persons authorized to sign an Officers' Certificate, including any person specified as so authorized in any such certificate previously delivered and not superseded.

(k)     The permissive right of the Trustee to take any action under this Indenture or any Collateral Agreements shall not be construed as a duty to so act.

SECTION 7.03.   *Individual Rights of Trustee.*

The Trustee in its individual or any other capacity may become the owner or pledgee of Notes and may otherwise deal with the Issuers, any Subsidiary of the Issuers or their respective Affiliates with the same rights it would have if it were not Trustee. Any Agent may do the same with like rights. However, the Trustee must comply with *Sections 7.10* and *7.11* of this Indenture, and the Trustee is subject to TIA Sections 310(b) and 311.

SECTION 7.04.   *Trustee's Disclaimer.*

The Trustee makes no representation as to the validity, adequacy or sufficiency of this Indenture, the Notes or the Collateral Agreements, and it shall not be accountable for the Issuers' use of the proceeds from the Notes, and it shall not be responsible for any statement of the Issuers in this Indenture, the Notes, the Collateral Agreements or any other documents in connection with the issuance of the Notes other than the Trustee's certificate of authentication, which shall be taken as the statement of Issuers, and the Trustee assumes no responsibility for their correctness.

Beyond the exercise of reasonable care in the custody thereof and the fulfillment of its obligations under this Indenture and the Collateral Agreements, the Trustee shall have no duty as to any Collateral in its possession or control or in the possession or control of any agent or bailee or any income thereon or as to preservation of rights against prior parties or any other rights pertaining thereto and the Trustee shall not be responsible for filing any financing or continuation statements or recording any documents or instruments in any public office at any time or times or otherwise perfecting or maintaining the perfection of any security interest in the Collateral. The Trustee shall be deemed to have exercised reasonable care in the custody of the Collateral in its possession if the Collateral is accorded treatment substantially equal to that which it accords its own property.

The Trustee makes no representations as to and shall not be responsible for the existence, genuineness, value, sufficiency or condition of any of the Collateral or as to the security afforded or intended to be afforded thereby, hereby or by any Collateral Agreement, or for the validity, perfection, priority or enforceability of the Liens or security interests in any of the Collateral created or intended to be created by any of the Collateral Agreements, whether impaired by operation of law or by reason of any action or omission to act on its part hereunder, except to the extent such action or omission constitutes gross negligence or willful misconduct on the part of the Trustee, for the validity or sufficiency of the Collateral, any Collateral Agreements or any agreement or assignment contained in any thereof, for the validity of the title of the Issuers or

any Guarantor to the Collateral, for insuring the Collateral or for the payment of taxes, charges, assessments or Liens upon the Collateral or otherwise as to the maintenance of the Collateral.

SECTION 7.05.   *Notice of Default.*

If a Default or an Event of Default occurs and is continuing and if a Trust Officer has actual knowledge or has received written notice from the Issuers or any Holder, the Trustee shall mail to each Holder, with a copy to the Issuers, notice of the Default or Event of Default within thirty (30) days thereof. Except in the case of a Default or an Event of Default in payment of principal of, premium, if any, or interest on, any Note, including an accelerated payment and the failure to make payment on the Change of Control Payment Date pursuant to a Change of Control Offer and, except in the case of a failure to comply with *Article Five*, the Trustee may withhold the notice if and so long as its Board of Directors, the executive committee of its Board of Directors or a committee of its directors and/or Trust Officers in good faith determines that withholding the notice is in the interest of the Holders.

SECTION 7.06.   *Reports by Trustee to Holders.*

Within sixty (60) days after each May 15, beginning with May 15, 2009, the Trustee shall, to the extent that any of the events described in TIA Section 313(a) occurred within the previous twelve months, but not otherwise, mail to each Holder a brief report dated as of such date that complies with TIA Section 313(a). The Trustee also shall comply with TIA Sections 313(b) and (c).

A copy of each report at the time of its mailing to Holders shall be mailed to the Issuers and filed by the Issuers with the SEC and each stock exchange or market, if any, on which the Notes are listed or quoted.

The Issuers shall promptly notify the Trustee if the Notes become listed or quoted on any stock exchange or market and the Trustee shall comply with TIA Section 313(d) and any delisting thereof.

SECTION 7.07.   *Compensation and Indemnity.*

The Issuers shall pay to the Trustee, the Paying Agent and the Registrar (each an "*Indemnified Party*") from time to time such compensation for their respective services as Trustee, Paying Agent or Registrar, as the case may be, shall from time to time be agreed in writing signed by the Company. The Trustee's compensation shall not be limited by any law on compensation of a trustee of an express trust. The Issuers shall reimburse each Indemnified Party upon request for all reasonable out-of-pocket expenses incurred or made by it in connection with the performance of its duties under, as the case may be, this Indenture or the Collateral Agreements. Such expenses shall include the reasonable fees and expenses of each of such Indemnified Party's agents and counsel.

The Issuers and the Guarantors hereby agree to indemnify each Indemnified Party and its agents, employees, stockholders and directors and officers for, and to hold each of them harmless against, any loss, cost, claim, liability or expense (including taxes) incurred by any of them except for such actions to the extent caused by any negligence, bad faith or willful misconduct

on the part of such Indemnified Party, arising out of or in connection with this Indenture or the Collateral Agreements, or the administration of this trust, including the reasonable costs and expenses of enforcing this Indenture against the Issuers (including this *Section 7.07*) and defending themselves against any claim or liability in connection with the exercise or performance of any of their rights, powers or duties hereunder or thereunder (including the reasonable fees and expenses of counsel). The Trustee shall notify the Issuers promptly of any claim asserted against an Indemnified Party for which such Indemnified Party has advised the Trustee that it may seek indemnity hereunder or under the Collateral Agreements. Failure by the Trustee to so notify the Issuers shall not relieve the Issuers of its obligations hereunder. At the Indemnified Party's sole discretion, the Issuers shall defend the claim and the Indemnified Party shall cooperate and may participate in the defense; *provided* that any settlement of a claim shall be approved in writing by the Indemnified Party. Alternatively, the Indemnified Party may at its option have separate counsel of its own choosing and the Issuers shall pay the reasonable fees and expenses of such counsel; *provided* that the Issuers shall not be required to pay such fees and expenses if it assumes the Indemnified Party's defense and there is no conflict of interest between the Issuers and the Indemnified Party in connection with such defense as reasonably determined by the Indemnified Party. The Issuers need not pay for any settlement made without their written consent, which consent shall not be unreasonably withheld.

To secure the Issuers' payment obligations in this *Section 7.07*, each Indemnified Party shall have a lien prior to the Notes on all Collateral held or collected by the Trustee, in its capacity as Trustee, except assets or money held in trust to pay principal of or interest on particular Notes which have been called for redemption.

When an Indemnified Party incurs expenses or renders services after an Event of Default specified in *Section 6.01(6)* or *(7)* occurs, such expenses (including the reasonable fees and expenses of its counsel) and the compensation for such services are intended to constitute expenses of administration under any Bankruptcy Code.

The obligations of the Issuers under this *Section 7.07* shall survive the satisfaction and discharge of this Indenture, termination of the Collateral Agreements or the resignation or removal of the Trustee.

The Trustee shall comply with the provisions of TIA Section 312(b)(2) to the extent applicable.

SECTION 7.08. *Replacement of Trustee.*

The Trustee may resign by so notifying the Issuers. The Holders of a majority in aggregate principal amount of the outstanding Notes may remove the Trustee by so notifying the Issuers and the Trustee in writing and may appoint a successor Trustee. The Issuers, by a Board Resolution, may remove the Trustee if:

  (1)   the Trustee fails to comply with *Section 7.10*;

  (2)   the Trustee is adjudged bankrupt or insolvent;

(3)     a receiver or other public officer takes charge of the Trustee or its property; or

(4)     the Trustee becomes incapable of acting with respect to the Notes.

If the Trustee resigns or is removed or if a vacancy exists in the office of Trustee for any reason, the Issuers shall notify each Holder in writing of such event and shall promptly appoint a successor Trustee. Within one year after the successor Trustee takes office, the Holders of a majority in aggregate principal amount of the outstanding Notes may appoint a successor Trustee to replace the successor Trustee appointed by the Issuers.

A successor Trustee shall deliver a written acceptance of its appointment to the retiring Trustee and to the Issuers and thereupon the resignation or removal of the retiring Trustee shall become effective and such successor Trustee, without any further act, deed or conveyance, shall become vested with all rights, powers, trusts, duties and obligations of the retiring Trustee and shall duly assign, transfer and deliver to such successor Trustee all property and money held by such Trustee so ceasing to act hereunder subject nevertheless to its lien, if any, provided for in *Section 7.07*. Upon request of the Issuers or the successor Trustee, such retiring Trustee shall at the expense of the Issuers and upon payment of the charges of the Trustee then unpaid, execute and deliver an instrument transferring to such successor Trustee all the rights, powers and trusts of the retiring Trustee, and shall duly assign, transfer and deliver to such successor Trustee all property and money held by such retiring Trustee hereunder.

If a successor Trustee does not take office within thirty (30) days after the retiring Trustee resigns or is removed, the retiring Trustee, at the Issuers' expense, the Issuers or the Holders of at least 10% in principal amount of the outstanding Notes may petition any court of competent jurisdiction for the appointment of a successor Trustee.

If the Trustee fails to comply with *Section 7.10*, any Holder who satisfies the requirements of TIA Section 310(b) may petition any court of competent jurisdiction for the removal of the Trustee and the appointment of a successor Trustee.

The Issuers shall give notice of any resignation and any removal of the Trustee and each appointment of a successor Trustee to all Holders in writing. Each notice shall include the name of the successor Trustee and the address of its Corporate Trust Office.

Notwithstanding any resignation or replacement of the Trustee pursuant to this *Section 7.08*, the Issuers' obligations under *Section 7.07* shall continue for the benefit of the retiring Trustee.

SECTION 7.09.   *Successor Trustee by Merger, Etc.*

If the Trustee consolidates with, merges or converts into, or transfers all or substantially all of its corporate trust business to, another Person, the resulting, surviving or transferee Person without any further act shall, if such resulting, surviving or transferee Person is otherwise eligible hereunder, be the successor Trustee; *provided, however*, that such Person shall be otherwise qualified and eligible under this *Article Seven*.

82

In case any Notes have been authenticated, but not delivered, by the Trustee then in office, any successor by merger, conversion or consolidation to such authenticating Trustee may adopt such authentication and deliver the Notes so authenticated with the same effect as if such successor Trustee had itself authenticated such Notes.

SECTION 7.10.  *Eligibility; Disqualification.*

(a)    This Indenture shall always have a Trustee who satisfies the requirements of TIA Sections 310(a)(1), (2), (3) and (5). The Trustee (or, in the case of a corporation included in a bank holding company system, the related bank holding company) shall have a combined capital and surplus of at least $50,000,000 as set forth in its most recent published annual report of condition. In addition, if the Trustee is a corporation included in a bank holding company system, the Trustee, independently of such bank holding company, shall meet the capital requirements of TIA Section 310(a)(2). The Trustee shall comply with TIA Section 310(b); *provided, however*, that there shall be excluded from the operation of TIA Section 310(b)(1) any indenture or indentures under which other securities, or certificates of interest or participation in other securities, of the Issuers are outstanding if the requirements for such exclusion set forth in TIA Section 310(b)(1) are met. The provisions of TIA Section 310 shall apply to the Issuers, as obligor of the Notes.

(b)    If the Trustee has or acquires a conflicting interest within the meaning of the TIA, the Trustee shall either eliminate such interest or resign, to the extent and in the manner provided by, and subject to the provisions of, the TIA and this Indenture.

SECTION 7.11.  *Preferential Collection of Claims Against Issuers.*

The Trustee shall comply with TIA Section 311(a), excluding any creditor relationship listed in TIA Section 311(b). A Trustee who has resigned or been removed shall be subject to TIA Section 311(a) to the extent indicated therein.

SECTION 7.12.  *Trustee as Paying Agent.*

References to the Trustee in *Sections 7.01(f)*, *7.02*, *7.03*, *7.04*, and *7.07* shall include the Trustee in its role as Paying Agent.

SECTION 7.13.  *Co-Trustees and Separate Trustees.*

(a)    At any time or times, for the purpose of meeting the legal requirements of any jurisdiction in which any of the Collateral may at the time be located, the Issuers and the Trustee shall have the power to appoint, and, upon the written request of the Trustee or of the Holders of at least 25% in principal amount of the Notes outstanding, the Issuers shall for such purpose join with the Trustee in the execution, delivery and performance of all instruments and agreements necessary or proper to appoint, one or more Persons approved by the Trustee either to act as co-trustee, jointly with the Trustee, of all or any part of the Collateral, or to act as separate trustees of any such property, in either case with such powers as may be provided in the instrument of appointment, and to vest in such Person or Persons in the capacity aforesaid, any property, title, right or power deemed necessary or desirable, subject to the other provisions of this *Section 7.13*.

83

(b)    Should any written instrument from the Issuers be required by any co-trustee or separate trustee so appointed for more fully confirming to such co-trustee or separate trustee such property, title, right or power, any and all such instruments shall, on request, be executed, acknowledged and delivered by the Issuers.

(c)    Every co-trustee or separate trustee shall, to the extent permitted by law, but to such extent only, be appointed subject to the following terms, namely:

(i)    The Notes shall be authenticated and delivered, and all rights, powers, duties and obligations hereunder in respect of the custody of securities, cash and other personal property held by, or required to be deposited or pledged with, the Trustee hereunder, shall be exercised solely, by the Trustee.

(ii)    The rights, powers, duties and obligations hereby conferred or imposed upon the Trustee shall be conferred or imposed upon and exercised or performed by the Trustee or by the Trustee and such co-trustee or separate trustee, jointly as shall be provided in the instrument appointing such co-trustee or separate trustee, except to the extent that under any law of any jurisdiction in which any particular act is to be performed, the Trustee shall be incompetent or unqualified to perform such act, in which event such rights, powers, duties and obligations shall be exercised and performed by such co-trustee or separate trustee.

(iii)    The Trustee at any time, by an instrument in writing executed by it, with the concurrence of the Issuers evidenced by a Board Resolution, may accept the resignation of or remove any co-trustee or separate trustee appointed under this *Section 7.13*, and, in case an Event of Default has occurred and is continuing, the Trustee shall have power to accept the resignation of, or remove, any such co-trustee or separate trustee without the concurrence of the Issuers. Upon the written request of the Trustee, the Issuers shall join with the Trustee in the execution, delivery and performance of all instruments and agreements necessary or proper to effectuate such resignation or removal. A successor to any co-trustee or separate trustee so resigned or removed may be appointed in the manner provided in this *Section 7.13*.

(iv)    No co-trustee or separate trustee hereunder shall be personally liable by reason of any act or omission of the Trustee or any other such trustee hereunder.

(v)    Any act of Holders delivered to the Trustee shall be deemed to have been delivered to each such co-trustee or separate trustee.

SECTION 7.14.    *Form of Documents Delivered to Trustee.*

In any case where several matters are required to be certified by, or covered by an opinion of, any specified Person, it is not necessary that all such matters be certified by, or covered by the opinion of, only one such Person, or that they be so certified or covered by only one document, but one such Person may certify or give an opinion with respect to some matters and one or more other Persons as to other matters and any such Person may certify or give an opinion as to such matters in one or several documents.

84

Any certificate or opinion of an Officer of either Issuer may be based, insofar as it relates to legal matters, upon a certificate or opinion, or representation by, counsel, unless such Officer knows, or in the exercise of reasonable care should know, that the certificate or opinion or representations with respect to the matters upon which his certificate or opinion is based are erroneous. Any such certificate or opinion of counsel or representation by counsel may be based, insofar as it relates to factual matters, upon a certificate or opinion of, or representations by, an officer or officers of either Issuer stating that the information with respect to such factual matters is in the possession of such Issuer, unless such counsel knows that the certificate or opinion or representations with respect to such matters are erroneous.

Where any Person is required to make, give or execute two or more applications, requests, consents, certificates, statements, opinions or other instruments under this Indenture, they may, but need not, be consolidated and form one instrument.

## ARTICLE EIGHT
## SATISFACTION AND DISCHARGE OF INDENTURE

SECTION 8.01.   *Legal Defeasance and Covenant Defeasance.*

(a)     The Issuers may, at their option and at any time, elect to have either *paragraph (b)* or *paragraph (c)* below be applied to the outstanding Notes upon compliance with the applicable conditions set forth in *paragraph (d)*.

(b)     Upon the Issuers' exercise under *paragraph (a)* of the option applicable to this *paragraph (b)*, the Issuers and the Guarantors shall be deemed to have been released and discharged from their obligations with respect to the outstanding Notes, the Guarantees and the Collateral Agreements on the date the applicable conditions set forth below are satisfied (hereinafter, "*Legal Defeasance*"). For this purpose, such Legal Defeasance means that the Issuers shall be deemed to have paid and discharged the entire Indebtedness represented by the outstanding Notes, which shall thereafter be deemed to be "outstanding" only for the purposes of the Sections and matters under this Indenture referred to in *clause (i)* and *(ii)* below, and the Issuers and the Guarantors shall be deemed to have satisfied all their other obligations under such Notes and this Indenture, the Guarantees and the Collateral Agreements, except for the following which shall survive until otherwise terminated or discharged hereunder:  (i) the rights of Holders of outstanding Notes to receive solely from the trust fund described in *paragraph (d)* below and as more fully set forth in such paragraph payments in respect of the principal of, and premium, if any, and interest on such Notes when such payments are due, (ii) obligations listed in *Section 8.03*, subject to compliance with this *Section 8.01* and (iii) the rights, powers, trusts, duties and immunities of the Trustee and the Issuers' obligations in connection therewith. The Issuers may exercise their option under this *paragraph (b)* notwithstanding the prior exercise of their option under *paragraph (c)* below with respect to the Notes.

(c)     Upon the Issuers' exercise under *paragraph (a)* of the option applicable to this *paragraph (c)*, the Parent, the Issuers and their respective Restricted Subsidiaries shall be released and discharged from their obligations under any covenant contained in *Section 4.05*, *Sections 4.08* through *4.11*, *Sections 4.13* through *4.24*, and *Section 5.01(2)*, with respect to the outstanding Notes on and after the date the conditions set forth below are satisfied (hereinafter,

"*Covenant Defeasance*"), and the Notes shall thereafter be deemed to be not "outstanding" for the purpose of any direction, waiver, consent or declaration or act of Holders (and the consequences of any thereof) in connection with such covenants, but shall continue to be deemed "outstanding" for all other purposes hereunder (it being understood that such Notes shall not be deemed outstanding for accounting purposes). For this purpose, such Covenant Defeasance means that, with respect to the outstanding Notes, the Parent and the Issuers may omit to comply with and shall have no liability in respect of any term, condition or limitation set forth in any such covenant, whether directly or indirectly, by reason of any reference elsewhere herein to any such covenant or by reason of any reference in any such covenant to any other provision herein or in any other document and such omission to comply shall not constitute a Default or an Event of Default under *Section 6.01*, but, except as specified above, the remainder of this Indenture and such Notes shall be unaffected thereby. In addition, upon the Issuers' exercise under *paragraph (a)* hereof of the option applicable to this *paragraph (c)*, subject to the satisfaction of the conditions set forth in *paragraph (d)* below, *Sections 6.01(3)* through *6.01(10)* (except, in the case of *Section 6.01(6)* and *6.01(7)* , with respect only to Significant Subsidiaries) shall not constitute Events of Default.

(d)     The following shall be the conditions to application of either *paragraph (b)* or *paragraph (c)* above to the outstanding Notes:

(1)     The Issuers shall have irrevocably deposited in trust with the Trustee, pursuant to an irrevocable trust and security agreement in form and substance reasonably satisfactory to the Trustee, U.S. Legal Tender or non-callable U.S. Government Obligations or a combination thereof, in such amounts and at such times as are sufficient, in the opinion of a nationally-recognized firm of independent public accountants, to pay the principal of, and premium, if any, and interest on the outstanding Notes on the stated dates for payment or redemption, as the case may be; *provided, however*, that the Trustee (or other qualifying trustee) shall have received an irrevocable written order from the Issuers instructing the Trustee (or other qualifying trustee) to apply such U.S. Legal Tender or the proceeds of such U.S. Government Obligations to said payments with respect to the Notes to maturity or redemption;

(2)     No Default or Event of Default shall have occurred and be continuing on the date of such deposit (other than a Default or Event of Default arising in connection with the substantially contemporaneous borrowing of funds to fund the deposit referenced in *clause (1)* above and the granting of any Lien securing such borrowing);

(3)     Such Legal Defeasance or Covenant Defeasance shall not result in a breach or violation of, or constitute a default hereunder (other than a Default or Event of Default arising in connection with the substantially contemporaneous borrowing of funds to fund the deposit referenced in *clause (1)* above and the granting of any Lien securing such borrowing) or any other material agreement or instrument to which the Issuers or any of their Subsidiaries is a party or by which the Issuers or any of their Subsidiaries is bound;

(4)     (i) In the event the Issuers elect *paragraph (b)* above, the Issuers shall deliver to the Trustee an Opinion of Counsel in the United States of America, in form and

substance reasonably satisfactory to the Trustee, to the effect that (A) the Issuers have received from, or there has been published by, the Internal Revenue Service a ruling or (B) since the Issue Date, there has been a change in the applicable federal income tax law, in either case to the effect that, and based thereon such Opinion of Counsel shall state that, Holders shall not recognize income, gain or loss for federal income tax purposes as a result of such Legal Defeasance contemplated hereby and shall be subject to federal income tax in the same amounts, in the same manner and at the same times as would have been the case if such Legal Defeasance had not occurred or (ii) in the event the Issuers elects *paragraph (c)* above, the Issuers shall deliver to the Trustee an Opinion of Counsel in the United States, in form and substance reasonably satisfactory to the Trustee, to the effect that Holders shall not recognize income, gain or loss for federal income tax purposes as a result of such Covenant Defeasance contemplated hereby and shall be subject to federal income tax in the same amounts, in the same manner and at the same times as would have been the case if such Covenant Defeasance had not occurred;

(5)    The Issuers shall have delivered to the Trustee an Officers' Certificate stating that the deposit under *clause (1)* was not made by the Issuers with the intent of preferring the Holders over any other creditors of the Issuers or with the intent of defeating, hindering, delaying or defrauding any other creditors of the Issuers or others;

(6)    The Issuers shall have delivered to the Trustee an Opinion of Counsel, reasonably satisfactory to the Trustee, to the effect that assuming no intervening bankruptcy of the Issuers between the date of deposit and the 91st day following the date of deposit and that no Holder of Notes is an insider of the Issuers, after the 91st day following the date of deposit, the trust funds shall not be subject to any applicable bankruptcy, insolvency, reorganization or similar law affecting creditors' rights generally; and

(7)    The Issuers have delivered to the Trustee an Officers' Certificate and an Opinion of Counsel, each stating that all conditions precedent specified herein relating to the defeasance contemplated by this *Section 8.01* have been complied with.

Notwithstanding the foregoing, the Opinions of Counsel required by *Section 8.01(d)(4)(i)* and *Section 8.01(d)(6)* above with respect to a Legal Defeasance need not be delivered if all Notes not theretofore delivered to the Trustee for cancellation (1) have become due and payable or (2) shall become due and payable on the maturity date within one year under arrangements satisfactory to the Trustee for the giving of notice of redemption by the Trustee in the name, and at the expense, of the Issuers.

In the event all or any portion of the Notes are to be redeemed through such irrevocable trust, the Issuers must make arrangements reasonably satisfactory to the Trustee, at the time of such deposit, for the giving of the notice of such redemption or redemptions by the Trustee in the name and at the expense of the Issuers.

87

SECTION 8.02.    *Satisfaction and Discharge.*

In addition to the Issuers' rights under *Section 8.01*, the Issuers may terminate all of their obligations under this Indenture (subject to *Section 8.03*), and this Indenture, the Notes, the Guarantees and the Collateral Agreements, and all Liens created thereunder, shall be discharged and shall cease to be in effect when:

(1)    either:

(a)    all the Notes theretofore authenticated and delivered (except lost, stolen or destroyed Notes which have been replaced or paid as provided in *Section 2.07* and Notes for whose payment money has theretofore been deposited in trust or segregated and held in trust by the Issuers and thereafter repaid to the Issuers or discharged from such trust) have been delivered to the Trustee for cancellation; or

(b)    all Notes not theretofore delivered to the Trustee for cancellation (i) have become due and payable, (ii) shall become due and payable at their stated maturity within one year or (iii) are to be called for redemption within one year under arrangements reasonably satisfactory to the Trustee, and the Issuers have irrevocably deposited or caused to be deposited with the Trustee funds in an amount sufficient to pay and discharge the entire Indebtedness on the Notes not theretofore delivered to the Trustee for cancellation, for principal of, and premium, if any, and interest on the Notes to the date of deposit together with irrevocable instructions from the Issuers directing the Trustee to apply such funds to the payment thereof at maturity or redemption, as the case may be;

(2)    all other sums payable under this Indenture by the Issuers have been paid; and

(3)    each Issuer has delivered to the Trustee an Officers' Certificate and an Opinion of Counsel stating that all conditions precedent under this Indenture relating to the satisfaction and discharge of this Indenture have been complied with.

SECTION 8.03.    *Survival of Certain Obligations.*

Notwithstanding the satisfaction and discharge of this Indenture and of the Notes referred to in *Section 8.01* or *8.02*, the provisions regarding optional redemption contained in *Article Three* and the form of Notes, the respective obligations of the Issuers and the Trustee under *Sections 2.03, 2.04, 2.05, 2.06, 2.07* and *2.08, Sections 7.07* and *7.08* and *Sections 8.05, 8.06* and *8.07* shall survive until the Notes are no longer outstanding, and thereafter the obligations of the Issuers and the Trustee under *Sections 7.07, 8.04, 8.05* and *8.06* and *8.07* shall survive.

SECTION 8.04.    *Acknowledgment of Discharge by Trustee.*

Subject to *Section 8.07*, after (i) the conditions of *Section 8.01* or *8.02* have been satisfied, (ii) the Issuers have paid or caused to be paid all other sums payable hereunder by the

Issuers and (iii) each Issuer has delivered to the Trustee an Officers' Certificate and an Opinion of Counsel, each stating that all conditions precedent referred to in *clause (i)* above relating to the satisfaction and discharge of this Indenture have been complied with, the Trustee, upon written request, shall acknowledge in writing the discharge of the Issuers' obligations under this Indenture except for those surviving obligations specified in *Section 8.03* and the Trustee shall execute and deliver to the Issuers any document reasonably requested by the Issuers to effect or evidence any release and discharge of Lien or Collateral Agreement contemplated by *Section 12.06*.

SECTION 8.05.  *Application of Trust Moneys.*

The Trustee shall hold any U.S. Legal Tender or U.S. Government Obligations deposited with it in the irrevocable trust established pursuant to *Section 8.01*. The Trustee shall apply the deposited U.S. Legal Tender or the U.S. Government obligations, together with earnings thereon, through the Paying Agent, in accordance with this Indenture and the terms of the irrevocable trust agreement established pursuant to *Section 8.01*, to the payment of principal of, premium, if any, and interest on the Notes. Anything in this *Article Eight* to the contrary notwithstanding, the Trustee shall deliver or pay to the Issuers from time to time upon the Issuers' request any U.S. Legal Tender or U.S. Government Obligations held by it as provided in *Section 8.01(d)* which, in the opinion of a nationally-recognized firm of independent public accountants expressed in a written certification thereof delivered to the Trustee, are in excess of the amount thereof that would then be required to be deposited to effect an equivalent Legal Defeasance or Covenant Defeasance.

The Company shall pay and indemnify the Trustee against any tax, fee or other charge imposed on or assessed against the U.S. Government Obligations deposited pursuant to *Section 8.01* or *8.02* or the principal and interest received in respect thereof other than any such tax, fee or other charge which by law is for the account of the Holders of Outstanding Notes.

SECTION 8.06.  *Repayment to the Issuers; Unclaimed Money.*

Subject to *Sections 7.07, 8.01* and *8.02*, the Trustee and the Paying Agent shall promptly pay to the Issuers upon written request from the Issuers any excess U.S. Legal Tender or U.S. Government Obligations held by them at any time. The Trustee and the Paying Agent shall pay to the Issuers, upon receipt by the Trustee or the Paying Agent, as the case may be, of a written request from the Issuers any money held by it for the payment of principal, premium, if any, or interest that remains unclaimed for two years after payment to the Holders is required, without interest thereon; *provided, however*, that the Trustee and the Paying Agent before being required to make any payment may, but need not, at the expense of the Issuers cause to be published once in a newspaper of general circulation in The City of New York or mail to each Holder entitled to such money notice that such money remains unclaimed and that after a date specified therein, which shall be at least thirty (30) days from the date of such publication or mailing, any unclaimed balance of such money then remaining shall be repaid to the Issuers, without interest thereon. After payment to the Issuers, Holders entitled to money must look solely to the Issuers for payment as general creditors unless an applicable abandoned property law designated another Person, and all liability of the Trustee or Paying Agent with respect to such money shall thereupon cease.

SECTION 8.07.   *Reinstatement.*

If the Trustee or Paying Agent is unable to apply any U.S. Legal Tender or U.S. Government Obligations in accordance with *Section 8.01* or *8.02* by reason of any legal proceeding or by reason of any order or judgment of any court or governmental authority enjoining, restraining or otherwise prohibiting such application, the Issuers' obligations under this Indenture and the Notes shall be revived and reinstated as though no deposit had occurred pursuant to *Section 8.01* or *8.02* until such time as the Trustee or Paying Agent is permitted to apply all such U.S. Legal Tender or U.S. Government Obligations in accordance with *Section 8.01* or *8.02*; *provided, however*, that if the Issuers have made any payment of premium, if any, or interest on or principal of any Notes because of the reinstatement of their obligations, the Issuers shall be subrogated to the rights of the Holders of such Notes to receive such payment from the money or U.S. Government Obligations held by the Trustee or Paying Agent.

## ARTICLE NINE
## AMENDMENTS, SUPPLEMENTS AND WAIVERS

SECTION 9.01.   *Without Consent of Holders.*

From time to time, the Issuers, the Guarantors and the Trustee without the consent of the Holders, may amend, modify, waive or supplement provisions of this Indenture, the Notes, the Guarantees and the Collateral Agreements:

(1)     to cure any ambiguity, defect or inconsistency contained therein;

(2)     to provide for uncertificated Notes in addition to or in place of certificated Notes;

(3)     to provide for the assumption of the Issuers' or a Guarantor's obligations to Holders in the case of a merger or consolidation involving the Issuers or such Guarantor or sale of all or substantially all of the assets of the Issuers or such Guarantor or the release of a Guarantor to the extent permitted under this Indenture;

(4)     to make any change that would provide any additional rights or benefits to the Holders or that does not adversely affect the legal rights of any such Holder under this Indenture, the Notes, the Guarantees or the Collateral Agreements in any material respect;

(5)     to comply with requirements of the SEC in order to effect or maintain the qualification of this Indenture under the TIA;

(6)     to allow any Subsidiary or any other Person to guarantee the Notes;

(7)     if necessary, in connection with any addition or release of Collateral permitted under the terms of this Indenture or the Collateral Agreements; or

(8)     to evidence and provide for the acceptance and appointment hereunder of a successor Trustee with respect to the Notes with respect to the Collateral Agreements.

After an amendment, supplement or waiver under this *Section 9.01* becomes effective, the Issuers shall mail to the Holders affected thereby a notice briefly describing the amendment, supplement or waiver. Any failure of the Issuers to mail such notice, or any defect therein, shall not, however, in any way impair or affect the validity of any such amendment, supplement or waiver.

SECTION 9.02.    *With Consent of Holders.*

The Issuers and the Guarantors, when authorized by a Board Resolution of the Company, and the Trustee, as applicable, together, with the written consent of the Holder or Holders of at least a majority in aggregate principal amount of the outstanding Notes, may amend or supplement this Indenture, the Notes, any Collateral Agreement or the Guarantees without notice to any other Holders. The Holder or Holders of a majority in aggregate principal amount of the outstanding Notes may waive compliance by the Issuers with any provision of this Indenture, any Collateral Agreement or the Notes without notice to any other Holder. However, no amendment, supplement or waiver, including a waiver pursuant to *Section 6.04*, shall without the consent of each Holder of each Note affected thereby:

(1)    reduce the principal amount of Notes whose Holders must consent to an amendment, supplement or waiver of any provision of this Indenture or the Notes;

(2)    reduce the rate of or change or have the effect of changing the time for payment of interest on any Notes;

(3)    reduce the principal of or change or have the effect of changing the fixed maturity of any Notes, or change the date on which any Notes may be subject to Mandatory Prepayment or redemption or reduce the Mandatory Prepayment Amount or redemption price therefor or change the calculation of principal amount, except that the foregoing provision shall not apply to any amendment or waiver of the provisions of *Section 3.03* hereof;

(4)    make any Notes payable in money other than that stated in the Notes;

(5)    make any change in provisions of this Indenture protecting the right of each Holder to receive payment of principal of, premium, if any, and interest on such Note on or after the due date thereof or to bring suit to enforce such payment, or permitting Holders of a majority in principal amount of Notes to waive Defaults or Events of Default, except to increase any such percentage or to provide that certain other provisions of this Indenture cannot be modified or waived without the consent of the Holders of each outstanding Note affected thereby;

(6)    after the Issuers' obligation to purchase Notes arises thereunder, amend, change or modify in any material respect the obligation of the Issuers to make and consummate a Change of Control Offer in the event of a Change of Control, or make and consummate a Net Proceeds Offer with respect to any Asset Sale that has been consummated or, after such Change of Control has occurred or such Asset Sale has been consummated, modify any of the provisions or definitions with respect thereto;

91

(7)     modify or change any provision of this Indenture or the related definitions affecting the ranking of the Notes or any Guarantee in a manner which adversely affects the Holders; provided, however, that the ranking of the Notes shall not be deemed to be affected solely by virtue of any change to or release of the Collateral as permitted under this Indenture and the Collateral Agreements;

(8)     release any Guarantor that is the Parent or a Significant Subsidiary of the Company or the Parent from any of its obligations under its Guarantee or this Indenture otherwise than in accordance with the terms of this Indenture;

(9)     release all or substantially all of the Collateral from the Liens under this Indenture and the Collateral Agreements (except as specifically provided therein or in this Indenture); or

(10)    make any change to *Section 9.01* or this *Section 9.02*.

It shall not be necessary for the consent of the Holders under this *Section 9.02* to approve the particular form of any proposed amendment, supplement or waiver, but it shall be sufficient if such consent approves the substance thereof.

After an amendment, supplement or waiver under this *Section 9.02* becomes effective, the Issuers shall mail to the Holders affected thereby a notice briefly describing the amendment, supplement or waiver. Any failure of the Issuers to mail such notice, or any defect therein, shall not, however, in any way impair or affect the validity of any such amendment, supplement or waiver.

SECTION 9.03.    *Compliance with TIA.*

Every amendment, waiver or supplement of this Indenture, the Notes, the Collateral Agreements or the Guarantees shall comply with the TIA as then in effect.

SECTION 9.04.    *Revocation and Effect of Consents.*

Until an amendment, waiver or supplement becomes effective, a consent to it by a Holder is a continuing consent by the Holder and every subsequent Holder of a Note or portion of a Note that evidences the same debt as the consenting Holder's Note, even if notation of the consent is not made on any Note. Subject to the following paragraph, any such Holder or subsequent Holder may revoke the consent as to such Holder's Note or portion of such Note by written notice to the Trustee and the Issuers received before the date on which the Trustee receives an Officers' Certificate certifying that the Holders of the requisite principal amount of Notes have consented (and not theretofore revoked such consent) to the amendment, supplement or waiver. An amendment, waiver or supplement shall become effective upon receipt by the Trustee of written consents from the Holders of the requisite percentage in principal amount of the outstanding Notes or such Officers' Certificate, whichever first occurs, and the execution thereof by the Trustee.

The Issuers may, but shall not be obligated to, fix a record date for the purpose of determining the Holders entitled to consent to any amendment, supplement or waiver, which

92

record date shall be either (i) at least thirty (30) days prior to the first solicitation of such consent or (ii) the date of the most recent list furnished to the Trustee under *Section 2.05*. If a record date is fixed, then notwithstanding the last sentence of the immediately preceding paragraph, those Persons who were Holders at such record date (or their duly designated proxies), and only those Persons, shall be entitled to revoke any consent previously given, whether or not such Persons continue to be Holders after such record date. No such consent shall be valid or effective for more than ninety (90) days after such record date.

After an amendment, supplement or waiver becomes effective, it shall bind every Holder unless it makes a change described in any of *clauses (1)* through *(10)* of *Section 9.02*, in which case, the amendment, supplement or waiver shall bind only each Holder of a Note who has consented to it and every subsequent Holder of a Note or portion of a Note that evidences the same debt as the consenting Holder's Note; *provided* that any such waiver shall not impair or affect the right of any Holder to receive payment of principal of, premium, if any, and interest on a Note, on or after the respective due dates expressed in such Note, or to bring suit for the enforcement of any such payment on or after such respective dates without the consent of such Holder.

SECTION 9.05.    *Notation on or Exchange of Notes*.

If an amendment, supplement or waiver changes the terms of a Note, the Trustee may require the Holder of the Note to deliver the Note to the Trustee. The Trustee at the written direction of the Issuers may place an appropriate notation on the Note about the changed terms and return it to the Holder and the Trustee may place an appropriate notation on any Note thereafter authenticated. Alternatively, if the Issuers or the Trustee so determines, the Issuers in exchange for the Note shall issue and the Trustee shall authenticate a new Note that reflects the changed terms. Failure to make an appropriate notation, or issue a new Note, shall not affect the validity and effect of such amendment, supplement or waiver. Any such notation or exchange shall be made at the sole cost and expense of the Issuers. Failure to make the appropriate notation or issue a new Note shall not effect the validity and effect of such amendment, supplement or waiver.

SECTION 9.06.    *Trustee to Sign Amendments, Etc.*

The Trustee shall execute any amendment, supplement or waiver authorized pursuant to this *Article Nine*; *provided that* the Trustee may, but shall not be obligated to, execute any such amendment, supplement or waiver which affects the rights, duties or immunities of the Trustee under this Indenture or any Collateral Agreement. The Trustee shall be entitled to receive, and shall be fully protected in relying upon, an Opinion of Counsel and an Officers' Certificate each stating that the execution of any amendment, supplement or waiver authorized pursuant to this *Article Nine* is authorized or permitted by this Indenture. Such Opinion of Counsel shall not be an expense of the Trustee and shall be paid for by the Issuers.

SECTION 9.07.    *Conformity with Trust Indenture Act*.

Every supplemental indenture executed pursuant to this *Article Nine* shall conform to the requirements of the TIA as then in effect.

## ARTICLE TEN
## GUARANTEE

SECTION 10.01. *Guarantee.*

Each Guarantor hereby fully, irrevocably and unconditionally, jointly and severally, unconditionally and irrevocably guarantees (such guarantee to be referred to herein as the "*Guarantee*"), to each of the Holders and to the Trustee and their respective successors and assigns that (i) the principal of, premium, if any and interest on the Notes shall be promptly paid in full when due, subject to any applicable grace period, whether upon Mandatory Prepayment, upon redemption pursuant to the terms of the Notes, by acceleration or otherwise, and interest on the overdue principal, if any, and interest on any interest, if any, to the extent lawful, of the Notes and all other obligations of the Issuers to the Holders and the Trustee hereunder, thereunder or under any Collateral Agreement shall be promptly paid in full or performed, all in accordance with the terms hereof, thereof and of the Collateral Agreements; and (ii) in case of any extension of time of payment or renewal of any of the Notes or of any such other obligations, the same shall be promptly paid in full when due or performed in accordance with the terms of the extension or renewal, subject to any applicable grace period, whether at stated maturity, by acceleration or otherwise, subject, however, in the case of *clauses (i)* and *(ii)* above, to the limitations set forth in *Section 10.03*. The Guarantee of each Guarantor shall rank senior in right of payment to all subordinated Indebtedness of such Guarantor and equal in right of payment with all other senior obligations of such Guarantor. Each Guarantor hereby agrees that its obligations hereunder shall be unconditional, irrespective of the validity, regularity or enforceability of the Notes, this Indenture or any Collateral Agreement, the absence of any action to enforce the same, any waiver or consent by any of the Holders with respect to any provisions hereof or thereof, any release of any other Guarantor, the recovery of any judgment against the Issuers, any action to enforce the same or any other circumstance which might otherwise constitute a legal or equitable discharge or defense of a Guarantor. Each Guarantor hereby waives diligence, presentment, demand of payment, filing of claims with a court in the event of insolvency or bankruptcy of the Issuers, any right to require a proceeding first against the Issuers, protest, notice and all demands whatsoever and covenants that this Guarantee shall not be discharged except by complete performance of the obligations contained in the Notes, this Indenture and in this Guarantee.

Each Guarantor waives notice of any default under the Notes or the Obligations. The obligations of each Guarantor hereunder shall not be affected by (a) the failure of any Holder or Trustee to assert any claim or demand or to enforce any right or remedy against the Company or any other Person under this Indenture, the Notes, or any other agreement or otherwise; (b) any extension or renewal of any thereof; (c) any rescission, waiver, amendment or modification of any of the terms or provisions of this Indenture, the Notes, the Collateral Agreements or any other agreement; (d) the release of any security held by any Holder or the Trustee for the Obligations or any of them; (e) the failure of any Holder, the Trustee or the Collateral Agent to exercise any right or remedy against any other guarantor of the Obligations; or (f) any change in the ownership of such Guarantor.

Each Guarantor further agrees that its Guarantee herein constitutes a guarantee of payment, performance and compliance when due (and not a guarantee of collection) and waives

94

any right to require that any resort be had by any Holder or the Trustee to any security held for payment of the Obligations.

If any Holder or the Trustee is required by any court or otherwise to return to the Company, the Guarantors or any custodian, trustee, liquidator or other similar official acting in relation to either the Company or the Guarantors, any amount paid by either to the Trustee or such Holder, this Guarantee, to the extent theretofore discharged, shall be reinstated in full force and effect.

Until such time as the Notes and the other Obligations of the Company guaranteed hereby have been satisfied in full, each Guarantor hereby irrevocably waives any claim or other rights that it may now or hereafter acquire against the Company or any other Guarantor that arise from the existence, payment, performance or enforcement of such Guarantor's Obligations under its Guarantee including, without limitation, any right of subrogation, reimbursement, exoneration, contribution or indemnification and any right to participate in any claim or remedy of the Holders or the Trustee against the Company or any other Guarantor or any security, whether or not such claim, remedy or right arises in equity or under contract, statute or common law, including, without limitation, the right to take or receive from the Issuer or any other Guarantor, directly or indirectly, in cash or other property or by set-off or in any other manner, payment or security on account of such claim, remedy or right. If any amount shall be paid to such Guarantor in violation of the preceding sentence at any time prior to the later of the payment in full of the Notes and all other amounts payable under this Indenture and each Guarantee upon the Maturity of the Notes, such amount shall be held in trust for the benefit of the Holders and the Trustee and shall forthwith be paid to the Trustee to be credited and applied to the Notes and all other amounts payable under each Guarantee, whether matured or unmatured, in accordance with the terms of this Indenture, or to be held as security for any Obligations or other amounts payable under any Guarantee thereafter arising.

Each Guarantor acknowledges that it will receive direct and indirect benefits from the financing arrangements contemplated by this Indenture and that the waiver set forth in this Section 11.01 is knowingly made in contemplation of such benefits. Each Guarantor further agrees that, as between it, on the one hand, and the Holders and the Trustee, on the other hand, (x) the maturity of the Obligations guaranteed hereby may be accelerated as provided in *Article Six* for the purposes of each Guarantee, notwithstanding any stay, injunction or other prohibition preventing such acceleration in respect of the Obligations guaranteed hereby, and (y) in the event of any acceleration of such Obligations guaranteed hereby as provided in *Article Six*, such Obligations (whether or not due and payable) shall, forthwith become due and payable by the Guarantor for the purposes of each Guarantee.

The obligations of each Guarantor are limited to the maximum amount which, after giving effect to all other contingent and fixed liabilities of such Guarantor and after giving effect to any collections from or payments made by or on behalf of any other Guarantor in respect of the obligations of such other Guarantor under its Guarantee or pursuant to its contribution obligations under this Indenture, shall result in the obligations of such Guarantor under the Guarantee not constituting a fraudulent conveyance or fraudulent transfer under federal or state law. The net worth of any Guarantor for such purpose shall include any claim of such Guarantor

against the Issuers for reimbursement and any claim against any other Guarantor for contribution.

Each Guarantor may consolidate with or merge into or sell its assets to the Issuers or another Guarantor without limitation in accordance with *Sections 5.01* and *4.13*.

Each Guarantor further agrees that, as between each Guarantor, on the one hand, and the Holders and the Trustee, on the other hand, (x) the maturity of the Obligations guaranteed hereby may be accelerated as provided in *Article Six* for the purposes of this Guarantee notwithstanding any stay, injunction or other prohibition preventing such acceleration in respect of the Obligations guaranteed hereby, and (y) in the event of any acceleration of such Obligations as provided in *Article Six*, such Obligations (whether or not due and payable) shall forthwith become due and payable by each Guarantor for the purpose of this Guarantee.

SECTION 10.02. *Release of a Guarantor.*

A Guarantor other than the Parent will be automatically and unconditionally released from its Guarantee (and may subsequently dissolve) without any action required on the part of the Trustee or any Holder:

(1) if (a) all of the Capital Stock issued by such Guarantor or all or substantially all of the assets of such Guarantor are sold or otherwise disposed of (including by way of merger or consolidation) to a Person other than the Parent, the Issuers or any of their Domestic Restricted Subsidiaries, as the case may be, or (b) such Guarantor ceases to be a Restricted Subsidiary, and the Parent and/or Issuers otherwise comply, to the extent applicable, with *Section 4.13*, or

(2) if the Issuers designate such Guarantor as an Unrestricted Subsidiary in accordance with *Section 4.10*, or

(3) if the Issuers exercise their legal defeasance option or their covenant defeasance option as described in *Section 8.01*, or

(4) upon satisfaction and discharge of this Indenture or payment in full of the principal of, premium, if any, and accrued and unpaid interest, if any, on the Notes and all other Obligations that are then due and payable.

The Trustee shall promptly deliver an appropriate instrument evidencing such release upon receipt of a request by the Issuers accompanied by an Officers' Certificate certifying as to the compliance with this *Section 10.02*. Any Guarantor not so released remains liable for the full amount of its Guarantee as provided in this *Article Ten*.

SECTION 10.03. *Limitation of Guarantor's Liability.*

Each Guarantor and, by its acceptance hereof, each of the Holders hereby confirms that it is the intention of all such parties that the guarantee by such Guarantor pursuant to its Guarantee not constitute a fraudulent transfer or conveyance for purposes of any Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act or any similar

96

Federal or state law. To effectuate the foregoing intention, the Holders and such Guarantor hereby irrevocably agree that the obligations of such Guarantor under the Guarantee shall be limited to the maximum amount as shall, after giving effect to all other contingent and fixed liabilities of such Guarantor and after giving effect to any collections from or payments made by or on behalf of any other Guarantor in respect of the obligations of such other Guarantor under its Guarantee or pursuant to *Section 10.05*, result in the obligations of such Guarantor under the Guarantee not constituting such fraudulent transfer or conveyance.

SECTION 10.04. *Guarantors May Consolidate, etc., on Certain Terms.*

Each Guarantor (other than the Parent and any Guarantor whose Guarantee is to be released in accordance with the terms of the Guarantee and this Indenture in connection with any transaction complying with *Section 4.13*) will not, and the Issuers will not cause or permit any Guarantor to, consolidate with or merge with or into any Person other than the Issuers or any other Guarantor unless:

(1)     the entity formed by or surviving any such consolidation or merger (if other than the Guarantor) or to which such sale, lease, conveyance or other disposition shall have been made is a limited liability company or corporation organized and existing under the laws of the United States or any State thereof or the District of Columbia;

(2)     such entity assumes (a) by supplemental indenture (in form and substance satisfactory to the Trustee), executed and delivered to the Trustee, all of the obligations of the Guarantor under the Guarantee and (b) by amendment, supplement or other instrument (in form and substance satisfactory to the Trustee) executed and delivered to the Trustee, all obligations of the Guarantor under the Collateral Agreements and in connection therewith shall cause such instruments to be filed and recorded in such jurisdictions and take such other actions as may be required by applicable law to perfect or continue the perfection of the Lien created under the Collateral Agreements on the Collateral owned by or transferred to the surviving entity;

(3)     immediately after giving effect to such transaction, no Default or Event of Default shall have occurred and be continuing; and

(4)     immediately after giving effect to such transaction and the use of any net proceeds therefrom on a pro forma basis, the Company could satisfy the provisions of *Section 5.01(a)(2)*.

Any merger or consolidation of (i) a Guarantor with and into an Issuer (with the Issuer being the surviving entity) or another Guarantor or (ii) a Guarantor or the Issuers with an Affiliate organized solely for the purpose of reorganizing such Guarantor or the Issuers in another jurisdiction in the United States or any state thereof or the District of Columbia or changing the legal form of such Guarantor or the Issuers need only comply with (A) *clause (4) of Section 5.01(a)* and (B) in the case of a merger or consolidation involving (x) the Issuers as described in *clause (ii) above, clause 1(b)(y) of Section 5.01(a)* and (y) in the case of a Guarantor as described in *clause (ii) above, clause (2)* of the immediately preceding paragraph.

SECTION 10.05. *Contribution.*

In order to provide for just and equitable contribution among the Guarantors, the Guarantors agree, inter se, that each Guarantor that makes a payment or distribution under a Guarantee shall be entitled to a *pro rata* contribution from each other Guarantor hereunder based on the Adjusted Net Assets of each other Guarantor. The preceding sentence shall in no way affect the rights of the Holders of Notes or the Trustee to the benefits of this Indenture, the Notes or the Guarantees.

SECTION 10.06. *Evidence of Guarantee.*

To evidence their Guarantees to the Holders set forth in this *Article Ten*, each of the Guarantors hereby agrees to execute the notation of Guarantee in substantially the form included in the Notes attached as *Exhibit A*. Each such notation of Guarantee shall be signed on behalf of each Guarantor by an Officer. An Officer (who shall, in each case, have been duly authorized by all requisite corporate actions) of the Guarantors shall execute the Guarantees by manual or facsimile signature.

If an Officer whose signature is on a Note was an Officer at the time of such execution but no longer holds that office or position at the time the Trustee authenticates such Note, such Note shall nevertheless be valid.

Each Guarantor hereby agrees that its Guarantee set forth in *Section 10.01* shall remain in full force and effect notwithstanding any failure to endorse on each Note a notation of such Guarantee.

If an Officer whose signature is on this Indenture or on the Guarantee no longer holds that office at the time the Trustee authenticates the Note on which a Guarantee is endorsed, the Guarantee shall be valid nevertheless.

The delivery of any Note by the Trustee, after the authentication thereof hereunder, shall constitute due delivery of the Guarantee set forth in this Indenture on behalf of the Guarantors.

SECTION 10.07. *Waiver of Stay, Extension or Usury Laws.*

Each Guarantor covenants to the extent permitted by law that it shall not at any time insist upon, plead, or in any manner whatsoever claim or take the benefit or advantage of, any stay or extension law or any usury law or other law that would prohibit or forgive such Guarantor from performing its Guarantee as contemplated herein, wherever enacted, now or at any time hereafter in force, or which may affect the covenants or the performance of this Guarantee; and each Guarantor hereby expressly waives to the extent permitted by law all benefit or advantage of any such law, and covenants that it shall not hinder, delay or impede the execution of any power herein granted to the Trustee, but shall suffer and permit the execution of every such power as though no such law had been enacted.

98

## ARTICLE ELEVEN
## MISCELLANEOUS

SECTION 11.01. *Trust Indenture Act Controls*.

If any provision of this Indenture limits, qualifies, or conflicts with another provision which is required to be included in this Indenture by the TIA, the required provision shall control. Any provision of the TIA which is required to be included in a qualified Indenture, but not expressly included herein, shall be deemed to be included by this reference.

SECTION 11.02. *Notices*.

Any notices or other communications required or permitted hereunder shall be in writing, and shall be sufficiently given if made by hand delivery, by telex, by telecopier or registered or certified mail, postage prepaid, return receipt requested, addressed as follows:

if to the Issuers or the Guarantors:

Mrs. Fields Famous Brands, LLC
2855 East Cottonwood Parkway, Suite 400
Salt Lake City, Utah  84121-1050
Attention:  Michael R. Ward, Esq.
Facsimile Number:  (801) 736-5944

Mrs. Fields Financing Company, Inc.
2855 East Cottonwood Parkway, Suite 400
Salt Lake City, Utah  84121-1050
Attention:  Michael R. Ward, Esq.
Facsimile Number:  (801) 736-5944

if to the Trustee:

The Bank of New York Mellon Trust Company, N.A.
[ ]
Attn:  Corporate Trust Administration
Facsimile Number:  (212) 815-5707

Each of the Issuers and the Trustee by written notice to each other may designate additional or different addresses for notices to such Person. Any notice or communication to the Issuers or the Trustee shall be deemed to have been given or made as of the date so delivered if personally delivered; when answered back, if telexed; when receipt is acknowledged, if faxed; and five (5) calendar days after mailing if sent by registered or certified mail, postage prepaid (except that a notice of change of address or a notice sent by mail to the Trustee shall not be deemed to have been given until actually received by the addressee).

Any notice or communication mailed to a Holder shall be mailed to such Holder by first class mail or other equivalent means at such Holder's address as it appears on the registration

99